Andrew K. Glenn
Paul M. O'Connor III
Matthew B. Stein
KASOWITZ, BENSON, TORRES
  & FRIEDMAN LLP
1633 Broadway
New York, New York 10019
Telephone:  (212) 506-1700
Facsimile:  (212) 506-1800

*Counsel for Aman Resorts Group Limited*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------x
In re                                                    :
                                                         :          Chapter 11
                                                         :
Aman Resorts Group Limited,                              :
                                                         :          Case No. 16-10517 (SCC)
                                       Debtor.           :
--------------------------------------------------x


**REPLY IN SUPPORT OF AMAN RESORTS GROUP LIMITED'S MOTION TO**
**(A) STRIKE THE ANSWER TO INVOLUNTARY PETITION AND CONSENT**
**TO ENTRY OF ORDER FOR RELIEF, (B) DISMISS THE CHAPTER 11 CASE,**
**AND (C) IMPOSE ATTORNEYS' FEES, COSTS, AND SANCTIONS**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................... 1

SUPPLEMENTAL BACKGROUND ......................................................... 3

REPLY ................................................................................................. 5

I.     THE *AD HOC* GROUP'S LIMITED OBJECTION CANNOT CURE THE FRAUDULENT AND MALICIOUS ATTEMPT TO FORCE ARGL INTO AN UNWARRANTED AND UNAUTHORIZED BANKRUPTCY PROCEEDING. ................................................................................ 5

     A.     Dismissal of the Chapter 11 Case Is Warranted. ....................... 6

          1.     The Petitions Were Filed in Bad Faith. .............................. 6

          2.     The Answer Was Filed In Bad Faith. ................................. 7

          3.     The Court Has No Jurisdiction Over the Debtor. ................ 8

          4.     The Bankruptcy Court Is an Improper Forum to Adjudicate a Two-Party Dispute. ....................................................... 9

     B.     The *Ad Hoc* Group Cannot Cure the Bad Faith and Improper Filing of the Chapter 11 Case. ................................................. 11

     C.     There Exists No Factual Dispute to Adjudicate. ....................... 13

          1.     ARGL Merely Supplemented – Not Disputed – the Evidence Submitted In Connection with the Answer. ........................ 14

          2.     It Is Undisputed That Brown Rudnick Never Represented ARGL. ........................................................................... 14

          3.     There Can Be No Disputed Facts Arising from the Complaint Brought by Carpentaria and Brown Rudnick. ...................... 15

II.     APPOINTMENT OF A CHAPTER 11 TRUSTEE IS UNWARRANTED .................... 15

CONCLUSION ....................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re A&J Quality Diamonds, Inc.*,
    377 B.R. 460 (Bankr. S.D.N.Y. 2007) ......................................................................9

*Basin Elec. Power Coop. v. Midwest Processing Co. (In re Basin Elec. Power Coop.)*,
    769 F.2d 483 (8th Cir. 1985) ................................................................................12

*In re Braten*,
    74 B.R. 1021 (Bankr. S.D.N.Y. 1987) ..................................................................11

*Key Mech. Inc. v. BDC 56 LLC (In re BDC 56 LLC)*,
    330 F.3d 111 (2d Cir. 2003) .................................................................................13

*Montgomery v. Ryan (In re Montgomery)*,
    37 F.3d 413 (8th Cir. 1994) ...................................................................................9

*In re Mt. Dairies, Inc.*,
    372 B.R. 623 (Bankr. S.D.N.Y. 2007) ..................................................................10

*In re Norriss Bros. Lumber Co., Inc.*,
    133 B.R. 599 (Bankr. N.D. Tex. 1991) .................................................................12

*In re Palace Oriental Rugs, Inc.*,
    193 B.R. 126 (Bankr. D. Conn. 1996) ...................................................................9

*Riverview Trenton R.R. Co. v. DSC, Ltd. (In re DSC, Ltd.)*,
    486 F.3d 940 (6th Cir. 2007) ................................................................................13

*In re Rush*,
    10 B.R. 526 (Bankr. N.D. Ala. 1981) ...................................................................11

*In re Sovereign Estates, Ltd.*,
    104 B.R. 702 (Bankr. E.D. Pa. 1989) ...................................................................16

*In re Starmark Clinics, LP*,
    388 B.R. 729 (Bankr. S.D. Tex. 2008) .................................................................17

*In re Xenos Yuen*,
    No. 13-30249, 2013 Bankr. LEXIS 4238 (Bankr. S.D. Tex. Oct. 9, 2013) ............9

**Statutes**

11 U.S.C. § 109 ................................................................................................................8, 9

11 U.S.C. § 303 .......................................................................................................... *passim*

11 U.S.C. § 305 ..............................................................................................................10

