Page 1

```
 1    UNITED STATES BANKRUPTCY COURT

 2    SOUTHERN DISTRICT OF NEW YORK

 3    - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

 4    In the Matter of:

 5

 6    AMAN RESORTS GROUP LIMITED

 7    AND AMAN RESORTS GROUP         Case No. 16-10517-scc

 8    LIMITED, BY CARPENTARIA

 9    MANAGEM,

10

11          Debtors.

12    - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

13    AMAN RESORTS GROUP LIMITED,

14                  Plaintiff,

15          v.                       Adv. Case No. 16-01039-scc

16    PONTWELLY HOLDING COMPANY

17    LIMITED, ET AL.,

18                  Defendants.

19    - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

20

21                  U.S. Bankruptcy Court

22                  One Bowling Green

23                  New York, New York

24

25
```

1                    March 28, 2016

2                    10:04 AM

3

4    B E F O R E :

5    HON SHELLEY C. CHAPMAN

6    U.S. BANKRUPTCY JUDGE

7

8

9

10   Hearing re:  Doc #8 Motion to Withdraw as Attorney

11

12   Hearing re:  Doc #10 Motion to (A) Strike the Answer to

13   Involuntary Petition and Consent to Entry of Order for

14   Relief, (B) Dismiss Chapter 11 Case, and (C) Impose

15   Attorney's Fees, Costs, and Sanctions

16

17   Hearing re:  Adversary 16-01039 - Doc #4 Motion to Withdraw

18   as Attorney

19

20

21

22

23

24

25   Transcribed by:  Dawn South

```
 1   A P P E A R A N C E S :

 2   KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

 3        Attorneys for the Debtors

 4        1633 Broadway

 5        New York, NY 10019-6799

 6

 7   BY:  ANDREW K. GLENN, ESQ.

 8        MATTHEW B. STEIN, ESQ.

 9

10   BROWN RUDNICK

11        Attorneys for Brown Rudnick LLP

12        7 Times Square

13        New York, NY 10036

14

15   BY:  WILLIAM R. BALDIGA, ESQ.

16        MAY ORENSTEIN, ESQ.

17

18   MCGRAIL & BENSINGER LLP

19        Attorney for ARGL

20        888-C 8th Avenue # 107

21        New York, NY 10019

22

23   BY:  DAVID C. MCGRAIL, ESQ.

24

25
```

Page 4

```
 1    WILLKIE FARR & GALLAGHER LLP

 2         Attorneys for Mr. Zecha, Ms. Turnbull, and Mr. Robinson

 3         787 Seventh Avenue

 4         New York, NY 10019-6099

 5

 6    BY:  RACHEL STRICKLAND, ESQ.

 7         ANTONIO YANEZ, JR., ESQ.

 8

 9    DLA PIPER LLP (US)

10         Attorney for the Ad Hoc Group

11         1251 Avenue of the Americas

12         New York, NY 10020-1104

13

14    BY:  ARKADY A. GOLDINSTEIN, ESQ.

15

16    U.S. DEPARTMENT OF JUSTICE

17         Attorney for the U.S. Trustee

18         U.S. Federal Office Building

19         201 Varick Street

20         Suite 1006

21         New York, NY 10014

22

23    By:  GREG ZIPES, ESQ.

24

25
```

1                  P R O C E E D I N G S

2            THE COURT:  Please have a seat.  How is everyone

3    this morning?

4            UNIDENTIFIED SPEAKER.  Good, thank you.

5            THE COURT:  All right.  Who'd like to start?

6            MR. GLENN:  Good morning, Your Honor.

7            THE COURT:  Good morning.

8            MR. GLENN:  Andrew Glenn, Kasowitz, Benson, Torres

9    & Friedman on behalf of Aman Resorts Group Limited.

10           There are issues with who is representing whom in

11   this case, Your Honor, so to simplify that issue, as a

12   starting point, Mr. Baldiga and I have agreed that his

13   withdrawal motion could go forward first, if Your Honor so

14   agrees, and then we would proceed with the motion to strike

15   and motion to dismiss.

16           THE COURT:  Is Mr. Gross here?  First before we do

17   anything I want someone to explain to me how we got here.

18           MR. GLENN:  I can go through the facts, but I

19   wasn't there, so.

20           THE COURT:  I want someone to explain to me how we

21   got here.  This started with a handwritten involuntary

22   petition, signed by Kent Gross, and it devolved into today.

