Andrew K. Glenn
Paul M. O'Connor III
Matthew B. Stein
KASOWITZ, BENSON, TORRES
  & FRIEDMAN LLP
1633 Broadway
New York, New York 10019
Telephone:  (212) 506-1700
Facsimile:  (212) 506-1800

*Counsel for Aman Resorts Group Limited*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------x
In re                                 :

                                    :     Chapter 11

Aman Resorts Group Limited,      :

                                    :     Case No. 16-10517 (SCC)

                    Debtor.      :
-----------------------------------------------------x

<u>**AMAN RESORTS GROUP LIMITED'S MOTION TO COMPEL DISCOVERY**</u>

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................................................ii

PRELIMINARY STATEMENT ............................................................................................. 1

STATEMENT OF FACTS ....................................................................................................... 2

I.      PROCEDURAL HISTORY.......................................................................................... 2

II.     ENTITIES PURPORTEDLY ACTING AS OR ON BEHALF OF ARGL
        RETAIN BROWN RUDNICK.................................................................................... 5

III.    AMANAT'S RELATIONSHIP WITH BROWN RUDNICK WAS IN
        FURTHERANCE OF A FRAUD.................................................................................. 7

IV.     BROWN RUDNICK WITHHOLDS PRODUCTION OF DOCUMENTS BASED
        ON ASSERTION OF ATTORNEY-CLIENT PRIVILEGE............................................ 8

JURISDICTION AND VENUE .............................................................................................. 9

RELIEF REQUESTED............................................................................................................ 9

ARGUMENT ........................................................................................................................... 9

I.      THE ATTORNEY-CLIENT PRIVILEGE ASSERTED BY BROWN RUDNICK
        BELONGS TO ARGL............................................................................................... 10

        A.      The Purported Client of Brown Rudnick Was ARGL. ....................................... 10

        B.      The Fiduciary Exception Mandates Disclosure Of Brown Rudnick's
                Withheld Documents To ARGL. ....................................................................... 12

II.     THE CRIME FRAUD EXCEPTION REQUIRES DISCLOSURE OF BROWN
        RUDNICK'S WITHHELD DOCUMENTS TO ARGL.................................................. 15

III.    BROWN RUDNICK'S PRIVILEGE LOG IS INSUFFICIENT..................................... 18

CERTIFICATION PURSUANT TO BANKRUPTCY RULE 7037(A)(1) ............................... 22

CONCLUSION........................................................................................................................ 23

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*In re Asia Glob. Crossing, Ltd.*,
   322 B.R. 247 (Bankr. S.D.N.Y. 2005) ...................................................................10

*Aurora Loan Servs., Inc. v. Posner, Posner & Associates, P.C.*,
   499 F. Supp. 2d 475 (S.D.N.Y. 2007)..................................................................20

*Avramides v. First Nat'l Bank of Maryland*,
   No. 87 Civ. 5732, 1997 WL 68559 (S.D.N.Y. Feb. 19, 1997) ...............................16

*Bank Brussels Lambert v. Credit Lyonnais (Suisse), S.A.*,
   210 F.R.D. 506 (S.D.N.Y. 2002) .........................................................................20

*Bank of Mong. V. M&P Global Fin. Servs.*,
   258 F.R.D. 514 (S.D. Fla. 2009).............................................................................9

*In re Canandaigua Land Dev., LLC*,
   521 B.R. 457 (Bankr. W.D.N.Y. 2014) ...............................................................11

*Chevron Corp. v. Salazar*,
   275 F.R.D. 437 (S.D.N.Y. 2011) .........................................................................17

*Everett v. MCI, Inc. (In re WorldCom, Inc.)*,
   2008 Bankr. LEXIS 437 (Bankr. S.D.N.Y. Feb. 14, 2008) ...................................10

*Evvtex Co. v. Hartley Cooper Assocs. Ltd.*,
   102 F.3d 1327 (2d Cir. 1996)...............................................................................13

*In re Gen. Motors LLC*,
   No. 14-MC-2543 (JMF), 2015 WL 7574460 (S.D.N.Y. Nov. 25, 2015) ..........15, 17

*In re Grand Jury Proceeding*,
   79 Fed. Appx. 476 (2d Cir. 2003)........................................................................21

*In re Grand Jury Subpoena Duces Tecum, Dated Sept. 15, 1983*,
   731 F.2d 1032 (2d Cir. 1984)..........................................................................15, 16

*Gucci Am., Inc. v. Guess?, Inc.*,
   No. 09 CIV 4373 SAS, 2011 WL 9375 (S.D.N.Y. Jan. 3, 2011) ...........................10

*In re Honeywell Int'l, Inc. Sec. Litig.*,
   230 F.R.D. 293 (S.D.N.Y. 2003) .........................................................................19

*Hoopes v. Carota*,
74 N.Y.2d 716 (1989) ................................................................................13, 14

*McNamee v. Clemens*,
09 CV 1647(SJ)(CLP), 2014 WL 1338720 (E.D.N.Y. Apr. 2, 2014) ..............19, 20

*Melendez v. Greiner*,
No. 01-07888, 2003 WL 22434101 (S.D.N.Y. Oct. 23, 2003)................................10

*Nama Holdings, LLC v. Greenberg Traurig LLP*,
133 A.D.3d 46 (N.Y. App. Div. 2015) .........................................................13, 14

*Nimkoff Rosenfeld & Schechter, LLP v. RKO Props., Ltd.*,
No. 07CIV7983DABHBP, 2016 WL 3042733 (S.D.N.Y. May 24, 2016) ...........19

*In re Omnicom Grp., Inc. Sec. Litig.*,
233 F.R.D. 400 (S.D.N.Y. 2006) ........................................................................16

*Passlogix, Inc. v. 2FA Tech., LLC*,
708 F. Supp. 2d 378 (S.D.N.Y. 2010)................................................................18

*In re Pfizer Inc. Sec. Litig.*,
No. 90 Civ. 1260, 1993 WL 561125 (S.D.N.Y. Dec. 23, 1993)............................14

*Priest v. Hennessy*,
51 N.Y.2d 62, 409 N.E.2d 983 (1980)................................................................11

*Quintel Corp., N.V. v. Citibank, N.A.*,
567 F. Supp. 1357 (S.D.N.Y. 1983)....................................................................13

*Rambus, Inc. v. Infineon Techns. AG*,
220 F.R.D. 264 (E.D. Va. 2004) .........................................................................17

*Secured Worldwide, LLC v. Kinner*,
No. 15 CIV. 1761 CM, 2015 WL 4111325 (S.D.N.Y. June 24, 2015) ................11

