# **EXHIBIT A**

**In Re:**

*AMAN RESORTS GROUP LIMITED*

*Case No. 16-10517-scc*

---

*February 23, 2017*

---

*eScribers, LLC*

*(973) 406-2250*

*operations@escribers.net*

*www.escribers.net*

To purchase copies of this transcript, please contact us by phone or email

Min-U-Script® with Word Index

1

2    UNITED STATES BANKRUPTCY COURT

3    SOUTHERN DISTRICT OF NEW YORK

4    Case No. 16-10517-scc

5    - - - - - - - - - - - - - - - - - - - -x

6    In the Matter of:

7

8    AMAN RESORTS GROUP LIMITED AND AMAN

9    RESORTS GROUP LIMITED, BY CARPENTARIA

10   MANAGEMENT SERVICES LIMITED,

11            Debtors.

12   - - - - - - - - - - - - - - - - - - - -x

13

14            United States Bankruptcy Court

15            One Bowling Green

16            New York, New York

17

18            February 23, 2017

19            3:08 PM

20

21

22

23   B E F O R E:

24   HON. SHELLEY C. CHAPMAN

25   U.S. BANKRUPTCY JUDGE

1

2    Doc #71 Motion to Compel Discovery filed by Andrew K. Glenn on

3    behalf of Aman Resorts Group Limited

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20   Transcribed by:  Penina Wolicki

21   eScribers, LLC

22   352 Seventh Avenue, Suite #604

23   New York, NY 10001

24   (973)406-2250

25   operations@escribers.net

```
 1   A P P E A R A N C E S:

 2   KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

 3         Attorneys for Aman Resorts Group Limited

 4         1633 Broadway

 5         New York, NY 10019

 6

 7   BY:   MATTHEW B. STEIN, ESQ.

 8

 9

10   UNITED STATES DEPARTMENT OF JUSTICE

11         Office of the United States Trustee

12         201 Varick Street

13         Suite 1006

14         New York, NY 10014

15

16   BY:   ANDREA B. SCHWARTZ, ESQ.

17

18

19   SAUL EWING LLP

20         Attorneys for Brown Rudnick

21         1037 Raymond Boulevard

22         Suite 1520

23         Newark, NJ 07102

24

25   BY:   SHARON L. LEVINE, ESQ.
```

1                    P R O C E E D I N G S

2            THE COURT:  Good afternoon.  Please have a seat.

3            MR. STEIN:  Good afternoon, Your Honor.

4            THE COURT:  Good afternoon.

5            MR. STEIN:  Matthew Stein; Kasowitz, Benson, Torres &

6    Friedman, on behalf of ARGL.  There are three motions before

7    you today:  ARGL's motion to compel, ARGL's related motion to

8    seal, and Brown Rudnick's cross-motion to afford potentially

9    affected parties the right to be heard on the motion to compel.

10           Two things as a matter of housekeeping.  First, with

11   respect to the motion to seal, what I was going to plan on

12   doing today, unless Your Honor had another idea, is keeping my

13   references to those documents that we filed under seal to a

14   minimum.

15           THE COURT:  Sure.

16           MR. STEIN:  But they're not the crux of what we're

17   going to discuss today.

18           THE COURT:  Right.

19           MR. STEIN:  Second, I want to make sure that Your

20   Honor is aware of we filed a supplemental declaration this

21   afternoon at noon.  I have additional copies, if Your Honor

22   would like them.

23           THE COURT:  That's the -- yes, I have that.  That

24   attaches the letter that was received from the joint

25   liquidators --

1           MR. STEIN:  That's correct.

2           THE COURT:  -- from KPMG.

3           MR. STEIN:  That's correct.

4           THE COURT:  Yes.

5           MR. STEIN:  So with that, I'm going to just jump right

6    into the motion.  The motion seeks to compel the production of

7    documents that have been withheld by Brown Rudnick on the basis

8    of attorney-client privilege.  The withheld documents are set

9    forth in a 267-page privilege log that's attached to my initial

10   declaration as Exhibit Q.

11          ARGL believes that we're entitled to these documents

12   for four main reasons:  1) ARGL was the client, and that it is

13   ARGL's privilege; 2) that PHRL, to the extent that it was Brown

14   Rudnick's client, was acting at all times on behalf of and as a

15   fiduciary for ARGL; 3) the crime-fraud exception to the

16   attorney-client privilege here applies; and 4th) waiver.

17          THE COURT:  Let me just jump right in --

18          MR. STEIN:  Sure.

19          THE COURT:  -- because the filing by KPMG was very

20   significant.

21          MR. STEIN:  I agree.

22          THE COURT:  And it kind of -- we're rolling down one

23   road, and then we get off to a side road.  So I just think it

24   might be useful, in the interests of efficiency, to hear from

25   Ms. Levine if she thinks that that changes anything that we're

1  about to do.

2          MS. LEVINE:  Sure.  So Your Honor, I'll just enter an

3  appearance for the record.