11 U.S.C. § 1104 ......................................................................................................16, 17

**Rules**

Fed. R. Bankr. P. 2019 ....................................................................................................5

Fed. R. Bankr. P. 9011 ..................................................................................................18

Local Bankr. R. 2090-1(e) ...............................................................................................4

Rule 1.16 of the New York Rules of Professional Conduct ...............................1, 3, 8, 15

**Other Authorities**

7 Collier On Bankruptcy ¶ 1104.2 (16TH ED. 2016)............................................16

2 Norton Bankr. L. & Prac. 3d § 22:8..................................................................12

Aman Resorts Group Limited ("ARGL"), the purported and disputed debtor in the above-captioned chapter 11 case (the "Chapter 11 Case"), through its undersigned counsel, hereby submits this reply (the "Reply") in support of its Motion,[1] and respectfully represents as follows:

## PRELIMINARY STATEMENT

1.      As shown in ARGL's motion to dismiss, this is a meritless and fraudulent involuntary bankruptcy case.  It was commenced against a shell company with no assets or liabilities by so called creditors who had never previously asserted claims against the company.  Almost all of the creditors in whose name the involuntary petition was filed have since sought to withdraw their claims from the involuntary petition asserting they had no knowledge of its filing.  While the involuntary petition incredibly was answered the same day as filed by a law firm that had no authority to act for ARGL, that firm now seeks to withdraw on grounds the action violates Rule 1.16 of the New York Rules of Professional Conduct which mandates withdrawal where counsel determines its client is proceeding maliciously on claims with no legal merit.  At this point, the dismissal is opposed solely by an *ad hoc* group of alleged new creditors who do not quantify or otherwise explain their claims and which claims have never been asserted anywhere against ARGL by these alleged creditors or otherwise.  These facts alone dictate dismissal.

2.      Not only is this bankruptcy case baseless and improper, but also it appears clearly to be part of the scheme by Omar Amanat to attempt to continue to harass and prejudice Aman Resorts – a company in which the putative debtor, ARGL, has no interest in or connection with except for the common name of Aman.  Notably, the initial meritless petition was first filed by

---

[1]      Capitalized terms used but not defined herein shall have the meanings ascribed to them in the *Aman Resorts Group Limited's Memorandum of Law in Support of Motion to (A) Strike the Answer to Involuntary Petition and Consent to Entry of Order For Relief, (B) Dismiss the Chapter 11 Case, and (C) Impose Attorneys' Fees, Costs, and Sanctions*, dated March 11, 2016 [Docket No. 10].

Mr. Amanat the very week his alleged claims to an interest in the resort company were resolved against him in the London Proceedings.

3.    Brazenly, the Limited Objection (as defined below), filed by an *ad hoc* group of alleged creditors of ARGL in support of the Chapter 11 Case, posits the following extraordinary proposition:  an entity may be forced into bankruptcy by hook or by crook so long as a purported creditor exists and even if such creditor's alleged claims are vague, unsupported, and suspicious. This is preposterous.

4.    The *Ad Hoc* Group (as defined below) specifically requests that the Court (i) ignore the fraudulently and maliciously filed Petitions, Answer, and Complaint; (ii) assume, without any documentary support, that ARGL has assets in the United States when ARGL has specifically denied that any exist; and (iii) deny the Motion apparently for the express purpose of resolving an unrelated two-party dispute, despite courts almost universally holding that such is not a proper purpose of bankruptcy proceedings, and which two party dispute has, in any event, already been resolved in other jurisdictions.

5.    The blatant bad faith underlying the Chapter 11 Case forestalls any subsequent attempt by the *Ad Hoc* Group – even if the claims of its members were valid, which ARGL disputes – to rectify the defective and fraudulent Petitions.  Indeed, the overwhelming majority of courts apply a bad-faith exception to Section 303(c) of the Bankruptcy Code (which proscribes when a creditor may join in an involuntary petition), espousing a public policy that prohibits entertaining any case commenced upon a petitioner's conduct that amounts to fraud upon the court.  Furthermore, because the Court entered an order for relief in this Chapter 11 Case on March 9, 2016, the deadline for intervening in this case as an additional petitioning creditor has expired pursuant to Section 303(c).  This aside, none of the Petitioners or the *Ad Hoc*

Group have provided support or documents for any claims they are asserting.

6. Finally, the *Ad Hoc* Group has failed to show, other than through the mere power of its suggestion, that there are any issues or factual controversies in this Chapter 11 Case. All of the factual allegations set forth in the Motion remain undisputed or cannot credibly be disputed by any of the parties to the Chapter 11 Case.

7. This lack of any factual controversy in this Chapter 11 Case also militates against the appointment of a Chapter 11 trustee. In any event, the *Ad Hoc* Group has not carried its burden to prove that such appointment is warranted.