23   So I would like somebody, who has knowledge of the facts, to

24   tell me what is going on, and then we can get to motions and

25   consequences.

Page 6

1           Is somebody here representing the ad hoc group?

2    All right.  There must be somebody in this room who knows

3    how this started and what is going on.  I'm going to look at

4    Brown Rudnick.

5           MR. BALDIGA:  Good morning, Your Honor.

6           THE COURT:  Good morning.

7           MR. BALDIGA:  William Baldiga of Brown Rudnick.

8           Your Honor, as you know, we have two petitions

9    here.

10          THE COURT:  Right.

11          MR. BALDIGA:  An involuntary petition filed by

12   three creditors.

13          THE COURT:  Right.

14          MR. BALDIGA:  Then an amended or supplemental,

15   wasn't clear on its face, but a further petition --

16   involuntary petition filed by four additional creditors.

17          THE COURT:  Right.

18          MR. BALDIGA:  Faced with that and a direction from

19   an entity that purported to be authorized to act for Aman

20   Resort Groups Limited, the debtor in this case, we did file

21   a consent.

22          THE COURT:  Who called you?  What person?  What

23   person called you to tell you what to do?

24          MR. BALDIGA:  Several, Your Honor.  We were first

25   engaged in August of 2015 by the entity -- one of the two

Page 7

```
 1   controlling entities for Aman Resorts Group Limited, ARGO,

 2   as it's called, PHRL to represent ARGO in a Chapter 11 to be

 3   filed.

 4            THE COURT:  Okay.  I'm asking a specific question.

 5   An entity doesn't make a phone call, a person makes a phone

 6   call.

 7            MR. BALDIGA:  Several people then, Your Honor.

 8   Omar Amanot (ph) is one.  Carolyn Turnbull, and a London law

 9   firm, Candey law firm, all were speaking to some extent

10   together for the company.

11            THE COURT:  Okay.  All right.  Go ahead, you can

12   continue.

13            MR. BALDIGA:  I also spoke to briefly the BVI

14   joint liquidators -- or representative of the joint

15   liquidator because there was a preliminary appointment of

16   joint liquidators in a BVI proceeding at one point.  That

17   appointment was then stayed or rescinded pending appeal, and

18   then in or about January of this year that appointment was

19   made, again, in the BVI court.

20            THE COURT:  Okay.  Where does Mr. Gross come into

21   the picture?

22            MR. BALDIGA:  I don't -- I mean I can't speak for

23   Mr. Gross.  He did file both petitions.

24            THE COURT:  Okay.  So he filed the petitions and

25   then you appeared and consented.  So what happened between
```

Page 8

1    his filing of the petitions and your coming into the

2    picture?

3              MR. BALDIGA:  In -- so I should go back to the

4    August retention, Your Honor.

5              In August Aman Resorts held 100 percent of the

6    shares of a company called Silverlink.  Silverlink is the

7    company that owns Aman Resorts -- operates Aman Resorts.

8              THE COURT:  Right.

9              MR. BALDIGA:  So Silverlink is the operating

10   company.

11             THE COURT:  Uh-huh.

12             MR. BALDIGA:  Aman Resorts is merely a holding

13   company owning 100 percent of the shares.

14             In August it was facing imminent foreclosure of

15   those shares from a -- its secured lender, Pontwelly.

16   Pontwelly is affiliate of Mr. Duronin (ph).  Mr. Duronin is

17   himself, through another entity, one of the owners of ARGO.

18   The other owner of ARGO as I understand it is P -- we call

19   it PHRL.  They both -- Mr. Duronin's entity and the PHRL

20   entities then are both co-owners of PHRGO, which is the

21   owner of Aman Resorts.

22             I was retained through the PHRL entity to be

23   prepared to represent --

24             THE COURT:  Just let me be -- let me stop you for

25   a moment.  To be clear, I'm not asking you to waive

Page 9

1    attorney/client privilege.  So at any point if I'm asking

2    you a question that would invade the privilege you of

3    course --

4            MR. BALDIGA:  I appreciate that, Your Honor.

5            THE COURT:  -- should stop -- should stop short.

6            MR. BALDIGA:  And it's a fuzzy line, I admit.

7            THE COURT:  I understand.

8            MR. BALDIGA:  So I'm trying to be responsive to

9    the Court.

10           THE COURT:  I'm trying to -- I appreciate that.

11   I'm trying to get to the facts, but I'm not at all

12   requesting or demanding that you waive attorney/client

13   privilege.