*Sevenson Envtl. Servs., Inc. v. Sirius Am. Ins. Co.*,
64 A.D.3d 1234 (2009) ........................................................................................11

*Shamis v. Ambassador Factors Corp.*,
34 F. Supp. 2d 879 (2d. Cir. 1999) .....................................................................19

*Stenovich v. Wachtell, Lipton, Rosen & Katz*,
195 Misc. 2d 99 (Sup. Ct. 2003)...............................................................13, 14, 22

*Strougo v. BEA Assocs.*,
199 F.R.D. 515 (S.D.N.Y. 2001) ..................................................................19, 20

iii

*Ulico Cas. Co. v. Wilson, Elser, Moskowitz, Edelman & Dicker,*
 1 A.D.3d 223 (1st Dept. 2003)...........................................................................17

*United States v. Ceglia,*
 No. 12-CR-876 VSB, 2015 WL 1499194 (S.D.N.Y. Mar. 30, 2015) ....................17

*United States v. Constr. Prods. Research, Inc.,*
 73 F.3d 464 (2d Cir. 1996)...........................................................................19, 20

*United States v. Int'l Bd. of Teamsters,*
 119 F.3d 210 (2d Cir. 1997)................................................................................19

*United States v. Jacobs,*
 117 F.3d 82 (2d Cir. 1997), *abrogated on other grounds by Loughrin v.*
 *United States,* 134 S. Ct. 2384 (2014) ................................................................16

*von Bulow v. von Bulow,*
 811 F.2d 136 (2d Cir. 1986), *cert. den.,* 481 U.S. 1015 (1987)............................19

*Zimmerman v. Poly Prep Country Day Sch.,*
 No. 09 CV 4586 FB, 2012 WL 2049493 (E.D.N.Y. June 6, 2012)........................16

**Statutes**

11 U.S.C. § 105 ...........................................................................................................1

11 U.S.C. § 303 ...........................................................................................................4

11 U.S.C. § 305 ...........................................................................................................4

28 U.S.C. § 157 ...........................................................................................................9

28 U.S.C. § 1334 .........................................................................................................9

28 U.S.C. § 1408 .........................................................................................................9

28 U.S.C. § 1409 .........................................................................................................9

**Other Authorities**

Fed. R. Bankr. P. 7026 ...............................................................................................1

Fed. R. Bankr. P. 7037 .....................................................................................1, 9, 22

Fed. R. Bankr. P. 9011 ...............................................................................................4

Fed. R. Bankr. P. 9014 ...............................................................................................1

Fed. R. Civ. P. 26 ...................................................................................................1, 19

Fed. R. Civ. P. 37 .................................................................................................................1, 9

Local Civ. R. 26.2(A) ..............................................................................................................19

Local R. 7007-1 .......................................................................................................................22

New York Rules of Professional Conduct Rule 1.16 ...........................................................4, 18

Restatement (Second) of Torts § 874 (1979) ..........................................................................13

Aman Resorts Group Limited ("ARGL"), through its undersigned counsel, respectfully submits this motion (the "Motion") for entry of an order, pursuant to Section 105(a) of Title 11 of the United States Code (the "Bankruptcy Code") and Rules 26 and 37 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rules 7026, 7037, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), compelling Brown Rudnick LLP ("Brown Rudnick") to produce all documents responsive to ARGL's Requests for Production of Documents to Brown Rudnick (the "Requests"), dated April 1, 2016, that Brown Rudnick withheld from production on the basis of the attorney-client privilege.  In support of the Motion, ARGL respectfully represents as follows:

## PRELIMINARY STATEMENT

1.      On March 29, 2016, this Court granted ARGL's motion to dismiss the above-captioned involuntary chapter 11 case, holding that the involuntary bankruptcy petition filed on March 4, 2016 and amended involuntary bankruptcy petition filed on March 7, 2016 failed to satisfy the requirements of the Bankruptcy Code and were improperly filed.  Still pending before the Court is ARGL's motion to impose attorneys' fees, costs, and sanctions.

2.      During the intervening months, ARGL has sought to understand the full extent of the fraudulent filing and the parties responsible.  In the course of discovery, Brown Rudnick, *former counsel to ARGL* and a critical party involved in the efforts to initiate the bankruptcy case, produced a 267 page privilege log cataloging the thousands of documents it was withholding from production based on attorney-client privilege.  ARGL contends that this withholding of documents is unsupported by fact or law and respectfully requests that this Court order their production.

3.      First, ARGL submits that at all relevant times Brown Rudnick was retained as counsel for ARGL or on behalf of ARGL.  Brown Rudnick cannot withhold ARGL documents from ARGL on the grounds of privilege or otherwise.

4.      Second, even if the attorney-client privilege belongs to an entity other than ARGL, the crime-fraud exception applies and the production of the withheld documents is warranted.  Indeed, the evidence demonstrates Brown Rudnick's counsel was used to further a fraudulent scheme to force ARGL into bankruptcy.

5.      Finally, even if the crime-fraud exception does not apply here, the application of the attorney-client privilege to Brown Rudnick's documents is inconsistent at best.  Documents have been produced and withheld without any comprehensible basis for such determination. Moreover, Brown Rudnick's privilege log is replete with third parties with no ostensible connection to Brown Rudnick's client regardless of whether that client was ARGL.

6.      Accordingly, sufficient cause warrants entry of order requiring Brown Rudnick to turn over to ARGL all documents withheld by Brown Rudnick on the basis of attorney-client privilege.

## STATEMENT OF FACTS

### I.      Procedural History.

7.      The above-captioned case (the "Chapter 11 Case") was commenced on March 4, 2016, when Kent Gross, Esq. filed an involuntary Chapter 11 petition against ARGL (the "Original Petition") with this Court on behalf of Omar Amanat ("Amanat"), Peak Venture Partners ("PVP"), and Carpentaria Management Services, Ltd. ("Carpentaria" and together with Amanat and PVP, the "Original Petitioners").  *See* Dkt. No. 1.  In addition to Mr. Gross, the Original Petition was signed by Amanat on behalf of himself and PVP and by Sean Sullivan on behalf of Carpentaria.  *Id.*

8.     On March 7, 2016, an amended involuntary petition (the "Amended Petition," and together with the Original Petition, the "Petitions") was filed with this Court against ARGL by Mr. Gross on behalf of Carolyn Turnbull, George Robinson, Fonde Investment Capital SA, and Adrian Zecha (collectively, the "New Petitioners," and together with the Original Petitioners, the "Petitioners").  *See* Dkt. No. 3.