4          THE COURT:  Yeah, of course.

5          MS. LEVINE:  Sharon Levine, Saul Ewing, for Brown

6  Rudnick.  And with the Court's permission, introducing William

7  Baldiga of the Brown Rudnick firm --

8          THE COURT:  Okay, hello, sir.

9          MS. LEVINE:  -- who is in court as well.

10         Your Honor, we find ourselves in a little bit of an

11  awkward situation.  We never want to be --

12         THE COURT:  Well, I'm going to take you out of that

13  awkward situation.

14         MS. LEVINE:  The --

15         THE COURT:  Go ahead.

16         MS. LEVINE:  Because we always want to settle a

17  discovery motion to the extent that we --

18         THE COURT:  I understand.

19         MS. LEVINE:  -- can.

20         THE COURT:  Right.

21         MS. LEVINE:  But we're looking for some help from the

22  Court, because clearly there's a dispute here with regard to

23  whether and to what extent we had a client in the first place,

24  and if so, who that client was.

25         THE COURT:  Right.

1          MS. LEVINE:  And we're still struggling with that.

2          THE COURT:  I understand.

3          MS. LEVINE:  And so we're looking -- when you find --

4          THE COURT:  Right.

5          MS. LEVINE:  -- yourself at the bottom of a hole, you

6     want to stop digging.  So the concern that we had was our

7     adversary here is making one set of allegations, and we'd be

8     happy to produce the documents, because if they really, truly

9     are the client, then it's their privilege to waive.

10         The letter from the liquidator was exactly what we

11    were afraid of.  And there are other people out here who are

12    claiming interest in these documents.  And what the liquidator

13    is saying in the letter -- and frankly we were glad that

14    counsel filed it, because we were grappling with that, maybe

15    being a little bit --

16         THE COURT:  Um-hum.

17         MS. LEVINE:  -- gun shy -- but there's a paragraph in

18    the letter where they didn't want to consent to this

19    jurisdiction of this court.

20         THE COURT:  Sure.

21         MS. LEVINE:  So we're --

22         THE COURT:  Right, but --

23         MS. LEVINE:  -- grappling with --

24         THE COURT:  I understand.  So let me try to simplify

25    this, because I certainly understand that Brown Rudnick, as do

1   hopefully all attorneys, take the attorney-client privilege

2   very seriously.  Bedrock principle should, in 99.9 percent of

3   the cases, be not something that can be cast aside.

4           But what you have here is facts on the ground is there

5   was this filing, and then -- excuse me I'm going to sneeze.  Or

6   not.

7           And then you have Brown Rudnick on behalf of the

8   debtor consented to the filing, filed an answer, held itself

9   out as counsel to ARGL.  There's no dispute about that, right?

10          MS. LEVINE:  Correct.

11          THE COURT:  And then subsequently sought to withdraw

12  as counsel to ARGL.  So that's point number one.

13          Separate question with respect to the documents that

14  came into Brown Rudnick's possession:  to the extent that they

15  are documents that were given to Brown Rudnick other than in

16  connection with the filing, that would be one issue.  I don't

17  think there's any assertion that that's the case here.  The

18  documents that Brown Rudnick received were given to Brown

19  Rudnick in connection with the filing.  So in that instance,

20  PHRL -- the person who was acting for PHRL was acting on behalf

21  of AGRL.

22          KPMG says hold on; Brown Rudnick was on notice as of

23  February 2016 that only Carolyn Turnbull could act on behalf of

24  PHRL.  Right?

25          MR. STEIN:  Your Honor, I think it's that only after

1  February 10th or the order of February 8th, only the joint

2  liquidators could act on --

3          THE COURT:  Only the joint liquidators.  However, that

4  there's in the prior paragraph that before that time -- before

5  the engagement letter, that was the period of time in which

6  Brown Rudnick had been informed that only Carolyn Turnbull

7  could act on behalf of PHRL.

8          MS. LEVINE:  Correct, Your Honor.  So just to put a

9  finer point on the --

10          THE COURT:  Yeah.

11          MS. LEVINE:  -- on the timeline.  On March 4th, which

12  was a Friday --

13          THE COURT:  Yes.

14          MS. LEVINE:  -- there's an involuntary petition that's

15  filed --

16          THE COURT:  Right.

17          MS. LEVINE:  -- and it's signed by three -- purports

18  to be signed by three entities or three people -- three

19  entities.

20          THE COURT:  Right.

21          MS. LEVINE:  Omar, Peak Venture Partners, and

22  Carpentaria by Sean Sullivan.

23          THE COURT:  Right.

24          MS. LEVINE:  So then on Monday, which is the 7th --

25          THE COURT:  Right.

 1        MS. LEVINE:  -- the amended is filed, and it's signed

 2   by Carolyn Turnbull, along with a couple of other folks.  And

 3   then Brown Rudnick files the consent along with the

 4   documentation which it understood, at least at the time, would

 5   give it authorization to file the involuntary.