8. Accordingly, ARGL respectfully submits that the Court should grant the Motion, dismiss the Chapter 11 Case, and award attorneys' fees, costs, and sanctions.

## SUPPLEMENTAL BACKGROUND

9. Since the filing of ARGL's Motion on March 11, 2016, several critical events have occurred that are relevant to the Motion.

10. On March 11, 2016, Brown Rudnick LLP – which had purported to act for ARGL by filing the Answer and Complaint – moved to withdraw as counsel, stating that

> information has come to the attention of counsel that its continued representation of ARGL in this case . . . would be inconsistent with Rule 1.16 of the New York Rules of Professional Conduct, requiring counsel to seek withdrawal here.

[Docket No. 8]. Rule 1.16 provides, in pertinent part, that "[a] lawyer shall not accept employment on behalf of a person if the lawyer knows or reasonably should know that such person wishes to: (1) bring a legal action, conduct a defense, or assert a position in a matter, or otherwise have steps taken for such person, merely for the purpose of harassing or maliciously injuring any person . . . ." Indeed, the facts indicate that rather than representing ARGL, Brown Rudnick actually represents an entity purposely hiding from the Court.

3

11.     On March 16, 2016, Mr. Kent Gross, the attorney who filed the Original Petition
and Amended Petition, filed a Notice of Withdrawal, stating that he had withdrawn from the
representation of the Petitioners.  [Docket No. 16].  Notably, Mr. Gross never moved this Court
for approval of his withdrawal, contrary to Rule 2090-1(e) of the Local Bankruptcy Rules for the
Southern District of New York.

12.     Also on March 16, 2016, Willkie Farr & Gallagher LLP appeared on behalf of
three of the New Petitioners, who subsequently filed a motion to withdraw their claims from the
Amended Petition, stating that none of them had "signed an engagement letter retaining Mr.
Gross," and that the "Amended Petition was filed without the knowledge of Mr. Zecha, without
the authorization of Ms. Turnbull, and with Mr. Robinson's claim having been amended without
his authority and consent."  [Docket No. 18].

13.     On March 17, 2016, ARGL sent a document request to Mr. Gross, requesting,
among other things, all documents evidencing the original signatures of the Petitioners on the
Petitions, and all documents evidencing any authorization given to Mr. Gross by the Petitioners
to file the Petitions on their behalf.

14.     On March 21, 2016, Fonde Investment Capital SA, OLP, LLC, Erik Holling, and
Raymond D. Kamel (the "_Ad Hoc_ Group") filed the _Limited Objection of the_ Ad Hoc _Group of
Creditors of Aman Resorts Group Limited to the Debtor's Motion to (A) Strike the Answer to
Involuntary Petition and Consent to Entry of Order For Relief, (B) Dismiss the Chapter 11 Case,
and (C) Impose Attorneys' Fees, Costs, and Sanctions_, dated March 21, 2016 [Docket No. 24]
(the "Limited Objection").  Although the Limited Objection proclaims that "the members of the
Ad Hoc Group have informed their counsel that they are prepared to file proofs of claim in the
chapter 11 case establishing their claims," no documents are attached in support and counsel has

purposely created separation between itself and this contention.  Moreover, ARGL is unaware of any relationship that any of the members of the *Ad Hoc* Group have with ARGL, let alone any valid claims that these members hold against it.  Instead, upon information and belief, all of the members of the *Ad Hoc* Group have business and/or personal connections to Mr. Amanat and are acting here in furtherance of his scheme.

15.     On the same date, ARGL sent document requests to the four members of the *Ad Hoc* Group, requesting, among other things, all documents evidencing any claims they allegedly hold against ARGL.

16.     As of the filing of this Reply, neither Mr. Gross nor any of the members of the *Ad Hoc* Group have provided any substantive response to ARGL's respective document requests, and Mr. Gross has failed to respond to repeated attempts to contact him.

17.     As of the filing of this Reply, counsel for the *Ad Hoc* Group has failed to file a verified statement disclosing the information required by Bankruptcy Rule 2019.

18.     As of the filing of this Reply, no party has submitted any evidence to the Court contradicting any of the facts set forth in the declarations filed in support of ARGL's Motion. [Docket Nos. 11, 12, 13].