14           MR. BALDIGA:  I appreciate that very much.

15           THE COURT:  Okay.

16           MR. BALDIGA:  And, Your Honor, I would appreciate

17   that if I were to say something inadvertently that did

18   invade that it's not taken as some --

19           THE COURT:  As a blind waiver.

20           MR. BALDIGA:  -- general waiver.  I'm trying to be

21   responsive.

22           THE COURT:  Absolutely.

23           MR. BALDIGA:  Thank you.

24           The -- I won't go too deep into the facts as to

25   the foreclosure because the adversary proceeding filed in

1    this case lays that out I think in quite some detail, but

2    there was in fact a foreclosure.  It was a strict

3    foreclosure where Mr. Duronin's entity took out of strict

4    foreclosure the stock to satisfy that loan.  That loan was

5    somewhere in the range of 175- to $200 million, depending on

6    the accrual of interest and cost and so forth.  And at that

7    point we thought, based on the information that we were

8    given, that that was an avoidable transaction.

9            There was then some discussion, but very sporadic,

10   over the next several months about whether ARGO would in

11   fact file.  There are several, and it now looks like

12   inconsistent, orders of other courts authorizing various

13   entities to petition ARGO into bankruptcy, but there is one

14   BVI order of which we were very much made aware, through the

15   Candey law firm, in about September authorizing PHRL to put

16   ARGO into bankruptcy.

17           When the involuntary petitions were filed we had

18   already, through the work from August forward, thought that

19   there was a good reorganization purpose for ARGO to be in

20   Chapter 11 to test the validity of that sale, for the

21   reasons in that adversary proceeding; however, there was not

22   clarity as to who, if anyone, could petition ARGO -- a

23   voluntary petition for ARGO, so we couldn't undertake to do

24   that.  But when the involuntary --

25           THE COURT:  By the way, just coincidentally

Page 11

1    though, that's not a proper purpose for filing an

2    involuntary.  I mean there's a statute that lays out what an

3    involuntary is supposed to be about.  Testing the validity

4    of a transfer is not -- it's not one of the basis for

5    putting an entity into an involuntary.

6             MR. BALDIGA:  Well, Your Honor, I -- we certainly

7    are familiar --

8             THE COURT:  If the entity otherwise qualifies for

9    a Chapter 11 protection then certainly one of the things

10   incident to a proceeding would be to explore transfers.  But

11   simply identifying the transfer and deciding that it needs

12   to be explored is not a sufficient basis for filing an

13   involuntary.

14            MR. BALDIGA:  I do appreciate, Your Honor, that an

15   entity has to be eligible for Chapter 11 relief --

16            THE COURT:  Rights.

17            MR. BALDIGA:  -- and it has to be under the

18   Kingston Square (ph) and other prodigy.

19            THE COURT:  Right.

20            MR. BALDIGA:  There has to be a reorganization

21   purpose.

22            THE COURT:  Right.  So here we have insiders

23   filing a petition.

24            MR. BALDIGA:  At least some of them are insiders.

25            THE COURT:  But the -- Mr. Amanot certainly is.

1           MR. BALDIGA:  Well, yes, Your Honor, I would say

2    that except if the allegations presented by Kasowitz are

3    correct none of the petitioners would be insiders after

4    August of 2015.

5           THE COURT:  I see your point.

6           MR. BALDIGA:  And so even on that issue, Your

7    Honor, there's a lot of ambiguity.

8           But yes, at one point at least some of the

9    petitioning creditors were insiders, and it appears that for

10   the six months or so prior to the commencement of the case

11   they maybe were not.  But --

12          THE COURT:  Okay.  So at a certain point then your

13   firm determined that it could no longer continue to act?

14          MR. BALDIGA:  Yes.  And for the reasons that we

15   could not ourselves disclose in our papers however in the

16   papers that were filed by other parties after that I think

17   it's become clear on the record what occurred and that

18   mandates withdrawal in our mind.

19          THE COURT:  All right.  All right.  Thank you very

20   much.

21          MR. BALDIGA:  Thank you, Your Honor.

22          THE COURT:  All right.  So now we can go back.  So

23   there is no opposition to the withdrawal?