9.     Also on March 7, 2016, Brown Rudnick, purportedly acting as counsel for ARGL "by" Carpentaria, filed an *Answer to Involuntary Petition* (the "Answer") consenting to the Original Petition that Carpentaria itself had filed on March 4, 2016.  *See* Dkt. No. 4.  Attached thereto was a Direction and Authorization of Carpentaria Management Services Limited to Aman Resorts Group Limited to File Answer and Consent to Involuntary Petition (the "Direction and Authorization") signed by Carpentaria on behalf of ARGL, effectively granting itself the authority to act "in the best interests of ARGL."  *See* Dkt. No. 4 at Ex. 1.  The Direction and Authorization provided that it was issued pursuant to and in accordance with (i) an *Order*, entered on October 15, 2015 (the "October BVI Order"), of the Eastern Caribbean Supreme Court in the High Court of Justice, Virgin Islands, Commercial Division (the "VI Court") granting Peak Hotels and Resorts Limited ("PHRL") the authority to commence and prosecute a Chapter 11 case in the name of and on behalf of ARGL, and (ii) an Irrevocable Appointment and Assignment of Interest, dated October 16, 2015 (the "Assignment of Interest"), whereby PHRL assigned its rights under the BVI October Order to Carpentaria.  *See id*.

10.    On March 9, 2016, this Court, finding that "the Debtor [had] consented to the entry of an Order for Relief," entered an *Order for Relief* under Chapter 11 of the Bankruptcy Code (the "Consent Order").  *See* Dkt. No. 6.

3

11.     On March 11, 2016, ARGL filed a *Motion To (A) Strike The Answer To Involuntary Petition And Consent To Entry Of Order For Relief, (B) Dismiss The Chapter 11 Case, And (C) Impose Attorneys' Fees, Costs, And Sanctions* (the "Motion to Dismiss").  *See* Dkt. No. 10.  In the Motion to Dismiss, ARGL argued that (i) the Court should strike the Answer because Carpentaria lacked the requisite authority to act on behalf of ARGL; (ii) the Court should dismiss the Chapter 11 Case pursuant to Sections 303 and 305 of the Bankruptcy Code because the Petitions were filed in bad faith; and (iii) ARGL should be awarded fees, costs, and damages under Section 303(i) of the Bankruptcy Code and Bankruptcy Rule 9011 because, among other things, the Petitions were filed in bad faith and without authority.  *Id.*

12.     Also on March 11, 2016, Brown Rudnick moved to withdraw as counsel to ARGL based upon its belief "that its continued representation of ARGL in this case and adversary proceeding would be inconsistent with Rule 1.16 of the New York Rules of Professional Conduct."  Dkt. No. 8 (emphasis added).  Rule 1.16 of the New York Rules of Professional Conduct mandates withdrawal where counsel determines its client is proceeding maliciously on claims with no legal merit.

13.     On March 16, 2016, Mr. Gross, the attorney who filed the Original Petition and Amended Petition, filed a Notice of Withdrawal, stating that he had withdrawn from the representation of the Petitioners.  *See* Dkt. No. 16.

14.     Also on March 16, 2016, Willkie Farr & Gallagher LLP appeared on behalf of three of the New Petitioners, who subsequently filed a motion to withdraw their claims from the Amended Petition, stating that none of them had "signed an engagement letter retaining Mr. Gross," and that the "Amended Petition was filed without the knowledge of Mr. Zecha, without

the authorization of Ms. Turnbull, and with Mr. Robinson's claim having been amended without

his authority and consent." Dkt. No. 18.

15.     On March 28, 2016, the Court held a hearing on the Motion to Dismiss.  At the

conclusion of the hearing, the Court informed the parties that it would dismiss the Chapter 11

Case, and schedule an additional hearing to adjudicate ARGL's request, as part of the Motion to

Dismiss, to assess attorneys' fees, costs, and sanctions.  On March 29, 2016, the Court entered an

*Order Dismissing Involuntary Chapter 11 Case*.  *See* Dkt. No. 35.  Also on March 29, 2016, the

Court entered an order permitting Brown Rudnick to withdraw as counsel to ARGL.  *See* Dkt.

No. 32.  No order has been entered granting Mr. Gross' motion to withdraw as counsel to the

Petitioners.

## II.     Entities Purportedly Acting As Or On Behalf Of ARGL Retain Brown Rudnick.

16.     On July 31, 2015, Brown Rudnick and PHRL signed a letter outlining Brown

Rudnick's terms of engagement (the "Engagement Letter") as counsel for ARGL.  *See*

Declaration of Matthew B. Stein, dated October 28, 2016 ("Stein Declaration"), Ex. A.  The

Engagement Letter specifically defined "Client" as ARGL.  *Id*. at 1.  Moreover, the Engagement

Letter provided that PHRL was acting "***in its capacity as an ultimate shareholder of [ARGL]***

and intending to exercise its derivative right as to and to protect the assets of ARGL[.]"  *Id.*

(emphasis added).  The Engagement Letter was signed by Amanat on behalf of PHRL and vested

sole authority to direct Brown Rudnick for ARGL in Amanat and Ms. Turnbull.

17.     The documents produced to date by Brown Rudnick confirm that Amanat retained

Brown Rudnick on behalf of ARGL.  The communications reflect a primary focus of

commencing a bankruptcy case on behalf of ARGL.  *See, e.g.,* Stein Declaration, Ex. B (email

from O. Amanat to W. Baldiga explaining Amanat's ability to act for ARGL); Ex. C (email from

O. Amanat to W. Baldiga introducing corporate counsel for ARGL in connection with

commencement of Chapter 11 case); Ex. D (email from O. Amanat introducing W. Baldiga as

ARGL's counsel to H. Dunkerly); Ex. E (email from K. Gross to W. Baldiga informing him of

the intent to proceed with the Chapter 11 filing; also establishes the connection between Kent

Gross and Brown Rudnick), Ex. F (email from W. Baldiga describing conversation with Amanat

regarding a Chapter 11 filing); Ex. G (email from W. Baldiga providing legal advice as to the

efficacy of a Chapter 11 filing in the wake of a motion seeking to set aside the October BVI

Order); Ex. H (email from W. Baldiga providing legal advice in connection with an agreement

for PHRL to refrain from exercising its authority pursuant to the BVI October Order to

commence a Chapter 11 case).  In particular, in connection with an attempt to create a

jurisdictional basis for ARGL to commence a bankruptcy case in the United States, Amanat

opened a bank account in New York in the name of ARGL and then excitedly informed Brown

Rudnick and Kent Gross about such feat.  *See* Stein Declaration, at Ex. I.

18.     Further supporting the fact that Amanat represented to Brown Rudnick that the

client was ARGL and that Brown Rudnick believed its client was ARGL are ███████████

████████████████████████████████████████████████████████████

██████     *See, e.g.*, Stein Declaration, at Ex. J.