 6        As soon as that all happened, there was -- Brown

 7   Rudnick became aware that either people were saying that there

 8   wasn't authorization or they were changing their mind with

 9   regard to authorization or there was -- or there was confusion

10   about authorization.

11        As soon as that happened, Brown Rudnick made the

12   decision to withdraw as counsel --

13        THE COURT:  Yes.

14        MS. LEVINE:  -- and filed a motion even before the

15   motion to dismiss was filed on March 11th.

16        THE COURT:  Yes.

17        MS. LEVINE:  Literally, as soon as it realized --

18        THE COURT:  Understood.

19        MS. LEVINE:  -- that there was an issue.

20        THE COURT:  Right.

21        MS. LEVINE:  So but that said, we still find ourselves

22   in the conundrum of what documents --

23        THE COURT:  Right.

24        MS. LEVINE:  -- we could produce without further

25   creating issues.

1        THE COURT:  Right.  But where I started was by

2   suggesting to you and now I'll just kind of get to the punch

3   line is I'm directing production of the documents.  I can go

4   through all the different bases for that conclusion.

5        I think the most straightforward one is that based on

6   my review of all the materials that have been submitted, I

7   think the privilege belongs to ARGL and therefore the documents

8   need to be produced.  And if you are producing them pursuant to

9   my court order, no one can find fault with you for having

10  inappropriately waived the attorney-client privilege.

11       And what you're telling me is -- directly and

12  indirectly, is that Brown Rudnick proceeded along a path until

13  it became aware that it should not be proceeding along that

14  path, and promptly withdrew, which is exactly what you would

15  expect, in keeping with all the canons.  It wasn't a noisy

16  withdrawal, but it was an appropriate -- it appears to have

17  been an appropriate and timely withdrawal.

18       So now, what we have is a situation where we need to

19  understand what happened, because it's no small thing for an

20  involuntary to have been commenced inappropriately.  And

21  frankly, it's no small thing, potentially, for attorneys to

22  have been given incorrect information in that regard.

23       So I only know what I know, and I don't know what I

24  don't know.  But what I do know is that there's multiple levels

25  of reasons why these documents need to be produced.  And based

AMAN RESORTS GROUP LIMITED                           12

1  on everything that I've read and you've made arguments in your

2  papers as to why ARGL is not the holder of the privilege, I,

3  with respect, disagree based on the entirety of the record, and

4  I am prepared to enter an order directing the production of

5  documents.

6           MR. STEIN:  Thank you, Your Honor.

7           MS. LEVINE:  Thank you.

8           THE COURT:  All right.  And I think also to address

9  separately, because you raised it, the concept that your

10 concern that other potentially affected parties be given an

11 opportunity to appear; they have been given that opportunity.

12 I mean this has been noticed.  Anyone who potentially had a

13 concern in that regard could have appeared here today.

14          You're not responsible -- Brown Rudnick is not

15 responsible for protecting a third party's potential interest.

16 And I think that the fact that this hearing was noticed today

17 to the world, anyone who had an interest and who wanted to

18 assert that interest, can and should have appeared here today.

19 And we've received nothing.  The only thing that we received

20 from any interested third party was KPMG, which that document

21 itself, I think, reinforced my tentative view that these

22 documents ought to be produced.

23          MS. LEVINE:  Thank you.

24          MR. STEIN:  Thank you, Your Honor.

25          MS. LEVINE:  Your Honor, one second.  I just want to

1  ask one question.

2            THE COURT:  Yeah, sure.

3            MS. LEVINE:  Good.  Thank you, Your Honor.

4            THE COURT:  All right.  Could you -- I didn't mean to

5  steal your thunder, but I'd just as soon that you -- I assumed

6  that you would rather --

7            MS. LEVINE:  Be done is good.

8            THE COURT:  -- be done.

9            MR. STEIN:  It's a more efficient use of your time.

10           THE COURT:  More efficient use of everyone's time.

11           I do expect -- and I note that Ms. Schwartz is here

12  from the Office of the United States Trustee -- I mean, I do

13  expect to at some point have a full understanding of who's

14  responsible for what happened here.  And I think that there has

15  to be a consequence.

16           That being said, folks aren't -- I don't like to

17  encourage people to throw good money after bad; and I

18  appreciate that your time is expensive.  So I don't know what's

19  going to happen next, but I do hope and expect that we'll get

20  to the bottom of it, and if there's a basis for sanctions or

21  other activity, that someone will be bringing that to our

22  attention.

23           MS. LEVINE:  Your Honor, just to address that briefly?

24           THE COURT:  Sure.

25           MS. LEVINE:  As you can imagine, Brown Rudnick will be

1   very happy to put this behind them.

2              THE COURT:  I would imagine so.

3              MS. LEVINE:  We've had some settlement discussions in

4   that regard.  The bid and the ask indicates that we probably

5   have a different view --

6              THE COURT:  Um-hum.

7              MS. LEVINE:  -- of the case.  And one of the things we

8   would ask the Court to consider is potentially mediation.