## <u>REPLY</u>

**I.     THE *AD HOC* GROUP'S LIMITED OBJECTION CANNOT CURE THE FRAUDULENT AND MALICIOUS ATTEMPT TO FORCE ARGL INTO AN <u>UNWARRANTED AND UNAUTHORIZED BANKRUPTCY PROCEEDING.</u>**

19.     The Court should overrule the Limited Objection and grant the relief ARGL requests in the Motion for the simple reason that the Limited Objection fails to refute any of the grounds cited by ARGL in the Motion for dismissing the Chapter 11 Case.  Instead, the Limited Objection is wholly premised on the argument that the Court should uphold the entry of the *Order for Relief* "regardless of how this case came to be," and "regardless of any alleged

misrepresentations that [led] to the filing of the involuntary chapter 11 petitions." Limited

Objection ¶¶ 2, 14. This argument – for which the *Ad Hoc* Group offers no support – turns the

applicable legal standard on its head and its acceptance by the Court would only condone the bad

acts that have transpired here. As shown below, the Court should not disregard the critical

question of "how this case came to be." In fact, the answer to this very question requires – in

and of itself – dismissal of the Chapter 11 Case.

###### A.    <u>Dismissal of the Chapter 11 Case Is Warranted</u>.

20.    The Limited Objection fails to refute any of the grounds cited by ARGL in the

Motion for dismissing the Chapter 11 Case, namely, that (i) the Petitions were fraudulent and

filed in bad faith; (ii) the Answer was filed in bad faith and with no authority; (iii) the Court has

no jurisdiction over ARGL as a Chapter 11 debtor; and (iv) the Court is an improper forum to

adjudicate the already-litigated and resolved two-party dispute between Mr. Amanat and his

adversaries.

###### 1.    <u>The Petitions Were Filed in Bad Faith</u>.

21.    As described in detail in the Motion, the commencement of the Chapter 11 Case

was a blatant attempt by Mr. Amanat to relitigate a long-standing dispute that was settled prior to

the commencement of the Chapter 11 Case and to harass maliciously ARGL and Aman Resorts.

22.    The case was commenced when Mr. Amanat and two of his affiliates, including

Carpentaria, filed a frivolous involuntary Chapter 11 petition against ARGL, a company that has

*no debts or domicile in the United States*, and for which a false address was given. Three days

later, in a clear attempt to avoid Mr. Amanat and his affiliates being designated as petitioning

creditors, the New Petitioners filed the Amended Petition against ARGL. This ploy was

orchestrated by Mr. Amanat, through his affiliates, to utilize the Chapter 11 Case as a tool to

harass Mr. Amanat's adversaries, not a bona fide attempt to restructure ARGL.

23.     That the commencement of the Chapter 11 Case was a sham has been exposed with abundant clarity by the motion recently filed by three of the New Petitioners (who allegedly filed the Amended Petition together with Fonde Investment Capital SA, a member of the *Ad Hoc* Group) to withdraw their claims from the Amended Petition.  In their motion, those petitioners stated that none of them had "signed an engagement letter retaining Mr. Gross [the attorney whose name appears in the Amended Petition]," and that the "Amended Petition was filed without the knowledge of Mr. Zecha, without the authorization of Ms. Turnbull, and with Mr. Robinson's claim having been amended without his authority and consent."  [Docket No. 18]. Mr. Gross' inability to produce even a single document substantiating the validity of his filing throws further doubt on the legitimacy of the Petitions.

24.     The Limited Objection does not refute the foregoing facts concerning the filing of the Chapter 11 Case (nor does it even attempt to address them).  The Court should therefore dismiss the Chapter 11 Case on this basis alone.

## 2.     **The Answer Was Filed In Bad Faith.**

25.     The Limited Objection similarly fails to refute (or even address) the fact that the Answer, purportedly consenting to the Petitions on behalf of ARGL, was fraudulent and in bad faith.

26.     As described in detail in the Motion, on March 8, 2016, the Board of Directors of PHRGL appointed Kasowitz, Benson, Torres & Friedman LLP ("Kasowitz") to represent ARGL in the Chapter 11 Case and any related actions, and confirmed that Brown Rudnick had not been and is not now appointed as counsel to ARGL.  On March 10, 2016, the board of ARGL resolved to confirm the appointment of Kasowitz and to instruct Kasowitz to file the Motion.  Motion ¶¶ 19-21; Keillor Decl. ¶¶ 18-19, 22.

27.     Since the filing of the Motion, Brown Rudnick has introduced no contrary

evidence establishing its authority to represent ARGL or file the Answer, nor has it even

attempted an explanation as to why it had represented to the Court that its purported authority

was based on an order that Brown Rudnick should have known had been superseded months

prior to the commencement of the Chapter 11 Case.