24          MR. GLENN:  There was a limited objection --

25          THE COURT:  Right.

```
 1                MR. GLENN:  Oh, to the withdrawal.  To the
 2   withdrawal.  No, Your Honor.
 3                THE COURT:  To the withdrawal.
 4                MR. GLENN:  No.
 5                THE COURT:  To the withdrawal.
 6                MR. GLENN:  No objection.
 7                THE COURT:  All right.  So I'm going to grant the
 8   withdrawal, but with the understanding that we need -- we're
 9   going to get to the bottom of all of this.  And to the
10   extent that there are going to be costs that need to be
11   reimbursed or consequences of this proceeding being
12   commenced, if it in fact does not continue, that the Brown
13   Rudnick firm will be in the mix for those determinations.
14                The withdrawal is simply frankly taking you at
15   your word that under the rules -- the ethical rules you can
16   no longer act and I have no opposition and therefore you can
17   be relieved, but with the reservation as to potential
18   consequences for -- I won't say the improper filing of an
19   involuntary, because you did not file it, but we just have
20   to get to the end before you can be fully out of the case.
21                MR. BALDIGA:  Understood, Your Honor.
22                THE COURT:  All right?  Okay.
23                All right.  So now the Kasowitz firm is
24   representing the debtor; is that correct?
25                MR. GLENN:  Correct, Your Honor.
```

1          THE COURT:  Okay.  So I guess we now have to turn

2    also to the ad hoc group who seems to be opposing the

3    dismissal of this action.  Is that right?

4          MR. GLENN:  That's the only filing we saw, yes.

5          THE COURT:  Okay.  And then we also have a motion

6    by a number of the allegedly petitioning creditors.  Mr. --

7    is it Mr. Zecha?

8          MS. STRICKLAND:  Yes, Your Honor.

9          THE COURT:  Mr. Robinson, and Ms. Turnbull.

10   Ms. Strickland -- all right.  So there's also a pending

11   motion to withdraw those petitioning creditors from the

12   involuntary petition.

13         So perhaps it would be a good time now to hear

14   from the ad hoc group as to whether they in fact are taking

15   a position that this case should continue.

16         MR. GOLDINSTEIN:  Good morning, Your Honor.

17         THE COURT:  Good morning.

18         MR. GOLDINSTEIN:  Arkady Goldinstein, DLA Piper

19   LLP --

20         THE COURT:  Yes.

21         MR. GOLDINSTEIN:  -- (US) on behalf of the ad hoc

22   group.

23         Your Honor, there were many allegations made by

24   both sides in the papers that have been filed, and the ad

25   hoc group takes no position with either the side that's

1  controlled by Mr. Duronin or the side that's controlled by

2  Mr. Amanot.  But the members of the ad hoc group do believe

3  that they have whole valid claims against ARGL.  And today

4  three of them provided proof of those claims to us,

5  documentation supporting claims.  One we understand we've

6  been told is traveling and hasn't provided it yet.  We were

7  in the process of investigating those -- well studying them.

8         The members of the ad hoc group believe that the

9  allegations made in the complaint, even though Brown Rudnick

10  firm has withdrawn, could potentially, if pursued and turned

11  out to be valid, will result in substantial recoveries from

12  the claims that they believe to have be valid claims against

13  the debtor.

14         And, Your Honor, in light of all the allegations

15  that have been brought, the ad hoc group believes that a

16  neutral third party, like a Chapter 11 Trustee, would be

17  appropriate to investigate and to get to the bottom of all

18  this just like you said.

19         So -- and as you know, the events have been

20  unfolding rather quickly.  Both sides have had apparently

21  long exposure to the facts and circumstances.  We have been

22  retained really the weekend before the Monday last week when

23  we filed our objection.  And in light of that we believe an

24  adjournment would be appropriate, and believe that would be

25  the best in the interest of the estate and the creditors

1   under the circumstances.

2              THE COURT:  Thank you.

3              MR. GOLDINSTEIN:  Thank you.

4              THE COURT:  Thank you.

5              All right.  So the debtor is asking to strike the

6    answer and the consent to entry of the order for relief and

7    dismiss the case and impose fees, costs, and sanctions.

8              MR. GLENN:  That's correct, Your Honor.

9              THE COURT:  All right.  Is there anything that

10   you'd like to add that isn't in your pleadings?

11             MR. GLENN:  Well -- excuse me for a minute.

12             THE COURT:  Sure.

13        (Pause)

14             MR. GLENN:  Your Honor, I don't want to belabor

15   the record because we submitted to Your Honor a tremendous

16   amount of paper.  I know --

17             THE COURT:  Yes, you did.

18             MR. GLENN:  -- you've been busy on other matters,

19   but I think a couple things bear emphasis.