19.     Ultimately, conclusive proof that Amanat engaged in communications with

Brown Rudnick as if he were a duly authorized representative of ARGL are the five documents

filed by Brown Rudnick in the Chapter 11 Case on behalf of ARGL.  *See* Dkt. Nos. 4, 5, 8, 9,

and 25.  Indeed, in the *Declaration of William R. Baldiga in Support of Motion of Brown

Rudnick LLP to Withdraw as Counsel*, dated March 11, 2016, Mr. Baldiga declared that Brown

Rudnick LLP are the "attorneys of record for Aman Resorts Group Limited."  Dkt. No. 9 at 1.

20.     This evidence irrefutably shows that, at all times, Amanat represented that he was authorized to act as or on behalf of ARGL and that Brown Rudnick acted accordingly.

**III.     Amanat's Relationship With Brown Rudnick Was In Furtherance Of A Fraud.**

21.     As set forth above, the Answer filed by Brown Rudnick on behalf of ARGL purported to act upon the "authorization" granted by the Direction and Authorization.  The Direction and Authorization, in turn, is premised only on the October BVI Order and the Assignment of Interest.  However, contrary to the assertion in the Answer, at the time the Answer was filed, the October BVI Order had been superseded.

22.     On December 1, 2015, PHRL agreed to a Consent Order (the "Consent Order") pursuant to which PHRL gave an undertaking that it would not "take any steps to commence or prosecute derivative Chapter 11 proceedings in New York . . .," as the October BVI Order had authorized, pending the hearing of an application to set aside the October BVI Order.  Stein Declaration, Ex. K.  Thus, to the extent it had the right to institute or consent to any bankruptcy proceedings for ARGL under the October BVI Order (which ARGL also disputes), Carpentaria lost that right to act when PHRL agreed to the Consent Order.  On March 4, 2016 (prior to the filing of the Answer), an order was filed with the VI Court setting aside the October BVI Order (the "March BVI Order").  Stein Declaration, Ex. L.  The evidence suggests that, at the very least, Brown Rudnick presented the October BVI Order to this Court as the basis for Carpentaria's authority to consent to the Petitions, even though it was aware of and helped draft the Consent Order.  *See* Stein Declaration, Ex. H.

23.     Additionally, the alleged Assignment of Interest was signed by a person, Sean L. Sullivan – the same individual who signed the Direction and Authorization and the Original Petition on behalf of Carpentaria – who was not authorized to sign such document on behalf of PHRL.  Mr. Sullivan was not a director of Peak Hotels:  the director at the relevant time was Ms.

Turnbull.  Stein Declaration, <u>Ex. M</u>.  Moreover, PHRL itself represented in a December 2015

court filing in the United Kingdom that "*from October 2014, the person with day-to-day conduct*

*of PHRL's and Carpentaria's affairs was Ms Turnbull*."  Stein Declaration, <u>Ex. N</u> at 16.

24.    Carpentaria's purported consent to the Original Petition on behalf of ARGL is

also proscribed by the terms of the Peak Hotels and Resorts Group Limited ("<u>PHRGL</u>")

Shareholder Agreement, dated January 31, 2014, between PHRL and Tarek Investments Ltd.

Stein Declaration, <u>Ex. O</u>.  Under this agreement, any proposal to wind up ARGL or any other

proceeding seeking liquidation, administration, reorganization, readjustment or other relief under

any bankruptcy, insolvency or similar law is a "Shareholder Reserved" matter, therefore

requiring approval of both shareholders.  *Id.*  There is no proof that the shareholders of PHRGL

approved the Original Petition, the Amended Petition, or the Answer.

25.    Thus, neither PHRL, nor Carpentaria, nor Brown Rudnick had any authority to act

on behalf of ARGL in filing the Answer.  Instead, the entire filing was the end result of a

fraudulent and bad faith scheme to force ARGL into bankruptcy.

**IV.    Brown Rudnick Withholds Production of Documents
Based on Assertion of Attorney-Client Privilege.**

26.    On April 1, 2016, in connection with its investigation of the fraudulent and bad

faith attempt to force ARGL into Chapter 11 proceedings, ARGL sent the Requests to Brown

Rudnick requesting production of the following documents:  (1) Brown Rudnick's engagement

in connection with ARGL, (2) authority given to Brown Rudnick to act on ARGL's behalf, (3)

the Answer, (4) Carpentaria's authority to act on ARGL's behalf, (5) the Chapter 11 Case, (6)

third party communications concerning the Chapter 11 Case, (7) the claims asserted in the

Original Petition and the Amended Petition, (8) ARGL's eligibility to be a debtor, (9) ARGL's

insolvent status, (10) claims asserted in the Adversary Proceeding, and (11) related financing.
*See* Stein Declaration, <u>Ex. P</u>.

27.     On April 29, 2016, Brown Rudnick made its initial production of 791 documents
and, on June 23, 2016, supplemented its production with 72 additional documents. ████████
██████████████████████████████████████████████████ *See* Stein Declaration, <u>Ex. Q</u>.

28.     ARGL has consistently disputed the legitimacy of Brown Rudnick withholding
the production of documents on the basis of attorney-client privilege.

29.     Attempts to resolve the discovery dispute outside of Court have proved
unsuccessful.

## JURISDICTION AND VENUE

30.     This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and
1334.  This matter constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).  Venue is
proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

31.     By this Motion, ARGL requests that this Court enter the order, substantially in the
form attached hereto as <u>Exhibit 1</u>, compelling Brown Rudnick to produce the documents sought
by ARGL in the Requests and currently withheld as privileged.

## ARGUMENT

32.     Federal Rule of Civil Procedure 37(a)(3)(B), made applicable through Bankruptcy
Rule 7037, provides that "[a] party seeking discovery may move for an order compelling an
answer, designation, production, or inspection.  This motion may be made if . . . a party fails to
produce documents . . . ."  *See also Bank of Mong. v. M&P Glob. Fin. Servs.*, 258 F.R.D. 514,
519 (S.D. Fla. 2009) ("If a party fails to answer a request for production, the discovering party
may move for an order compelling a response.").  On a motion to compel discovery, the "party

resisting discovery bears the burden of showing why discovery should be denied." *Everett v. MCI, Inc. (In re WorldCom, Inc.)*, 2008 Bankr. LEXIS 437, at *7-8 (Bankr. S.D.N.Y. Feb. 14, 2008); *see also Melendez v. Greiner*, No. 01-07888, 2003 WL 22434101 at *1 (S.D.N.Y. Oct. 23, 2003) ("where a party resists discovery of certain information, the burden is on that party to clarify and explain precisely why its objections are proper.").