9   Because in addition to these issues, we have some unused

10  retainer --

11             THE COURT:  Um-hum.

12             MS. LEVINE:  -- and various people claiming against

13  that as well.  So to the extent --

14             THE COURT:  Okay, it's a little cryptic.  Ms.

15  Schwartz, I'm going to put you on the spot.

16             MS. SCHWARTZ:  Okay.

17             THE COURT:  The reason that I'm putting you on the

18  spot is because I'm all in favor of parties settling, but to

19  the extent that there are larger issues involved, with respect

20  to the conduct of certain individuals -- I'm not suggesting

21  it's Brown Rudnick -- that's something that at least in the

22  past, the Office of the United States Trustee has been

23  interested in.

24             MS. LEVINE:  No --

25             THE COURT:  So I don't want to jump at the concept of

1   mediation and on a financial basis this all goes away.  Of

2   course that's great.  But I don't want to preclude or indicate

3   that I in any way think that the Office of the U.S. Trustee

4   should short circuit its inquiry into the situation.

5          So I'm putting you on the spot, Ms. Schwartz.  I

6   apologize.

7          MS. LEVINE:  Your Honor, we're not looking to short

8   circuit --

9          THE COURT:  No, I know that you're not.  Yeah.

10          MS. LEVINE:  We just seem to be the only one that

11   keeps showing up.  So it's becoming expensive for --

12          THE COURT:  I understand.

13          MS. LEVINE:  -- Brown Rudnick, which is -- so that's

14   the --

15          THE COURT:  I understand.

16          MS. LEVINE:  Sorry.  Just clearing my throat.

17          THE COURT:  Ms. Schwartz, to be frank, I don't know if

18   this is your case or if you're just covering or if you're even

19   familiar with this situation.  It was an involuntary that

20   appears to have been improvidently filed and no longer is

21   pending and there's a dispute over who had authority and why it

22   was filed.  And it's the -- it was a chapter in an ongoing saga

23   surrounding some of the principals who were involved.

24          Is that an accurate summary?

25          MR. STEIN:  Yes.

1        MS. SCHWARTZ:  I'm not the lead attorney on this case,

2   Your Honor.

3        THE COURT:  Okay.

4        MS. SCHWARTZ:  But we all work together in our office.

5        THE COURT:  Okay.

6        MS. SCHWARTZ:  So I certainly understand what the

7   Court is saying.

8        THE COURT:  Okay.  All right.  Well, do you -- is it a

9   request for me to have someone in this building mediate or --

10        MR. STEIN:  Your Honor, at this point I think the

11   first step is to see what's in these --

12        THE COURT:  Sure.

13        MR. STEIN:  -- 267 pages of documents and see if that

14   moves the needle.  Because as you said, there is a disconnect

15   as to what happened, and hopefully these documents can shed

16   light on that.  And maybe that would foster --

17        THE COURT:  Okay.

18        MR. STEIN:  -- foster settlement.

19        THE COURT:  I don't want this to become -- this

20   shouldn't take on a life of its own.

21        MR. STEIN:  Okay.

22        THE COURT:  But I do think we need to get to the

23   bottom of what happened.

24        MR. STEIN:  The second issue is even if there is a

25   settlement or resolution between -- with Brown Rudnick, there

AMAN RESORTS GROUP LIMITED                                17

1    is still the issue of the petitioners themselves.

2              THE COURT:  Right.

3              MR. STEIN:  And therefore if this Court is concerned

4    that everything's going to get thrown to a black hole, I don't

5    think that's going to happen.

6              THE COURT:  Okay.

7              MR. STEIN:  Because there's going to be an airing with

8    respect to at least the petitioners.

9              THE COURT:  That's exactly what I'm interested int.

10   So I'm not looking to have you -- either of you -- turn this

11   into a career and an ongoing expensive matter, but I am

12   interested in getting to the bottom of it.  So --

13             MR. STEIN:  Understood.

14             THE COURT:  All right, so send me an order with

15   respect to all the motions.  Okay?

16             MR. STEIN:  Okay.

17             THE COURT:  All right.

18             MR. STEIN:  Thank you.

19             THE COURT:  Thank you so much.

20             MR. STEIN:  Thank you.

21             MS. LEVINE:  Thank you, Your Honor.

22        (Whereupon these proceedings were concluded at 3:25 PM)

23

24

25

1

2                                        I N D E X

3    RULINGS:                                            PAGE    LINE

4    The Court directs production of the                  11       3

5    documents.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                        C E R T I F I C A T I O N