28.     To the contrary, on March 11, 2016, faced with ARGL's Motion to dismiss the

Chapter 11 Case and apparently recognizing that it had no authority to represent ARGL, Brown

Rudnick moved the Court to withdraw as counsel, stating that "information has come to the

attention of counsel that its continued representation of ARGL in this case . . . would be

inconsistent with Rule 1.16 of the New York Rules of Professional Conduct, requiring counsel to

seek withdrawal here."  [Docket No. 8].  This rule provides, in pertinent part, that "[a] lawyer

shall not accept employment on behalf of a person if the lawyer knows or reasonably should

know that such person wishes to:  (1) bring a legal action, conduct a defense, or assert a position

in a matter, or otherwise have steps taken for such person, merely for the purpose of harassing or

maliciously injuring any person . . . ."

29.     In light of the foregoing, it is clear that the Answer was filed in bad faith, with no

authority, and was a blatant attempt to hoodwink the Court into granting an order for relief under

Title 11.  The Court should grant the Motion and dismiss the Chapter 11 Case on this basis alone.

### 3.      The Court Has No Jurisdiction Over the Debtor.

30.     Among the "issues requiring investigation," according to the *Ad Hoc* Group, is

whether ARGL is eligible as a Chapter 11 debtor.  Limited Objection ¶ 4.  Yet, the *Ad Hoc*

Group puts forth no evidence substantiating its belief that ARGL is an eligible debtor under

Section 109 of the Bankruptcy Code, nor does it cite any case law holding that a bankruptcy

proceeding is the proper forum for such investigation.  Instead, the *Ad Hoc* Group blames ARGL

for providing "no detail or evidence as to whether the Debtor has any property in the United

8

States" other than its statement that no such property exists.

31.    The *Ad Hoc* Group's argument also ignores black letter law that the burden of proving that ARGL is an eligible Chapter 11 debtor is borne by the petitioning creditors – *not* ARGL.  *See In re A&J Quality Diamonds, Inc.*, 377 B.R. 460, 463 (Bankr. S.D.N.Y. 2007) ("The petitioning creditors have the burden of proving all statutory requirements of Bankruptcy Code § 303.") (citing *In re Palace Oriental Rugs, Inc.*, 193 B.R. 126, 129 (Bankr. D. Conn. 1996); *Montgomery v. Ryan (In re Montgomery)*, 37 F.3d 413, 415 (8th Cir. 1994) ("The burden of establishing eligibility in bankruptcy lies with the party filing the bankruptcy petition."); *In re Xenos Yuen*, No. 13-30249, 2013 Bankr. LEXIS 4238, *3 (Bankr. S.D. Tex. Oct. 9, 2013) ("The burden of proof to establish eligibility is on the party filing the petition.") (citation omitted).

32.    The Petitioners, of which Fonde Investment Capital SA – a member of the *Ad Hoc* Group – is one, have failed to satisfy this burden.  Nor has the *Ad Hoc* Group even attempted to do so.

33.    Simply put, there is no evidence in the record that contradicts ARGL's statement that it is ineligible for relief under Section 109(a) of the Bankruptcy Code because it has no domicile or assets in the U.S.  Furthermore, ARGL has never conducted any other business with the United States and has no employees.   Motion ¶¶ 64-66.

34.    In light of the foregoing, it is clear that the *Ad Hoc* Group has failed to establish any basis for jurisdiction over ARGL as a Chapter 11 debtor.  Nor is this an issue that merits further "investigation."  Limited Objection ¶ 4.

## 4.    The Bankruptcy Court Is an Improper Forum to Adjudicate a Two-Party Dispute.

35.    As described in detail in the Motion and referenced in the Limited Objection, the Chapter 11 Case is a blatant and outrageous attempt by Mr. Amanat to relitigate, in yet another

forum, a long-standing dispute.  This dispute was settled earlier this month (before the Chapter

11 was commenced) on terms that resulted in the dismissal of all of Mr. Amanat's affiliate's

claims.  The Chapter 11 Case and the Complaint are therefore nothing more than a loosely

disguised attempt to undo the settlement, continue the dispute, and further harass ARGL.

Motion ¶ 78.

36.    Completely ignoring the fact that the dispute has been settled, the *Ad Hoc* Group

argues that the "transfer of shares of Silverlink . . . is at the very crux of the wrongdoing alleged

in the Complaint," and that a "clawback of the alleged improper transfers to Doronin, is the main

potential source of recoveries for ARGL's creditors."  Limited Objection ¶ 15.  The allegation by

the *Ad Hoc* Group also ignores the fraudulent nature of the Complaint itself.

37.    Even if the dispute had not been settled, the Bankruptcy Court is not a proper

forum to relitigate the two-party dispute between Mr. Amanat and his adversaries.  Where, as

here, a bankruptcy case is predicated solely on a two-party dispute for which relief is available in

a non-bankruptcy forum, courts almost universally hold that the case should be dismissed.