20             Number one, when the limited objection came we

21   immediately sent a letter to them to try to get a better

22   understanding of their views about this.  And number one,

23   like we did with Mr. Baldiga, like we did with Mr. Gross, we

24   demanded that they walk away, but if not give us some proof.

25             THE COURT:  Have you had conversations with

1     Mr. Gross?

2              MR. GLENN:  We have called him, he has not

3     returned our messages.  We told him we believed he had to

4     appear in court today because in bankruptcy court you've got

5     to do what Brown Rudnick did, move to withdrawal, you can't

6     just --

7              THE COURT:  Correct.

8              MR. GLENN:  -- walk away from this.

9              THE COURT:  Correct.

10             MR. GLENN:  None of those --

11             THE COURT:  There was no -- I very much wanted him

12    to be here today, but there was no crisp way to cause that

13    to occur, and I felt that it'd be better to have you all in

14    first.  But at the next go round he will have to appear.

15             MR. GLENN:  Understood.

16             So we asked for some proof that anyone has a valid

17    claim, anything to show us that they're true creditors of

18    these estates so we could actually litigate that issue, if

19    necessary.  No one has put forward any evidence of any

20    claims.  Obviously our papers go into chapter and verse as

21    to the reasons why an involuntary wasn't otherwise

22    appropriate.  So even if they had put forth claims we still

23    think the case should have been dismissed.  But no one has

24    done that.

25             We've done more background research on the ad hoc

1   group.  There appear to be a tremendous amount of

2   connections with Mr. Amanot in that group, including the

3   fund investment, and pardon me if I've not pronounced the

4   French correctly, as being the litigation funding entity for

5   Mr. Amanot for the historical litigation in London.

6          So we think, as Your Honor said, this is all

7   litigation stirred up by insiders.  Whether they are

8   insiders now or whether they were insiders six months ago I

9   think that's not really the point.  They're not arms length

10  players with a true arms length creditor purpose to bring

11  these proceedings.  This is just more of a game.  Much more

12  of harassment to us, which is why the Brown Rudnick withdrew

13  from this case.

14         So unless Your Honor has any other questions I'm

15  prepared to rest on the papers.

16         THE COURT:  Okay.  All right.  So I'm just going

17  to try to do this correctly procedurally.

18         Ms. Strickland, why don't you come on up.

19         MS. STRICKLAND:  Good morning.

20         THE COURT:  How are you?

21         So I think it's probably pretty clear that I'm

22  moving toward dismissing this case.  And before I do that I

23  just want the -- these orders are going to have to be

24  entered in the right order, so to speak.

25         So is there anyone who opposes the motion to

1   withdraw the petition in creditors' claims from the

2   involuntary petition that's entered at docket 18 that's been

3   filed on behalf of Mr. Zecha, Mr. Robinson, and

4   Ms. Turnbull?

5           MR. GLENN:  No objection, Your Honor, as long as

6   it's done in the same terms as otherwise.  That, you know,

7   we have to look into this and everyone reserves their

8   substantive rights.

9           THE COURT:  There's nothing on the face of this

10  pleading that indicates -- well, there's nothing that

11  indicates anything other than that these petitioning

12  creditors are making a representation that they had no part

13  in this, but with respect to keeping the playing field

14  level, yes, those same conditions will apply.

15          But Ms. Strickland, I'm going to grant the

16  motion --

17          MS. STRICKLAND:  Thank you.

18          THE COURT:  -- to how your clients to withdraw.

19          MS. STRICKLAND:  Thank you.

20          THE COURT:  All right?  Thank you.

21          Okay.  With respect to the argument that we should

22  wait and see and see if there are additional creditors who

23  have bona fide claims who would be able to file or fill the

24  shoes, if you will, of the petitioning creditors, that's not

25  the way it works.

1          This case is going to be dismissed, but with a

2     reservation of jurisdiction to impose sanctions and other

3     appropriate relief both under Rule 11 and under the

4     Bankruptcy Code.  If in fact there are other creditors who

5     believe that they have bona fide claims and otherwise could

6     get together and file an involuntary petition that would be

7     appropriate they're free to do so, but this particular case

8     is going to be dismissed, subject to a reservation of

9     jurisdiction to entertain motions for fees, costs, and other

10    sanctions.  All right?