33.    Here, ARGL asserts that it is entitled to discovery of those relevant documents that Brown Rudnick withheld from its production and included on its privilege log.  ARGL is entitled to this relief because: (i) the client whose attorney-client privilege Brown Rudnick is asserting is ARGL; (ii) the attorney-client privilege belongs to ARGL because Amanat asserted the retention of Brown Rudnick was for the benefit of ARGL; (iii) the crime-fraud exception to attorney-client privilege precludes withholding the production of documents to ARGL; and (iv) the privilege asserted is overbroad and was not applied consistently to Brown Rudnick's documents.

**I.    The Attorney-Client Privilege Asserted By Brown Rudnick Belongs To ARGL.**

   **A.    The Purported Client of Brown Rudnick Was ARGL.**

34.    Brown Rudnick's privilege assertions mandate the production of the withheld documents to ARGL because ARGL was Brown Rudnick's purported client.  Producing the documents to ARGL – the holder of the privilege – will not destroy the privilege.

35.    The attorney-client privilege, which applies to communications between client and counsel and extends to communications with agents of both, belongs to the client; only a client can assert the privilege. *See In re Asia Glob. Crossing, Ltd.*, 322 B.R. 247, 255 (Bankr. S.D.N.Y. 2005) ("The attorney-client privilege belongs to the client, and only the client can waive it.")  (internal citations omitted); *Gucci Am., Inc. v. Guess?, Inc.*, No. 09 CIV 4373 SAS, 2011 WL 9375, at *4 (S.D.N.Y. Jan. 3, 2011) ("[T]he client holds the privilege and only the

10

client can assert or waive it."); *Sevenson Envtl. Servs., Inc. v. Sirius Am. Ins. Co.*, 64 A.D.3d

1234, 1236 (2009) ("[T]he attorney-client privilege extends to communications to 'one serving

as an agent of either attorney or client[.]'") (internal citations omitted).

36.     Underpinning the assertion of privilege is the existence of an attorney-client

relationship.  Under New York law, the attorney-client relationship is contractual, and it is

"fundamental that an *explicit undertaking* to perform a *specific task* is required to establish an

attorney-client relationship." *Secured Worldwide, LLC v. Kinner*, No. 15 CIV. 1761 CM, 2015

WL 4111325, at *3 (S.D.N.Y. June 24, 2015) (internal citations omitted) (emphasis added).  "A

party's unilateral belief that one is her or her attorney is not dispositive."  *Id.*  Moreover, "[a]

lawyer's representation of a corporation or other entity . . . does not imply the representation of

any individual associated with that entity."  *Id.*  "Nor does the payment of legal fees by a third

person, in and of itself, create an attorney-client relationship between the attorney and his client's

benefactor sufficient to sustain a claim of privilege."  *Priest v. Hennessy*, 51 N.Y.2d 62, 69-70,

409 N.E.2d 983, 987 (1980).  Similarly, "[a]n attorney does not represent a shareholder simply

by reason of representation of the corporation, unless he affirmatively assumes that duty."  *In re

Canandaigua Land Dev., LLC*, 521 B.R. 457, 468 (Bankr. W.D.N.Y. 2014).

37.     Here, Brown Rudnick expressly and repeatedly purported to act as counsel for

ARGL – not PHRL, Carpentaria, or any other party.  PHRL signed the Engagement Letter with

Brown Rudnick in its capacity as ARGL's shareholder, purportedly on behalf of and for the

benefit of ARGL, and for the express purpose of protecting ARGL's assets.  At no time was

Brown Rudnick retained to represent any other party in this litigation, nor was any other party

represented by Brown Rudnick in an individual capacity.  Brown Rudnick held itself out as

ARGL's attorney and Brown Rudnick has not identified any other party with whom it has a

relationship protected by the attorney-client privilege.  Indeed, the Engagement Letter explicitly

labeled ARGL as the "Client" and stated that Brown Rudnick's engagement was to "represent

solely Client[.]"  Subsequent to signing the Engagement Letter, Brown Rudnick purported to act

on ARGL's behalf by providing legal advice in connection with a potential bankruptcy filing by

ARGL and ultimately filing the Answer on behalf of ARGL.

38.     Insofar as a party to this litigation is Brown Rudnick's client and able to assert the

privilege concerning the documents at issue, it is ARGL.  This privilege is not held by Amanat or

any other party involved.  Rather, because Amanat was expressly purporting to act as ARGL's

agent throughout his communications with Brown Rudnick and was never represented by Brown

Rudnick in his individual capacity, ARGL has the right to review communications between

Amanat and Brown Rudnick, as well as all other communications related to Brown Rudnick's

work on ARGL's behalf.

39.     Accordingly, the attorney-client privilege does not bar Brown Rudnick from

turning over the withheld documents to its purported client, ARGL.

**B.    The Fiduciary Exception Mandates Disclosure Of
Brown Rudnick's Withheld Documents To ARGL.**

40.     Even if the Court determines that Brown Rudnick's client was an entity other than

ARGL, ARGL remains entitled to the production of the withheld documents notwithstanding the

attorney-client privilege because of the fiduciary exception to the attorney-client privilege.  It is

indisputable that Amanat signed the Engagement Letter with Brown Rudnick on behalf of PHRL

"to protect its derivative right as to and to protect the asset of ARGL."  *See* Stein Declaration,

Ex. A.  In doing so, Amanat and PHRL held themselves out as acting as a fiduciary and in the

best interests of ARGL.  As such, Amanat and PHRL cannot shield documents from ARGL on

the basis of privilege.

12

41.    In New York, where a fiduciary relationship exists "between the party seeking

disclosure and the party who sought legal advice for the party seeking disclosure," *Stenovich v.*

*Wachtell, Lipton, Rosen & Katz*, 195 Misc. 2d 99, 112 (Sup. Ct. 2003), "some courts have held

that the attorney-client privilege does not attach at all while other courts have held that the

privilege attaches but that it may be set aside by a showing of good cause." *Hoopes v. Carota*,

74 N.Y.2d 716, 718 (1989) (internal citations omitted).  In so holding, courts have found that

"the privilege's purpose of encouraging attorney-client confidence was outweighed by the 'more

general and important right of those who look to fiduciaries to safeguard their interests to be able

to determine the proper functioning of the fiduciary.'"  *Quintel Corp., N.V. v. Citibank, N.A.*, 567

F. Supp. 1357, 1361 (S.D.N.Y. 1983) (internal citations omitted).  The rationale behind the

exception is that when a fiduciary seeks legal advice on behalf of a beneficiary, that fiduciary

"cannot cloak his or her actions from them, the attorney's 'real clients.'"  *Nama Holdings, LLC*

*v. Greenberg Traurig LLP*, 133 A.D.3d 46, 53 (N.Y. App. Div. 2015).  Accordingly, "the

controlling feature for the applicability of this exception is whether the legal advice was sought

for the benefit of the party seeking disclosure as a result of a fiduciary relationship[.]"  *Stenovich*,

195 Misc. 2d at 112.

42.    As a threshold matter, "[a] fiduciary relation exists between two [parties] when

one of them is under a duty to act for or to give advice for the benefit of another upon matters

within the scope of the relation."  Restatement (Second) of Torts § 874 (1979).  It is long-settled

in New York that "[a]n agent enters into a fiduciary relationship with a principal[.]"  *Evvtex Co.*

*v. Hartley Cooper Assocs. Ltd.*, 102 F.3d 1327, 1332 (2d Cir. 1996).