3

4    I, Penina Wolicki, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7    *Penina Wolicki*

8

9    _____

10   Penina Wolicki (CET-569)

11   AAERT Certified Electronic Transcriber

12

13   eScribers

14   352 Seventh Ave., Suite #607

15   New York, NY 10001

16

17   Date:  February 24, 2017

18

19

20

21

22

23

24

25

AMAN RESORTS GROUP LIMITED
Case No. 16-10517-scc

February 23, 2017

## A

**accurate (1)**
15:24
**act (3)**
8:23;9:2,7
**acting (3)**
5:14;8:20,20
**activity (1)**
13:21
**addition (1)**
14:9
**additional (1)**
4:21
**address (2)**
12:8;13:23
**adversary (1)**
7:7
**affected (2)**
4:9;12:10
**afford (1)**
4:8
**afraid (1)**
7:11
**afternoon (4)**
4:2,3,4,21
**against (1)**
14:12
**agree (1)**
5:21
**AGRL (1)**
8:21
**ahead (1)**
6:15
**airing (1)**
17:7
**allegations (1)**
7:7
**along (4)**
10:2,3;11:12,13
**always (1)**
6:16
**amended (1)**
10:1
**apologize (1)**
15:6
**appear (1)**
12:11
**appearance (1)**
6:3
**appeared (2)**
12:13,18
**appears (2)**
11:16;15:20
**applies (1)**
5:16
**appreciate (1)**
13:18
**appropriate (2)**
11:16,17
**ARGL (8)**
4:6;5:11,12,15;

**8:9,12;11:7;12:2**
**ARGL's (3)**
4:7,7;5:13
**arguments (1)**
12:1
**aside (1)**
8:3
**assert (1)**
12:18
**assertion (1)**
8:17
**assumed (1)**
13:5
**attached (1)**
5:9
**attaches (1)**
4:24
**attention (1)**
13:22
**attorney (1)**
16:1
**attorney-client (4)**
5:8,16;8:1;11:10
**attorneys (2)**
8:1;11:21
**authority (1)**
15:21
**authorization (4)**
10:5,8,9,10
**aware (3)**
4:20;10:7;11:13
**away (1)**
15:1
**awkward (2)**
6:11,13

## B

**bad (1)**
13:17
**Baldiga (1)**
6:7
**based (3)**
11:5,25;12:3
**bases (1)**
11:4
**basis (3)**
5:7;13:20;15:1
**became (2)**
10:7;11:13
**become (1)**
16:19
**becoming (1)**
15:11
**Bedrock (1)**
8:2
**behalf (6)**
4:6;5:14;8:7,20,
23;9:7
**behind (1)**
14:1
**believes (1)**
5:11

**belongs (1)**
11:7
**Benson (1)**
4:5
**bid (1)**
14:4
**bit (2)**
6:10;7:15
**black (1)**
17:4
**bottom (4)**
7:5;13:20;16:23;
17:12
**briefly (1)**
13:23
**bringing (1)**
13:21
**Brown (22)**
4:8;5:7,13;6:5,7;
7:25;8:7,14,15,18,
18,22;9:6;10:3,6,11;
11:12;12:14;13:25;
14:21;15:13;16:25
**building (1)**
16:9

## C

**came (1)**
8:14
**can (7)**
6:19;8:3;11:3,9;
12:18;13:25;16:15
**canons (1)**
11:15
**career (1)**
17:11
**Carolyn (3)**
8:23;9:6;10:2
**Carpentaria (1)**
9:22
**case (4)**
8:17;14:7;15:18;
16:1
**cases (1)**
8:3
**cast (1)**
8:3
**certain (1)**
14:20
**certainly (2)**
7:25;16:6
**changes (1)**
5:25
**changing (1)**
10:8
**chapter (1)**
15:22
**circuit (2)**
15:4,8
**claiming (2)**
7:12;14:12
**clearing (1)**

**15:16**
**clearly (1)**
6:22
**client (5)**
5:12,14;6:23,24;
7:9
**commenced (1)**
11:20
**compel (3)**
4:7,9;5:6
**concept (2)**
12:9;14:25
**concern (3)**
7:6;12:10,13
**concerned (1)**
17:3
**concluded (1)**
17:22
**conclusion (1)**
11:4
**conduct (1)**
14:20
**confusion (1)**
10:9
**connection (2)**
8:16,19
**consent (2)**
7:18;10:3
**consented (1)**
8:8
**consequence (1)**
13:15
**consider (1)**
14:8
**conundrum (1)**
10:22
**copies (1)**
4:21
**counsel (4)**
7:14;8:9,12;10:12
**couple (1)**
10:2
**course (2)**
6:4;15:2
**COURT (73)**
4:2,4,15,18,23;5:2,
4,17,19,22;6:4,8,9,
12,15,18,20,22,25;
7:2,4,16,19,20,22,24;
8:11;9:3,10,13,16,
20,23,25;10:13,16,
18,20,23;11:1,9;
12:8;13:2,4,8,10,24;
14:2,6,8,11,14,17,25;
15:9,12,15,17;16:3,
5,7,8,12,17,19,22;
17:2,3,6,9,14,17,19
**Court's (1)**
6:6
**covering (1)**
15:18
**creating (1)**
10:25