Motion ¶ 76.  *See, e.g.*, *In re Mt. Dairies, Inc.*, 372 B.R. 623, 634 (Bankr. S.D.N.Y. 2007)

("Even if Schneider-Valley were an eligible petitioner under 11 U.S.C. § 303, this Court would

be compelled to abstain pursuant to 11 U.S.C. § 305 because this is essentially a two-party

dispute for which the parties have adequate remedies in state court.").

38.    Rather than disputing the fact that this case is, at best, a two-party dispute, the *Ad*

*Hoc* Group doubles down and argues that the dispute itself justifies the continuation of the

Chapter 11 Case.  The *Ad Hoc* Group, however, fails to address the litany of cases cited in the

Motion contradicting this argument.  More fundamentally, the *Ad Hoc* group never

acknowledges that this dispute – so critical to its theory justifying the survival of the Chapter 11

Case – has been settled.

39.    The Court should therefore dismiss the Chapter 11 Case on this basis alone.

**B.    The *Ad Hoc* Group Cannot Cure the Bad Faith and
Improper Filing of the Chapter 11 Case.**

40.    The blatant bad faith infecting the Chapter 11 Case precludes any subsequent

attempt by the *Ad Hoc* Group to salvage the defective Petitions.  "If an issue of fraud or other

bad faith is determined by the Court against the original petitioners, the petition and the case

instituted thereon should be dismissed out of court, **regardless of the later intervention of**

**other creditors whose standing may not be infected with such fraud or other bad faith**."  *In*

*re Rush*, 10 B.R. 526, 527-28 (Bankr. N.D. Ala. 1981) (emphasis added).  The bankruptcy court

further reasoned:

> It appears to the bankruptcy judge that it would be against public
> policy for the Court to entertain any case commenced upon a
> petition which constituted the practice of a fraud upon the Court
> and the debtor by a petitioning creditor or creditors. The dismissal
> of the petition and the case should be a principle and obvious
> discouragement for the filing of a petition based upon fraud or
> other bad faith on the part of the petitioner or petitioners. Such
> practice should not be encouraged by allowing the petition and
> case to continue in court in the event that a creditor or sufficient
> other creditors not infected with the fraud or other bad faith later
> join in the petition. The opposite rule would strengthen the hand of
> a fraudulent petitioner seeking extortion from the debtor as the
> price for a voluntary dismissal of the petition, because the debtor
> would be faced with the prospect of having the fraudulent case
> continue even if the debtor established that the case had been filed
> in bad faith; thus, the filing of fraudulent petitions would be
> encouraged.

*In re Rush*, 10 B.R. at 528 n.1.

41.    This Court, as well as courts in other jurisdictions, have espoused the same

approach.  *In re Braten*, 74 B.R. 1021, 1022 (Bankr. S.D.N.Y. 1987) ("Intervention in an

involuntary petition is a matter of right under 11 U.S.C. § 303(c), unless bad faith is shown.");

*Basin Elec. Power Coop. v. Midwest Processing Co. (In re Basin Elec. Power Coop.)*, 769 F.2d 483, 486 (8th Cir. 1985) ("If the original petition was a sham, prepared with a view of being later supported by intervention of other creditors, joinder should be denied.") (citation omitted); *In re Norriss Bros. Lumber Co., Inc.*, 133 B.R. 599, 608 (Bankr. N.D. Tex. 1991) ("When an original petition is filed in bad faith, intervention of a good faith creditor does not normally purge the taint of the original creditor's bad faith in filing.") (citation omitted); 2 NORTON BANKR. L. & PRAC. 3d § 22:8 ("The overwhelming majority of courts . . . apply a judicially created bad-faith exception to § 303(c). . . The rationale is that public policy prohibits entertaining any case commenced upon a petitioner's conduct which amounts to fraud upon the court.").

42.     As described in detail in the Motion and *supra*, the commencement of the Chapter 11 Case was fraudulent and malicious.  The Limited Objection fails to refute this important fact. The Limited Objection similarly fails to refute the fact that the Answer was also fraudulent and in bad faith.

43.     In light of the foregoing, the Court should not allow the *Ad Hoc* Group to flippantly assert that it has claims against ARGL – without any documentary proof – and attempt to cure the blatant bad faith with which the Chapter 11 Case was commenced.  Mr. Amanat's bad faith, malice and fraud irreparably taint the Chapter 11 Case and cannot be cured.  The Court should therefore overrule the Limited Objection and dismiss the Chapter 11 Case.

44.     The Court should overrule the Limited Objection and dismiss the Chapter 11 Case for the additional reason that the only available avenue for a creditor attempting to rectify a defective involuntary Chapter 11 petition is prescribed in Section 303(c) of the Bankruptcy Code:

> After the filing of a petition under this section **but before the case is dismissed or relief is ordered**, a creditor holding an unsecured

claim that is not contingent, other than a creditor filing under
subsection (b) of this section, may join in the petition with the
same effect as if such joining creditor were a petitioning creditor
under subsection (b) of this section.