11         So I will need by my count three orders.  One

12    order with respect to the Brown Rudnick withdrawal, an order

13    from the Willkie Farr firm, and an order from the Kasowitz

14    firm.  And I would ask that you all share everything with

15    everyone who's filed papers, including counsel for the ad

16    hoc group.  All right?

17         Mr. Zipes, how are you today?

18         MR. ZIPES:  Very well, Your Honor.

19         THE COURT:  You could probably sense that I'm a

20    little unhappy about this.

21         MR. ZIPES:  Yes.

22         THE COURT:  All right?  This Court has a lot to

23    do.  This is not -- does not appear to be an appropriate use

24    of the bankruptcy process nor a use of the bankruptcy

25    process that's consistent with the integrity of the

1    bankruptcy process, subject obviously to the development of

2    further facts.

3              Does your office have a position?

4              MR. ZIPES:  Your Honor, we -- the Court ruled, we

5    would have to the extent we were asked we didn't file papers

6    but we were in support of dismissal with the reservation and

7    also we intend to be in contact with the Kasowitz firm and

8    others to discuss possible next steps.

9              THE COURT:  All right.  Thank you.

10             Okay.  Does anyone else wish to be heard on

11   anything relating to Aman Resorts Group Limited?

12             What I would like to do is put this on the

13   calendar for further proceedings with respect to requests

14   for sanctions, if in fact the parties intend to proceed with

15   that.  Do you intend to proceed with that?

16             MR. GLENN:  We do, Your Honor.

17             THE COURT:  All right.  And how do you intend to

18   proceed?

19             MR. GLENN:  I think there are two levels of --

20             THE COURT:  There are.

21             MR. GLENN:  -- recovery for us.  I think one is

22   almost automatic when you file an involuntary petition and

23   you fail the presumption is you get fees.

24             THE COURT:  Right.

25             MR. GLENN:  Then --

Page 22

1          THE COURT:  Without regard to bad faith.

2          MR. GLENN:  Exactly.

3          THE COURT:  Then there's a bad faith element.

4          MR. GLENN:  I think we need discovery into the bad

5    faith issue.  We've served some formally, some informally.

6    We would proceed with some discovery in between now and the

7    time of the hearing.  And then the application would be

8    crystallized then.

9          THE COURT:  All right.  So do you want a hearing

10   date or do you want a status conference?

11         MR. GLENN:  I think what we'd like to do is get

12   back -- confer with our client and get back to the Court

13   after consulting with the other parties about the process.

14   Maybe we can do some of this at least consensually, and then

15   depending on the time we need and other parties' needs we'll

16   have a date for Your Honor.

17         THE COURT:  All right.

18         MR. GLENN:  But after the hearing.

19         THE COURT:  Well whatever date you pick, whether

20   it's for status or a hearing, we're going to need a notice

21   put on the docket and we will -- we'll also want it to be

22   clear that Mr. Gross will need to appear in person.

23         MR. GLENN:  Okay.  I was going to ask Your Honor

24   if we should give him an order to show cause on that return

25   date so it's amply clear that not only his presence is

Page 23

1    requested, but in fact required.

2              THE COURT:  Yes.

3              MR. GLENN:  Thank you.

4              THE COURT:  All right?  Anything else?

5         Okay.  Thank you all for coming down here on this

6    rainy day.

7              UNIDENTIFIED SPEAKER:  Thank you.

8              THE COURT:  Have a good one.

9         (Whereupon these proceedings were concluded at 10:29

10   AM)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                          I N D E X

2

3                           RULINGS

4                                                         PAGE

5   Doc #8 Motion to Withdraw as Attorney                  19

6

7   Doc #10 Motion to (A) Strike the Answer to

8   Involuntary Petition and Consent to Entry of Order

9   for Relief, (B) Dismiss Chapter 11 Case, and (C)

10  Impose Attorney's Fees, Costs, and Sanctions           19

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 25

1                       C E R T I F I C A T I O N

2

3    I, Dawn South, certify that the foregoing transcript is a

4    true and accurate record of the proceedings.

5    Dawn South    Digitally signed by Dawn South
                   DN: cn=Dawn South, o, ou,
                   email=digital1@veritext.com, c=US
6    _____    Date: 2016.03.29 14:34:44 -04'00'

7    Dawn South

8    AAERT Certified Electronic Transcriber CET**D-408

9

10

11

12   Date:  March 29, 2016

13

14

15

16

17

18

19

20

21

22    Veritext Legal Solutions

23    330 Old Country Road

24    Suite 300

25    Mineola, NY 11501