43.    A fiduciary relationship existed between PHRL, acting purportedly as agent, and

ARGL, as the identified principal.  PHRL explicitly engaged Brown Rudnick "***in its capacity*** as

an ultimate shareholder of Aman Resorts Group Limited."  Stein Declaration, Ex. A (emphasis

added).  Additionally, the legal advice here was sought for the alleged benefit and protection of

ARGL.  *Id.*  Throughout its dealings with PHRL and Amanat, Brown Rudnick was allegedly

under the impression given to it by Amanat that it was acting on behalf of ARGL.  As a result,

there is no basis for Brown Rudnick to withhold from production its communications concerning

ARGL from ARGL.

44.     Moreover, good cause exists for applying the fiduciary exception here.  New York

courts generally analyze four factors to determine whether good cause for disclosure exists: "(1)

the discovering party's stake in the fiduciary relationship; (2) the apparent merit of the claim; (3)

the need of the discovering party for the information; and (4) the nature of the communication

itself."  *In re Pfizer Inc. Sec. Litig.*, No. 90 Civ. 1260, 1993 WL 561125, at *13 (S.D.N.Y. Dec.

23, 1993).[1]  The "overarching consideration" is balancing the need for the information against

the threat to confidentiality.  *Nama Holdings*, 133 A.D.3d at 55.

45.     These factors weigh in favor of production.  ARGL was directly affected by a

decision to consent to an involuntary Chapter 11 bankruptcy filings on its behalf.  The

information sought is highly relevant and specific and may be the only evidence available that

would address the extent of Brown Rudnick and the Petitioners' involvement in furtherance of

the fraud against ARGL and this Court.  The possibility that this evidence is available from

another source is highly doubtful since Brown Rudnick provided advice, guidance, and other

---

[1]        In *Hoopes* the court held that good cause was established because "(1) plaintiffs may have been directly
affected by any decision the trustee made on his attorney's advice; (2) the information sought was highly relevant to
and may be the only evidence available on whether defendant's actions respecting the relevant transactions and
proposals were in furtherance of the interests of the beneficiaries of the trust or primarily for his own interests in
preserving and promoting the rewards and security of his position as corporate officer; (3) the communication
apparently related to prospective actions by defendant, not advice on past actions; (4) plaintiff's claims of
defendants self dealing and conflict of interests were at least colorable; and (5) the information sought was not only
relevant, but specific."  *Stenovich*, 195 Misc. 2d at 114-15 (summarizing *Hoopes*, 142 A.D.2d at 910-11).

services concerning the consent to the involuntary petition.  Such advice was also invariably

prospective.  Moreover, ARGL's allegations of bad faith and fraud "are of colorable merit," as

this court has indeed already recognized that more than mere bad faith exists.

46.    Thus, this court should find that the factors support production of the withheld

documents to ARGL.

## II.    The Crime Fraud Exception Requires Disclosure Of
## Brown Rudnick's Withheld Documents To ARGL.

47.    Assuming *arguendo* the existence of a privilege between Brown Rudnick and

parties other than ARGL or parties holding themselves out to be ARGL's fiduciaries, Brown

Rudnick's documents should be produced because no legal privilege will shield communications

or other conduct undertaken to perpetuate a fraud or a crime.  Here, Amanat's relationship with

Brown Rudnick is just that.  It was in furtherance of the commission of a crime or a fraud

through the filing of meritless and fraudulent Petitions followed by the fraudulent filing of the

Answer consenting to such filings.

48.    As articulated by the Second Circuit, "[i]t is well-established that communications

that otherwise would be protected by the attorney-client privilege . . . are not protected if they

relate to client communications in furtherance of contemplated or ongoing criminal or fraudulent

conduct."  *In re Grand Jury Subpoena Duces Tecum, Dated Sept. 15, 1983*, 731 F.2d 1032, 1038

(2d Cir. 1984) (internal citations omitted).  The crime-fraud exception applies to documents

otherwise protected by both the attorney-client privilege and work product protection.  *In re Gen.*

*Motors LLC*, No. 14-MC-2543 (JMF), 2015 WL 7574460, at *3 (S.D.N.Y. Nov. 25, 2015).

49.    The rationale for the crime-fraud exception is tied to the policies underlying the

attorney-client and work product privileges.  Whereas maintaining the confidentiality of

communications and work product "facilitates the rendering of sound legal advice, advice in

furtherance of a fraudulent or unlawful goal cannot be considered 'sound.'" *In re Grand Jury Subpoena Duces Tecum, Dated Sept. 15, 1983*, 731 F.2d at 1038. "Rather, advice in furtherance of such goals is socially perverse, and the client's communications seeking such advice are not worthy of protection." *Id.*

50.     To invoke the crime-fraud exception, a party must put forth a factual basis that (1) there is a showing of probable cause to believe a fraud or crime has been committed or attempted, and (2) that the communications in question were in furtherance thereof. *United States v. Jacobs*, 117 F.3d 82, 87 (2d Cir. 1997), *abrogated on other grounds by Loughrin v. United States*, 134 S. Ct. 2384, 2388 n. 2 (2014); *In re Grand Jury Subpoena Duces Tecum, Dated Sept. 15, 1983*, 731 F.2d at 1039. Specifically, "'if a prudent person [has] a reasonable basis to suspect the perpetration or attempted perpetration of a crime or fraud, and that the communications were in furtherance thereof,' then the burden has been satisfied and the documents are subject to disclosure." *Zimmerman v. Poly Prep Country Day Sch.*, No. 09 CV 4586 FB, 2012 WL 2049493, at *8 (E.D.N.Y. June 6, 2012) (quoting *In re Grand Jury Subpoena Duces Tecum, Dated Sept. 15, 1983,* 731 F.2d at 1039). It is the client's intent that is pertinent to the analysis, not that of the attorney. *In re Omnicom Grp., Inc. Sec. Litig.*, 233 F.R.D. 400, 404 (S.D.N.Y. 2006). Thus, the exception applies "even if the attorney is unaware that his advice is sought in furtherance of a crime or fraud." *Avramides v. First Nat'l Bank of Maryland*, No. 87 Civ. 5732, 1997 WL 68559, at *1 (S.D.N.Y. Feb. 19, 1997).