**crime-fraud (1)**
5:15
**cross-motion (1)**
4:8
**crux (1)**
4:16
**cryptic (1)**
14:14

## D

**debtor (1)**
8:8
**decision (1)**
10:12
**declaration (2)**
4:20;5:10
**different (2)**
11:4;14:5
**digging (1)**
7:6
**directing (2)**
11:3;12:4
**directly (1)**
11:11
**disagree (1)**
12:3
**disconnect (1)**
16:14
**discovery (1)**
6:17
**discuss (1)**
4:17
**discussions (1)**
14:3
**dismiss (1)**
10:15
**dispute (3)**
6:22;8:9;15:21
**document (1)**
12:20
**documentation (1)**
10:4
**documents (17)**
4:13;5:7,8,11;7:8,
12;8:13,15,18;10:22;
11:3,7,25;12:5,22;
16:13,15
**done (2)**
13:7,8
**down (1)**
5:22

## E

**efficiency (1)**
5:24
**efficient (2)**
13:9,10
**either (2)**
10:7;17:10
**encourage (1)**
13:17

AMAN RESORTS GROUP LIMITED
Case No. 16-10517-scc

February 23, 2017

**engagement (1)**
9:5
**enter (2)**
6:2;12:4
**entirety (1)**
12:3
**entities (2)**
9:18,19
**entitled (1)**
5:11
**even (3)**
10:14;15:18;16:24
**everyone's (1)**
13:10
**everything's (1)**
17:4
**Ewing (1)**
6:5
**exactly (3)**
7:10;11:14;17:9
**exception (1)**
5:15
**excuse (1)**
8:5
**Exhibit (1)**
5:10
**expect (4)**
11:15;13:11,13,19
**expensive (3)**
13:18;15:11;17:11
**extent (6)**
5:13;6:17,23;8:14;
14:13,19

**F**

**fact (1)**
12:16
**facts (1)**
8:4
**familiar (1)**
15:19
**fault (1)**
11:9
**favor (1)**
14:18
**February (3)**
8:23;9:1,1
**fiduciary (1)**
5:15
**file (1)**
10:5
**filed (10)**
4:13,20;7:14;8:8;
9:15;10:1,14,15;
15:20,22
**files (1)**
10:3
**filing (5)**
5:19;8:5,8,16,19
**financial (1)**
15:1
**find (4)**

6:10;7:3;10:21;
11:9
**finer (1)**
9:9
**firm (1)**
6:7
**First (3)**
4:10;6:23;16:11
**folks (2)**
10:2;13:16
**forth (1)**
5:9
**foster (2)**
16:16,18
**four (1)**
5:12
**frank (1)**
15:17
**frankly (2)**
7:13;11:21
**Friday (1)**
9:12
**Friedman (1)**
4:6
**full (1)**
13:13
**further (1)**
10:24

**G**

**given (5)**
8:15,18;11:22;
12:10,11
**glad (1)**
7:13
**goes (1)**
15:1
**Good (6)**
4:2,3,4;13:3,7,17
**grappling (2)**
7:14,23
**great (1)**
15:2
**ground (1)**
8:4
**gun (1)**
7:17

**H**

**happen (2)**
13:19;17:5
**happened (2)**
10:6,11;11:19;
13:14;16:15,23
**happy (2)**
7:8;14:1
**hear (1)**
5:24
**heard (1)**
4:9
**hearing (1)**

12:16
**held (1)**
8:8
**hello (1)**
6:8
**help (1)**
6:21
**hold (1)**
8:22
**holder (1)**
12:2
**hole (1)**
7:5;17:4
**Honor (17)**
4:3,12,20,21;6:2,
10;8:25;9:8;12:6,24,
25;13:3,23;15:7;
16:2,10;17:21
**hope (1)**
13:19
**hopefully (2)**
8:1;16:15
**housekeeping (1)**
4:10

**I**

**idea (1)**
4:12
**imagine (2)**
13:25;14:2
**improvidently (1)**
15:20
**inappropriately (2)**
11:10,20
**incorrect (1)**
11:22
**indicate (1)**
15:2
**indicates (1)**
14:4
**indirectly (1)**
11:12
**individuals (1)**
14:20
**information (1)**
11:22
**informed (1)**
9:6
**initial (1)**
5:9
**inquiry (1)**
15:4
**instance (1)**
8:19
**int (1)**
17:9
**interest (4)**
7:12;12:15,17,18
**interested (4)**
12:20;14:23;17:9,
12
**interests (1)**

5:24
**into (4)**
5:6;8:14;15:4;
17:11
**introducing (1)**
6:6
**involuntary (4)**
9:14;10:5;11:20;
15:19
**involved (2)**
14:19;15:23
**issue (4)**
8:16;10:19;16:24;
17:1
**issues (3)**
10:25;14:9,19