11 U.S.C. § 303(c) (emphasis added).

45.    It is thus clear that *once the court has entered an order for relief*, no creditor may

intervene and "join in the petition with the same effect as if such joining creditor were a

petitioning creditor." *See Key Mech. Inc. v. BDC 56 LLC (In re BDC 56 LLC)*, 330 F.3d 111,

122 (2d Cir. 2003) (creditors were ineligible to join the petition because they had failed to act

within the timeframe prescribed in Section 303(c)); *Riverview Trenton R.R. Co. v. DSC, Ltd. (In*

*re DSC, Ltd.)*, 486 F.3d 940, 948 (6th Cir. 2007) (Section 303(c) "sets an absolute, outside limit

on the time within which certain qualifying creditors may join an involuntary petition.") (internal

quotation marks omitted).

46.    The Court entered the Order for Relief under Chapter 11 of the Bankruptcy Code

on March 9, 2016.  [Docket No. 6].  Thus, even if it had valid undisputed and non-contingent

claims, which ARGL disputes, the *Ad Hoc* Group (or any other alleged creditor) is precluded

from joining its claims in support of the Petitions.

**C.    There Exists No Factual Dispute to Adjudicate.**

47.    The *Ad Hoc* Group posits that the Chapter 11 Case is necessary because "there are

many issues requiring investigation."  Even if the *Ad Hoc* Group were able to cure the bad faith

and improper filing of this Chapter 11 Case (which it is not), the Court should overrule the

Limited Objection because it fails to show that any "convoluted" issues or factual controversies

in this Chapter 11 Case exist.  Nor does it even attempt to establish that the mere existence of

factual controversies is sufficient to justify commencement of a Chapter 11 case.

48.    Importantly, since the filing of the Motion, no party has filed any document that

13

could qualify as evidence that disputes a single fact alleged in the Motion.  Moreover, the evidence that ARGL submitted in connection with the Motion did not create any legitimate factual dispute.

**1.    ARGL Merely Supplemented – Not Disputed – the Evidence Submitted In Connection with the Answer.**

49.    As described in detail in the Motion and *supra*, the Answer was purportedly filed upon the "authorization" granted by the Direction and Authorization of Carpentaria Management Services Limited to Aman Resorts Group Limited to File Answer and Consent to Involuntary Petition.

50.    In its Motion, *ARGL did not dispute the existence of the Direction and Authorization, but merely supplemented the pertinent factual record*, showing that the October Order, upon which the Direction and Authorization was premised, had been subsequently set aside, and that Carpentaria was otherwise unauthorized to file the Answer and Complaint on behalf of ARGL.  No other evidence has been submitted to the Court.

51.    It is therefore clear that there is no factual dispute concerning Carpentaria's lack of authority to file the Answer consenting to the Petitions on behalf of ARGL.

**2.    It Is Undisputed That Brown Rudnick Never Represented ARGL.**

52.    As described in detail in the Motion and *supra*, on March 8, 2016, the Board of Directors of PHRGL appointed Kasowitz to represent ARGL in the Chapter 11 Case and any related actions, and confirmed that Brown Rudnick had not been and is not now appointed as counsel to ARGL.  On March 10, 2016, the board of ARGL resolved to confirm the appointment of Kasowitz and to instruct Kasowitz to file the Motion.

53.    Brown Rudnick has not disputed this.  To the contrary, on March 11, 2016, it moved to withdraw as counsel, stating that "information has come to the attention of counsel that

14

its continued representation of ARGL in this case . . . would be inconsistent with Rule 1.16 of the

New York Rules of Professional Conduct, requiring counsel to seek withdrawal here." [Docket

No. 8].

54.     In light of the foregoing, it is clear – and undisputed – that Brown Rudnick never

represented ARGL.

### 3.     There Can Be No Disputed Facts Arising from the Complaint Brought by Carpentaria and Brown Rudnick.

55.     In its Limited Objection, the *Ad Hoc* Group argues that among the "many issues

requiring investigation in this case" are "whether the serious allegations . . . raised in the

Complaint . . . have merit[]."  Limited Objection ¶ 4.

56.     However, as made clear in Kasowitz's Notice of Appearance, dated March 11,

2016, since Brown Rudnick is not counsel to ARGL and has no authority to act on behalf of

ARGL, and because Carpentaria has no authority to act on behalf of ARGL, the Complaint filed

by Brown Rudnick and Carpentaria (along with the Answer to the Petitions) is void *ab initio*.

[Docket No. 7].

57.     Because the Complaint is void *ab initio*, the allegations made therein cannot

justify the continued pendency of this Chapter 11 Case.