51.     With respect to the first prong, "the Second Circuit has not addressed what kinds of 'crime' or 'fraud' are sufficient to trigger the exception or the level of detail with which the crime or fraud must be alleged. District courts within the Circuit, however, have applied the exception beyond patently criminal or fraudulent activity to non-fraud intentional torts.

16

Additionally, some courts have held that '*misconduct fundamentally inconsistent with the basic premises of the adversary system*,' such as '*bad faith litigation conduct*,' falls within the scope of the exception." *In re Gen. Motors LLC*, 2015 WL 7574460, at *4 (internal citations omitted) (emphasis added); *see also Rambus, Inc. v. Infineon Techns. AG*, 220 F.R.D. 264, 281 (E.D. Va. 2004) ("The term 'crime/fraud exception' ... is a bit of a misnomer, as many courts have applied the exception to situations falling well outside of the definitions of crime or fraud."); *Chevron Corp. v. Salazar,* 275 F.R.D. 437, 452 (S.D.N.Y. 2011) (holding that fraud "embraces common law fraud"); *Ulico Cas. Co. v. Wilson, Elser, Moskowitz, Edelman & Dicker*, 1 A.D.3d 223, 224 (1st Dept. 2003) (applying the exception to "a fraudulent scheme, an alleged breach of fiduciary duty or an accusation of some other wrongful conduct").

52.     As to the second prong, this Court requires a showing that there was a "purposeful nexus" between the privileged communications or work product and the fraudulent activity, which has been interpreted to require only that the communication or document "'reasonably relate' to the subject matter of the purported fraud." *United States v. Ceglia*, No. 12-CR-876 VSB, 2015 WL 1499194, at *3 (S.D.N.Y. Mar. 30, 2015) (internal citations omitted). "[A] special prima facie showing is required where 'the very act of litigating is alleged as being in furtherance of a fraud.' Under those circumstances, which apply in this case, the party invoking the crime-fraud exception must make a prima facie showing of 'probable cause that the litigation or an aspect thereof had little or no legal or factual basis and was carried on substantially for the purpose of furthering the crime or fraud.'" *Id.* (internal citations omitted). Where, as here, "the very purpose of the underlying civil litigation [is] to perpetrate a fraud," courts have determined that "the communications with counsel prosecuting the litigation and their work product were plainly in furtherance of the overall fraud." *Id.* at *4-9.

53.     Here, PHRL and Amanat lacked any legal or factual basis for commencing the involuntary chapter 11 proceeding and for directing Brown Rudnick to file the Answer.  The underlying purpose of these actions was to perpetrate a fraud against ARGL and this Court.[2] Such fraudulent activity was blatant, as is demonstrated by this Court's dismissal of the Petitions, Brown Rudnick's withdrawal as counsel pursuant to Rule 1.16 of the New York Rules of Professional Conduct, the withdrawal of three petitioners from the Amended Petition, and the Court's repeated discussions of—as well as overwhelming evidence of— "bad faith plus."

54.     Specifically, by filing the Answer, Carpentaria purported to consent on behalf of ARGL *even though Carpentaria had no authority to do so*, submitting to the Court that its authority was based upon the October BVI Order – an order that it knew had been vacated by the Consent Order and the March BVI Order.  Carpentaria also failed to disclose to the Court the existence of the Shareholder Agreement, under which neither Carpentaria nor Brown Rudnick had any authority to act on behalf of ARGL in filing the Answer and Complaint.

55.     In light of the foregoing, the Court should compel Brown Rudnick to produce the documents requested by ARGL even if it finds that Brown Rudnick's client was an entity other than ARGL.

### III.     Brown Rudnick's Privilege Log Is Insufficient.

56.     In the alternative, even if this Court were to determine that PHRL has the right to assert the attorney-client privilege, this Court should find Brown Rudnick has failed to meet its

---

[2]      "A fraud on the court occurs where a party: (1) 'improperly influence[s] the trier;' (2) 'unfairly hamper[s] the presentation of the opposing party's claim or defense;' (3) 'lies to the court and his adversary intentionally, repeatedly, and about issues that are central to the truth-finding process;' or (4) 'knowingly submit[s] fraudulent documents to the Court.'"  *Passlogix, Inc. v. 2FA Tech., LLC*, 708 F. Supp. 2d 378, 395 (S.D.N.Y. 2010) (internal citations omitted).

burden of demonstrating that privilege attaches to the withheld documents and that as a result the documents must be disclosed.

57.    A party withholding documents pursuant to a claim of privilege must establish each element of the privilege claimed.[3] *United States v. Int'l Bd. of Teamsters*, 119 F.3d 210, 214 (2d Cir. 1997) (holding that an asserting party must establish the "attorney client privilege, in all of its elements").  Factual showings are required to support each element.  *Shamis v. Ambassador Factors Corp.*, 34 F. Supp. 2d 879, 892 (2d Cir. 1999) (this Circuit places "upon the party invoking the protection of a privilege the burden of proving the facts upon which the claim is based"); *von Bulow v. von Bulow*, 811 F.2d 136, 144 (2d Cir. 1986), *cert. den.*, 481 U.S. 1015 (1987) (same).  Moreover, the withholding party must include a description of withheld documents that enables other parties to assess whether the privilege is properly asserted.  *Strougo v. BEA Assocs.*, 199 F.R.D. 515, 519 (S.D.N.Y. 2001); *see also* Fed. R. Civ. P. 26(b)(5)(A)(ii). Accordingly, the description must detail the document's type, general subject matter, date, author, addressee, and other recipients.  *Strougo*, 199 F.R.D. at 519 (citing S.D.N.Y. Local Civ. Rule 26.2(A)).  The relationship of all parties to a communication must also be explained to show that their inclusion in the communication did not waive the privilege.  *Id.*

58.    Parties failing to adequately describe documents withheld or the basis for withholding risk waiver.[4] *Nimkoff Rosenfeld & Schechter, LLP v. RKO Props., Ltd.*, No. 07CIV7983DABHBP, 2016 WL 3042733, at *8 (S.D.N.Y. May 24, 2016) ("the Magistrate was