**J**

**joint (3)**
4:24;9:1,3
**jump (3)**
5:5,17;14:25
**jurisdiction (1)**
7:19

**K**

**Kasowitz (1)**
4:5
**keeping (2)**
4:12;11:15
**keeps (1)**
15:11
**kind (2)**
5:22;11:2
**KPMG (4)**
5:2,19;8:22;12:20

**L**

**larger (1)**
14:19
**lead (1)**
16:1
**least (3)**
10:4;14:21;17:8
**letter (5)**
4:24;7:10,13,18;
9:5
**levels (1)**
11:24
**Levine (44)**
5:25;6:2,5,5,9,14,
16,19,21;7:1,3,5,17,
21,23;8:10;9:8,11,
14,17,21,24;10:1,14,
17,19,21,24;12:7,23,
25;13:3,7,23,25;
14:3,7,12,24;15:7,
10,13,16;17:21
**life (1)**
16:20

**light (1)**
16:16
**line (1)**
11:3
**liquidator (2)**
7:10,12
**liquidators (3)**
4:25;9:2,3
**Literally (1)**
10:17
**little (3)**
6:10;7:15;14:14
**log (1)**
5:9
**longer (1)**
15:20
**looking (4)**
6:21;7:3;15:7;
17:10

**M**

**main (1)**
5:12
**making (1)**
7:7
**March (2)**
9:11;10:15
**materials (1)**
11:6
**matter (2)**
4:10;17:11
**Matthew (1)**
4:5
**maybe (2)**
7:14;16:16
**mean (3)**
12:12;13:4,12
**mediate (1)**
16:9
**mediation (2)**
14:8;15:1
**might (1)**
5:24
**mind (1)**
10:8
**minimum (1)**
4:14
**Monday (1)**
9:24
**money (1)**
13:17
**more (2)**
13:9,10
**most (1)**
11:5
**motion (9)**
4:7,7,9,11;5:6,6;
6:17;10:14,15
**motions (2)**
4:6;17:15
**moves (1)**
16:14

much (1)
17:19
multiple (1)
11:24

## N

need (4)
11:8,18,25;16:22
needle (1)
16:14
next (1)
13:19
noisy (1)
11:15
noon (1)
4:21
note (1)
13:11
notice (1)
8:22
noticed (2)
12:12,16
number (1)
8:12

## O

off (1)
5:23
Office (4)
13:12;14:22;15:3;
16:4
Omar (1)
9:21
one (10)
5:22;7:7;8:12,16;
11:5,9;12:25;13:1;
14:7;15:10
ongoing (2)
15:22;17:11
only (8)
8:23,25;9:1,3,6;
11:23;12:19;15:10
opportunity (2)
12:11,11
order (4)
9:1;11:9;12:4;
17:14
ought (1)
12:22
ourselves (2)
6:10;10:21
out (3)
6:12;7:11;8:9
over (1)
15:21
own (1)
16:20

## P

pages (1)

16:13
papers (1)
12:2
paragraph (2)
7:17;9:4
parties (3)
4:9;12:10;14:18
Partners (1)
9:21
party (1)
12:20
party's (1)
12:15
past (1)
14:22
path (2)
11:12,14
Peak (1)
9:21
pending (1)
15:21
people (5)
7:11;9:18;10:7;
13:17;14:12
percent (1)
8:2
period (1)
9:5
permission (1)
6:6
person (1)
8:20
petition (1)
9:14
petitioners (2)
17:1,8
PHRL (5)
5:13;8:20,20,24;
9:7
place (1)
6:23
plan (1)
4:11
Please (1)
4:2
PM (1)
17:22
point (4)
8:12;9:9;13:13;
16:10
possession (1)
8:14
potential (1)
8:14
potentially (5)
4:8;11:21;12:10,
12;14:8
preclude (1)
15:2
prepared (1)
12:4
principals (1)
15:23

principle (1)
8:2
prior (1)
9:4
privilege (9)
5:8,9,13,16;7:9;
8:1;11:7,10;12:2
probably (1)
14:4
proceeded (1)
11:12
proceeding (1)
11:13
proceedings (1)
17:22
produce (2)
7:8;10:24
produced (3)
11:8,25;12:22
producing (1)
11:8
production (3)
5:6;11:3;12:4
promptly (1)
11:14
protecting (1)
12:15
punch (1)
11:2
purports (1)
9:17
pursuant (1)
11:8
put (3)
9:8;14:1,15
putting (2)
14:17;15:5

## R

raised (1)
12:9
rather (1)
13:6
read (1)
12:1
realized (1)
10:17
really (1)
7:8
reason (1)
14:17
reasons (2)
5:12;11:25
received (4)
4:24;8:18;12:19,
19
record (2)
6:3;12:3
references (1)
4:13
regard (5)
6:22;10:9;11:22;