## II.     APPOINTMENT OF A CHAPTER 11 TRUSTEE IS UNWARRANTED.

58.     As set forth above, the overwhelming weight of the evidence militates in favor of

dismissal of the Chapter 11 Case.  Even if the case is not dismissed, there is no basis to appoint a

Chapter 11 trustee.  Indeed, the very request for such appointment is a ruse based on fraudulent

and bad faith filings and is intended to confuse the Court, legitimize the fraudulent and bad faith

filings, and displace ARGL's management for the sole purpose of relitigating issues already

resolved in other jurisdictions.

59.     Section 1104(a) of the Bankruptcy Code provides among other things that "the court shall order the appointment of a trustee . . . for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor . . . or . . . if such appointment is in the interests of creditors . . . ."

60.     "The appointment of a trustee in a Chapter 11 case is an extraordinary remedy and the party seeking the appointment bears the burden of proof." *In re Sovereign Estates, Ltd.*, 104 B.R. 702, 704-05 (Bankr. E.D. Pa. 1989). *See also* 7 COLLIER ON BANKRUPTCY ¶ 1104.2 (16th ed. 2016) ("[T]he party moving for such an appointment has the burden of proof.").

61.     The *Ad Hoc* Group posits that the Court may appoint a trustee *sua sponte*, but fails to explain any coherent rationale for the appointment. Limited Objection ¶ 21. The *Ad Hoc* Group argues that the "procedural history of this short, but very contentious case, and the few undisputed facts gathered from the pleadings, suggest that the circumstances fulfill both prongs of section 1104," and that "[s]erious accusations of fraud articulated in the Complaint undoubtedly require further investigation." Limited Objection ¶ 22.

62.     Contrary to this assertion, the *Ad Hoc* Group is unable to point to any substantively contested facts. Instead, it relies on (i) discredited assertions of authority (Brown Rudnick's statement that it represents ARGL is contradicted by ARGL's board resolution), (ii) unsupported and highly suspect claims (counsel for the Petitioners has abandoned the case without explanation, three of the New Petitioners have hired counsel to distance themselves from the Amended Petition, and the *Ad Hoc* Group has provided the Court no details regarding their alleged claims), and (iii) fraudulent statements (Brown Rudnick, who filed the Complaint, now seeks to withdraw based upon its ethical and professional responsibility to not represent a client whose intent is to "bring a legal action, conduct a defense, or assert a position in a matter, or

16

otherwise have steps taken for such person, merely for the purpose of harassing or maliciously injuring any person . . . .").  A factual dispute cannot be conjured up from unsupported statements and mere speculation.

63.    Furthermore, the Complaint – which was filed under false pretenses and is nothing more than a loosely disguised attempt to continue a two-party dispute that has been resolved in another forum – has been voluntarily dismissed and does not warrant further investigation by a trustee.

64.    No party has submitted any evidence that contradicts the facts put forth in the Motion.  More importantly, the *Ad Hoc* Group has put forth no evidence that even suggests the presence of "fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor."

65.    Finally, the *Ad Hoc* Group cannot utilize Section 1104 of the Bankruptcy Code to forestall the dismissal of the Chapter 11 Case – a dismissal mandated by other provisions of the Bankruptcy Code.  *See In re Starmark Clinics, LP*, 388 B.R. 729, 736 (Bankr. S.D. Tex. 2008) (refusing to appoint a Chapter 11 trustee as an alternative to dismissal, where "it is not clear whether [the moving party's] motivations are likewise to gain unfair advantage in the state court proceeding by removing [debtor's manager] from control of Debtor's business").

66.    Accordingly, even if the Court does not dismiss the Chapter 11 Case, there is no basis for the appointment of a trustee.

**<u>CONCLUSION</u>**

For the reasons set forth above, ARGL requests that the Court grant the relief requested

in the Motion and (i) strike the Answer from the record, (ii) dismiss the Chapter 11 Case,

(iii) award ARGL attorneys' fees, costs and sanctions pursuant to Section 303(i) of the

Bankruptcy Code and Bankruptcy Rule 9011, and (iv) grant such other relief to ARGL as is

deemed just and proper.

Dated: March 24, 2016
      New York, New York

                    By:  */s/ Andrew K. Glenn*
                    Andrew K. Glenn (aglenn@kasowitz.com)
                    Paul M. O'Connor III (poconnor@kasowitz.com)
                    Matthew B. Stein (mstein@kasowitz.com)
                    KASOWITZ, BENSON, TORRES
                      & FRIEDMAN LLP
                    1633 Broadway
                    New York, New York 10019
                    Telephone:  (212) 506-1700
                    Facsimile:  (212) 506-1800

                    *Counsel for Aman Resorts Group Limited*