---

[3]    A party invoking the attorney-client privilege "must demonstrate that there was: (1) a communication between client and counsel, which (2) was intended to be and was in fact kept confidential, and (3) made for the purpose of obtaining or providing legal advice."  *United States v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996).  A party asserting work product protection "generally must show that the documents were prepared principally or exclusively to assist in anticipated or ongoing litigation."  *Id.*

[4]    "[A]lthough the result of waiver is harsh, the federal ... rules' importance should not be diminished by skirting their application when the results prove harsh to a party."  *McNamee v. Clemens, supra*, 2014 WL 1338720 at *3, *citing In re Honeywell Int'l, Inc. Sec. Litig.*, 230 F.R.D. 293, 299 (S.D.N.Y. 2003).

well within his discretion in finding that failure to provide an adequate privilege log is grounds

for rejecting a claim of privilege"); *Aurora Loan Servs., Inc. v. Posner, Posner & Assocs., P.C.*,

499 F. Supp. 2d 475, 479 (S.D.N.Y. 2007) (finding failure to identify which privilege is being

asserted—attorney-client or work product—a basis for deeming a log inadequate and that

"[f]ailure to furnish an adequate privilege log is grounds for rejecting a claim of attorney client

privilege."); *Strougo*, 199 F.R.D. at 521 ("[F]ailure . . . to describe the documents in conformity

with the Local Rules may result in a waiver of the privilege."); *Bank Brussels Lambert v. Credit*

*Lyonnais (Suisse), S.A.*, 210 F.R.D. 506, 509 (S.D.N.Y. 2002) ("*Bank Brussels II*") (holding that

where a log lacks "sufficient detail" to establish all elements of a privilege "the privilege should

be rejected"); *McNamee v. Clemens*, 09 CV 1647(SJ)(CLP), 2014 WL 1338720 at *4-5

(E.D.N.Y. Apr. 2, 2014) (holding that a deficient privilege log justified the finding that privilege

had been waived).

59.    Here, the privilege log produced by Brown Rudnick is woefully inadequate to

support a finding of privilege.  The log provides only a minimal description of each document:

the date, author, recipients, and often vague email subjects.  It fails to even identify the privilege

being asserted for each document, let alone the basis for such privilege.  Like the court in *United*

*States v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 473-74 (2d Cir. 1996), this court should

find the privilege log inadequate because it "contains a cursory description of each document"

and did "not provide enough information to support the privilege claim, particularly in the

glaring absence of any supporting affidavits or other documentation."

60.    Likewise, when the recipient list of the emails withheld are compared with the

emails in the set of over 800 documents that have been produced, it is entirely unclear the basis

for the withholding.  In particular, emails between Brown Rudnick, Amanat, and Kent Gross

(quoguelaw@msn.com and kent@swissalliedtrustag.com) are selectively produced and withheld. Compare Stein Declaration, <u>Ex. E</u> with <u>Ex. P</u>, pages 49, 71-92, 94-95, 99-103, 107, 150, 180, 254.  Similarly, emails between Brown Rudnick, Ken Judge, BVI counsel, Carolyn Turnbull, George Robinson, and Adriaan Zecha are produced and withheld.  Compare Stein Declaration, <u>Ex. F</u> with <u>Ex. P</u>, pages 36, 41, 42, 89-90, 131.  Indeed, it appears that Brown Rudnick is confused as to which individuals are within the privilege.

61.    Moreover, the absence of a legend to inform ARGL who these individuals are renders the task of determining whether the privilege was properly asserted impossible. Specifically, although it is able to speculate, ARGL is unclear as to the connection of the following individuals to the client and why the privilege applies to them:  (i) Ken Judge; (ii) Adriaan Zecha, (iii) George Robinson, (iv) individuals at fortress.com; (v) individuals at eaglerockcapital.com; (vi) individuals at 4stonebuildings.com; (vii) individuals at krys-global.com; (viii) individuals at halperinlaw.net; (ix) individuals at chapman.com; (x) individuals at conyersdill.com; (xi) individuals at bfklaw.com; (xii) individuals at mgbd.com; (xiii) individuals at arguscorp.net; (xiv) individuals at withersworldwide.com; (xv) individuals at dlapiper.com; (xvi) individuals at FTIconsulting.com; (xvii) individuals at kpmg.com and kpmg.vg; (xviii) individuals at charlesfussell.com; (xix) individuals at lennoxpaton.com; (xx) individuals at shertremonte.com; (xxi) individuals at fondinvest.com; and (xii) individuals at willkie.com.  The privilege log is filled with communications between Brown Rudnick and these parties for which no clear privilege attaches.

62.    It is well-settled law in the Second Circuit that communications with a third party are not covered by the attorney-client, work product, or joint defense privileges.  *In re Grand Jury Proceeding*, 79 Fed. Appx. 476, 477 (2d Cir. 2003).  Furthermore, when a privilege log

invokes the attorney-client privilege for items that have been shared with a third party, the party asserting the privilege must explain the role played by the third party that enables the privilege to be maintained.  If such log "fail[s] to identify the affiliations of and relationships between the parties and the persons listed on the [l]og," such documents are discoverable.  *Stenovich*, 195 Misc. 2d at 110.  Brown Rudnick has failed to make the requisite showing with respect to third parties, and has thus waived any claims to privilege it possessed over such documents.

63.      Accordingly, Brown Rudnick must clarify the scope of the parties within the privilege and permit a further determination whether (i) it improperly withheld communications with third parties and (ii) whether it waived the attorney-client privilege through the documents that it has produced to date.

## CERTIFICATION PURSUANT TO BANKRUPTCY RULE 7037(A)(1)

64.      Counsel for ARGL certifies, pursuant to Bankruptcy Rule 7037(a)(1) and Local Rule 7007-1, that the undersigned has attempted to confer with Saul Ewing concerning ARGL's document requests from Brown Rudnick, but was unable to obtain the requested discovery without court action.

## <u>CONCLUSION</u>

For the above reasons, ARGL respectfully requests that this Court order Brown Rudnick

to (i) produce all documents responsive to ARGL's document requests currently withheld as

privileged or (ii) produce all information necessary for a further determination of the accuracy of

its assertion of attorney-client privilege, and (iii) grant any other relief as is just and proper.

Dated: November 17, 2016
      New York, New York

<div style="margin-left:40%;">

By:  /s/ *Andrew K. Glenn*
Andrew K. Glenn (aglenn@kasowitz.com)
Paul M. O'Connor III (poconnor@kasowitz.com)
Matthew B. Stein (mstein@kasowitz.com)
KASOWITZ, BENSON, TORRES
  & FRIEDMAN LLP
1633 Broadway
New York, New York 10019
Telephone:  (212) 506-1700
Facsimile:  (212) 506-1800

*Counsel for Aman Resorts Group Limited*

</div>