12:13;14:4
reinforced (1)
12:21
related (1)
4:7
request (1)
16:9
resolution (1)
16:25
respect (6)
4:11;8:13;12:3;
14:19;17:8,15
responsible (3)
12:14,15;13:14
retainer (1)
14:10
review (1)
11:6
right (23)
4:9,18;5:5,17;
6:20,25;7:4,22;8:9,
24;9:16,20,23,25;
10:20,23;11:1;12:8;
13:4;16:8;17:2,14,17
road (2)
5:23,23
rolling (1)
5:22
Rudnick (19)
5:7;6:6,7;7:25;8:7,
15,18,19,22;9:6;
10:3,7,11;11:12;
12:14;13:25;14:21;
15:13;16:25
Rudnick's (3)
4:8;5:14;8:14

## S

saga (1)
15:22
sanctions (1)
13:20
Saul (1)
6:5
saying (3)
7:13;10:7;16:7
Schwartz (8)
13:11;14:15,16;
15:5,17;16:1,4,6
seal (3)
4:8,11,13
Sean (1)
9:22
seat (1)
4:2
Second (3)
4:19;12:25;16:24
seeks (1)
5:6
seem (1)
15:10
send (1)

17:14
Separate (1)
8:13
separately (1)
12:9
seriously (1)
8:2
set (2)
5:8;7:7
settle (1)
6:16
settlement (3)
14:3;16:18,25
settling (1)
14:18
Sharon (1)
6:5
shed (1)
16:15
short (2)
15:4,7
showing (1)
15:11
shy (1)
7:17
side (1)
5:23
signed (1)
9:17,18;10:1
significant (1)
5:20
simplify (1)
7:24
situation (5)
6:11,13;11:18;
15:4,19
small (2)
11:19,21
sneeze (1)
8:5
someone (2)
13:21;16:9
soon (4)
10:6,11,17;13:5
Sorry (1)
15:16
sought (1)
8:11
spot (3)
14:15,18;15:5
started (1)
11:1
States (2)
13:12;14:22
steal (1)
13:5
STEIN (26)
4:3,5,5,16,19;5:1,
3,5,18,21;8:25;12:6,
24;13:9;15:25;
16:10,13,18,21,24;
17:3,7,13,16,18,20
step (1)

16:11
**still (3)**
    7:1;10:21;17:1
**stop (1)**
    7:6
**straightforward (1)**
    11:5
**struggling (1)**
    7:1
**submitted (1)**
    11:6
**subsequently (1)**
    8:11
**suggesting (2)**
    11:2;14:20
**Sullivan (1)**
    9:22
**summary (1)**
    15:24
**supplemental (1)**
    4:20
**Sure (8)**
    4:15,19;5:18;6:2;
    7:20;13:2,24;16:12
**surrounding (1)**
    15:23

**T**

**telling (1)**
    11:11
**tentative (1)**
    12:21
**therefore (2)**
    11:7;17:3
**third (2)**
    12:15,20
**three (5)**
    4:6;9:17,18,18,18
**throat (1)**
    15:16
**throw (1)**
    13:17
**thrown (1)**
    17:4
**thunder (1)**
    13:5
**timeline (1)**
    9:11
**timely (1)**
    11:17
**times (1)**
    5:14
**today (6)**
    4:7,12,17;12:13,
    16,18
**together (1)**
    16:4
**Torres (1)**
    4:5
**truly (1)**
    7:8
**Trustee (3)**

13:12;14:22;15:3
**try (1)**
    7:24
**turn (1)**
    17:10
**Turnbull (3)**
    8:23;9:6;10:2
**Two (1)**
    4:10

**U**

**Um-hum (3)**
    7:16;14:6,11
**under (1)**
    4:13
**understood (3)**
    10:4,18;17:13
**United (2)**
    13:12;14:22
**unless (1)**
    4:12
**unused (1)**
    14:9
**up (1)**
    15:11
**use (2)**
    13:9,10
**useful (1)**
    5:24

**V**

**various (1)**
    14:12
**Venture (1)**
    9:21
**view (2)**
    12:21;14:5

**W**

**waive (1)**
    7:9
**waived (1)**
    11:10
**waiver (1)**
    5:16
**way (1)**
    15:3
**what's (2)**
    13:18;16:11
**Whereupon (1)**
    17:22
**who's (1)**
    13:13
**William (1)**
    6:6
**withdraw (2)**
    8:11;10:12
**withdrawal (2)**
    11:16,17
**withdrew (1)**

11:14
**withheld (2)**
    5:7,8
**without (1)**
    10:24
**work (1)**
    16:4
**world (1)**
    12:17

**1**

**1 (1)**
    5:12
**10th (1)**
    9:1
**11th (1)**
    10:15

**2**

**2 (1)**
    5:13
**2016 (1)**
    8:23
**267 (1)**
    16:13
**267-page (1)**
    5:9

**3**

**3 (1)**
    5:15
**3:25 (1)**
    17:22

**4**

**4th (2)**
    5:16;9:11

**7**

**7th (1)**
    9:24

**8**

**8th (1)**
    9:1

**9**

**99.9 (1)**
    8:2