**Hearing Date and Time**:  September 6, 2017 at 4:00 p.m. E.D.T.
**Objection Deadline**:  August 30, 2017 at 4:00 p.m. E.D.T.

Andrew K. Glenn
Paul M. O'Connor III
Matthew B. Stein
KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, New York 10019
Telephone:  (212) 506-1700
Facsimile:  (212) 506-1800

*Counsel for Aman Resorts Group Limited*
*and Tarek Investments Limited*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------x

| | | |
|---|---|---|
| In re | : | |
| | : | Chapter 11 |
| Aman Resorts Group Limited, | : | |
| | : | Case No. 16-10517 (SCC) |
| Debtor. | : | |

---------------------------------------------------x

**AMAN RESORTS GROUP LIMITED AND TAREK INVESTMENTS LIMITED'S**
**MOTION TO TRANSFER VENUE OF RELATED BANKRUPTCY CASES**
**FROM THE UNITED STATES BANKRUPTCY COURT FOR THE**
**SOUTHERN DISTRICT OF FLORIDA TO THIS COURT**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................... 1

RELEVANT BACKGROUND ................................................................................... 4

    A.    Procedural Posture of this Chapter 11 Case. ............................................ 4

    B.    PHRGL's Chapter 7 Case. ........................................................................ 6

    C.    ARGL's 2017 Chapter 11 Case. ............................................................. 13

JURISDICTION AND VENUE ............................................................................... 14

RELIEF REQUESTED ............................................................................................ 14

BASIS FOR RELIEF .............................................................................................. 14

I.    THIS COURT HAS JURISDICTION TO TRANSFER VENUE OF THE
    LATER-FILED CASES. ...................................................................................... 14

II.    THIS COURT IS THE PROPER VENUE TO ADJUDICATE THE LATER-
    FILED CASES. ..................................................................................................... 16

    A.    Transfer of the Later-Filed Cases to this Court Would Serve the Interest
        of Justice. ............................................................................................... 17

        1.    The Intertwined Relationship Among the Cases Requires
            Transfer of the Later-Filed Cases to this Court. ....................... 17

        2.    Transferring the Later-Filed Cases to this Court Would Promote
            Judicial Economy and Efficient Administration of All Cases. ................. 18

        3.    Neither ARGL Nor PHRGL Nor Any Purported Parties-in-
            Interest Would Be Harmed by Transferring Venue to New
            York. ......................................................................................... 19

    B.    The Convenience of the Parties Strongly Favors Transfer of the Later-
        Filed Cases to this Court. ....................................................................... 19

REQUEST FOR INTERIM RELIEF ...................................................................... 21

MOTION PRACTICE .............................................................................................. 21

NOTICE .................................................................................................................... 21

NO PREVIOUS REQUEST ..................................................................................... 22

CONCLUSION ......................................................................................................... 22

## TABLE OF AUTHORITIES

<b><u>Page(s)</u></b>

**Cases**

*In re Andover Data Servs., Inc.*,
35 B.R. 297 (Bankr. S.D.N.Y. 1983) .......................................................................16

*In re Asset Resolution LLC*,
No. 09-16142, 2009 WL 4505944 (Bankr. S.D.N.Y. Nov. 24, 2009) .....................17

*In re Dunmore Homes, Inc.*,
380 B.R. 663 (Bankr. S.D.N.Y. 2008) ...............................................15, 16, 18, 19

*In re Emerson Radio Corp.*,
52 F.3d 50 (3d Cir. 1995)........................................................................................13

*In re Enron Corp.*,
284 B.R. 376 (Bankr. S.D.N.Y. 2002) ...................................................................16

*Gulf States Exploration Co. v. Manville Forest Prods. Corp. (In re Manville*
*Forest Prods. Corp.)*,
896 F.2d 1384 (2d Cir. 1990)...........................................................................15, 16

*In re Knight-Celotex, LLC*,
427 B.R. 697 (Bankr. N.D. Ill. 2010) ..............................................................14, 17

*In re Malden Mills Indus., Inc.*,
361 B.R. 1 (Bankr. D. Mass. 2007) ........................................................................14

*In re Patriot Coal Corp.*,
482 B.R. 718 (Bankr. S.D.N.Y. 2012) .......................................................14, 15, 16

*In re TS Emp't, Inc.*,
Case No. 15-10243, 2015 WL 4940348 (Bankr. S.D.N.Y. Aug. 18, 2015) ...........13, 15, 16

**Statutes**

11 U.S.C. § 101(2)(A).................................................................................................14

11 U.S.C. § 303............................................................................................................4, 5

11 U.S.C. § 305............................................................................................................4

11 U.S.C. § 1112(b) .....................................................................................................4

28 U.S.C. § 157(b)(2) ....................................................................................................13

28 U.S.C. § 1334 ...........................................................................................................13

28 U.S.C. § 1408 ...........................................................................................................13

28 U.S.C. § 1409 ...........................................................................................................13

28 U.S.C. § 1412 ......................................................................................................*passim*

28 U.S.C. § 1475 ...........................................................................................................16

**Other Authorities**

Fed. R. Bankr. P. 1013(b) ...............................................................................................8

Fed. R. Bankr. P. 1014(b) .........................................................................................*passim*

Fed. R. Bankr. P. 2002(a) .............................................................................................20

Fed. R. Bankr. P. 9011 ..............................................................................................4, 5

Local Bankr. R. 9013-1(a) ...........................................................................................19

New York Rules of Professional Conduct Rule 1.16 ....................................................4

Aman Resorts Group Limited ("ARGL"),[1] the nominal debtor in the above-captioned

Chapter 11 case (the "Chapter 11 Case"), and Tarek Investments Limited ("Tarek," and, together

with ARGL, the "Movants") hereby submit this motion (the "Motion") pursuant to 28 U.S.C.

§ 1412 and Rule 1014(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules") for an order, substantially in the form annexed hereto as Exhibit 1, transferring the

Chapter 7 case of PHRGL ("PHRGL's Chapter 7 Case") and the 2017 Chapter 11 case of ARGL

("ARGL's 2017 Chapter 11 Case," and, together with PHRGL's Chapter 7 Case, the "Later-

Filed Cases") from the United States Bankruptcy Court for the Southern District of Florida (the

"Florida Bankruptcy Court") to this Court. The Movants also respectfully request entry of an

interim order, substantially in the form annexed hereto Exhibit 2, ordering all parties in the

Later-Filed Cases not to proceed further, pending adjudication of the Motion. In support thereof,

the Movants submit the declaration of Matthew B. Stein (the "Stein Decl."), and respectfully

represent as follows:

## PRELIMINARY STATEMENT

In March 2016, Omar Amanat ("Amanat") orchestrated the commencement of this

Chapter 11 Case through the filing of an involuntary Chapter 11 petition against ARGL in this

Court. As revealed in the initial pleadings filed in connection with the commencement of this

Chapter 11 Case, Amanat's intention was to relitigate, in yet another forum, a long-standing

dispute that he had lost in litigation to usurp corporate control and extort the rightful owners of

the Aman Resorts brand of luxury resorts ("Aman Resorts"). Amanat caused the filing of two

---

[1]    Historically, ARGL was represented by undersigned counsel at the direction of the board of directors of
Peak Hotels and Resorts Group Limited ("PHRGL"), its corporate parent. *See* Dkt. No. 12, Exhibit F. Recently, as
a result of fraudulent conduct in connection with the Later-Filed Cases (as defined in the preamble) described
herein, the board of directors of ARGL was changed without proper notice and other counsel purports to represent
ARGL in the Later-Filed Cases. In an abundance of caution, Tarek (as defined in the preamble), the majority equity
holder of PHRGL, joins in this Motion (as defined in the preamble).

involuntary petitions, a fraudulent answer consenting to the involuntary petitions, and the commencement of litigation against A.H. Overseas Limited and Pontwelly Holding Company Limited ("Pontwelly") (respectively, the then-owner of Aman Resorts and the immediately prior owner of Aman Resorts) based on claims already settled in legal proceedings in England (the "English Proceeding").  The English Proceeding concerned the control and ownership of PHRGL, which ultimately owned Silverlink Resorts Limited ("Silverlink"), a company that owned and operated Aman Resorts.  Indeed, as the Court concluded, neither Amanat, nor those acting in concert with him, had any authority to act on behalf of ARGL.

ARGL promptly filed a motion to dismiss the Chapter 11 Case.  The Court granted the motion and dismissed the case, stating that it "does not appear to be an appropriate use of the bankruptcy process nor a use of the bankruptcy process that's consistent with the integrity of the bankruptcy process."  The Court further found that not only had the involuntary petitions been filed in bad faith, but that "it appears to have been filed in bad faith-plus."

Amanat, however, was undeterred by his failure to use the bankruptcy process to further his fraudulent goals.  Following two unsuccessful attempts to force ARGL into liquidation proceedings in the BVI, in April 2017, Amanat apparently caused a small Pennsylvania company to file in the Florida Bankruptcy Court an involuntary Chapter 7 petition against PHRGL – even though it had no valid claims against PHRGL and despite the fact that PHRGL had no debt, and no domicile or assets in the United States.  Indeed, PHRGL had already been removed from the BVI corporate register when the involuntary petition had been filed, so it never was a qualified debtor.  Worse still, PHRGL never received notice of the involuntary petition, which resulted in entry of an order for relief and the appointment of PHRGL's Chapter 7 trustee.

PHRGL's Chapter 7 trustee has now been able to effectuate Amanat's plan where he

2

failed in New York: obtaining authority from the Florida Bankruptcy Court to commence a Chapter 11 case for ARGL with the express purpose of litigating the issues already dismissed in multiple courts, including in this Chapter 11 Case. Unfortunately, it appears that no party has disclosed the facts underlying this Chapter 11 Case and the reasons for its dismissal to the Florida Bankruptcy Court. In fact, even after the filing of the Later-Filed Cases was discovered and the professionals involved were informed of the existence of this Chapter 11 Case and Amanat's fraudulent conduct, counsel for ARGL in the Later-Filed Cases proceeded to file a financing motion with the Florida Bankruptcy Court to fund the planned litigation despite an explicit promise that he would not take any further substantive actions pending an investigation and further discussion.

By this Motion, ARGL respectfully requests that the Court transfer the Later-Filed Cases from the Florida Bankruptcy Court to this Court – as the Court is expressly authorized to do under 28 U.S.C. § 1412 and Bankruptcy Rule 1014(b). As shown below, transfer is warranted because both the interest of justice and convenience of the parties would be served by it. This Court is already intimately familiar with the history and details of the dispute between ARGL, its affiliates and Amanat, and the fraudulent scheme underlying this Chapter 11 Case and the Later-Filed Cases. In contrast, none of these details are known to the Florida Bankruptcy Court. Of particular concern is that neither the Florida Bankruptcy Court nor the United States Trustee raised any concern with the fact that all of the professionals purportedly retained by the debtors in the Later-Filed Cases had prior dealings with, and in some cases, ongoing representations of, Amanat. Furthermore, ARGL *and* PHRGL are represented by the undersigned – a New York-based law firm – which ARGL first retained when this Chapter 11 Case was commenced, and is deeply familiar with the facts of the case. It would not be just – let alone convenient – to force

3

ARGL and PHRGL to litigate the Later-Filed Cases in Florida.  Accordingly, and for the

additional reasons set forth below, the Court should transfer the Later-Filed Cases to this Court.

**RELEVANT BACKGROUND**[2]

      **A.**      **Procedural Posture of this Chapter 11 Case.**

      1.      On March 4, 2016, Amanat, Peak Venture Partners ("Peak Venture") and

Carpentaria Management Services Limited ("Carpentaria") filed an involuntary Chapter 11

petition against ARGL with this Court.  [Dkt. No. 1].  On March 7, 2016, an amended

involuntary petition was filed against ARGL by Carolyn Turnbull, George Robinson, Fonde

Investment Capital SA, and Adriaan Zecha.  [Dkt. No. 3].

      2.      On March 7, 2016, at the direction of Carpentaria (and ultimately Amanat),

Brown Rudnick LLP ("Brown Rudnick") purported to act for ARGL by filing an answer

consenting to the petition (the "Answer").  [Dkt. No. 4].  On March 9, 2016, the Court, misled by

the fraudulent Answer, found that "the Debtor [has] consented to the entry of an Order for

Relief," and entered an *Order for Relief* under Chapter 11 of the Bankruptcy Code.  [Dkt. No. 6].

      3.      On March 11, 2016, ARGL filed a Motion to (A) Strike the Answer to

Involuntary Petition and Consent to Entry of Order for Relief, (B) Dismiss the Chapter 11 Case,

and (C) Impose Attorneys' Fees, Costs, and Sanctions.  [Dkt. No. 10].  In its motion to dismiss,

ARGL argued that (i) the Court should strike the Answer because Carpentaria lacked the

requisite authority to act on behalf of ARGL; (ii) the Court should dismiss the Chapter 11 Case

pursuant to Sections 303, 305 and 1112(b) of the Bankruptcy Code because the petitions were

---

[2]      Because the Court is already familiar with many of the underlying facts, including Amanat's history of fraud and abuse of the American legal system, ARGL will focus on the facts most relevant to the relief requested in this motion and incorporates by reference the facts stated in ARGL's Motion to (A) Strike the *Answer to Involuntary Petition and Consent to Entry of Order for Relief*, (B) Dismiss the Chapter 11 Case, and (C) Impose Attorneys' Fees, Costs, and Sanctions, dated March 11, 2016 [Dkt. No. 10], which was granted by the Court in an order dated March 29, 2016 [Dkt. No. 35].

filed in bad faith; and (iii) ARGL should be awarded fees, costs, and damages under Section

303(i) of the Bankruptcy Code and Bankruptcy Rule 9011 because, among other things, the

petitions were filed in bad faith and without authority.

4.      Also on March 11, 2016, Brown Rudnick moved to withdraw as counsel to

ARGL based upon its belief "that its continued representation **of ARGL** in this case and

adversary proceeding would be inconsistent with Rule 1.16 of the New York Rules of

Professional Conduct." (emphasis added). [Dkt. Nos. 8, 9]. *Rule 1.16 of the New York Rules of*

*Professional Conduct mandates withdrawal where counsel determines its client is proceeding*

*maliciously on claims with no legal merit.*

5.      On March 16, 2016, Kent Gross, the attorney who filed both of the involuntary

petitions, filed a Notice of Withdrawal, stating that he had withdrawn from the representation of

the petitioners. [Dkt. No. 16]. Mr. Gross has yet to receive approval from the Court for such

withdrawal.

6.      Also on March 16, 2016, Willkie Farr & Gallagher LLP appeared on behalf of

three of the petitioners, and subsequently filed a motion to withdraw their claims from the

amended involuntary petition, stating that none of them had "signed an engagement letter

retaining Mr. Gross," and that the "Amended Petition was filed without the knowledge of Mr.

Zecha, without the authorization of Ms. Turnbull, and with Mr. Robinson's claim having been

amended without his authority and consent." [Dkt. No. 18].

7.      On March 21, 2016, an *ad hoc* group of purported creditors of ARGL – which

included Erik Holling – filed a limited objection to ARGL's motion to dismiss, arguing that the

Court should not dismiss the Chapter 11 Case. [Dkt. No. 24].

5

8.      On March 28, 2016, the Court held a hearing on ARGL's motion to dismiss.  At

the conclusion of the hearing, the court informed the parties that it would dismiss the Chapter 11

Case, stating that it "does not appear to be an appropriate use of the bankruptcy process nor a use

of the bankruptcy process that's consistent with the integrity of the bankruptcy process."  [Dkt.

No. 37 at 20-21].  During a subsequent status conference, the Court stated that not only had the

involuntary petition been filed in bad faith, but that "**it appears to have been filed in bad faith-**

**plus**."  [Dkt. No. 69 at 9] (emphasis added).  On March 29, 2016, the Court entered an *Order*

*Dismissing Involuntary Chapter 11 Case*.  [Dkt. No. 35].

9.      ARGL's motion for fees, costs, and damages under Section 303(i) of the

Bankruptcy Code and Bankruptcy Rule 9011 against parties involved in the Chapter 11 Case –

including Amanat and Mr. Gross – remains pending in this Court, as ARGL seeks to understand

the full extent of the fraudulent filing of the Chapter 11 Case and the parties responsible.  As

demonstrated below, certain parties involved in this fraudulent Chapter 11 Case have resurfaced

in the Later-Filed Cases.

**B.      PHRGL's Chapter 7 Case.**

10.     PHRGL is the sole owner of ARGL.  [Dkt. No. 12 at 2].  PHRGL was

incorporated on January 17, 2014.  *See* Stein Decl. at Ex. A.  It has always been a holding

company whose only asset was its ownership of ARGL and has been dormant since March 2016.

It was removed from the BVI corporate register on August 12, 2016 due to a failure to have a

BVI registered agent appointed.  *See* Stein Decl. at Ex. B.  PHRGL has no debt and has no

domicile or assets in the United States.

11.     On April 24, 2017 (the "PHRGL Petition Date"), High-Def Zone, Inc. ("High-

Def") filed with the Florida Bankruptcy Court an involuntary Chapter 7 petition against PHRGL

(the "PHRGL Involuntary Petition"), claiming that it held an unsecured claim against PHRGL in

6

the amount of approximately $150,000. [Case No. 17-15041, Dkt. No. 1]. Just as the
involuntary petition was filed in this Chapter 11 Case days following the dismissal of the English
Proceeding, the PHRGL Petition Date occurred six days following notice that the BVI court was
dismissing proceedings commenced by Amanat, through Erik Holling, to liquidate ARGL there.
Notably, High-Def was listed as a creditor in those proceedings and should have been aware of
the dismissal.

12.    In the PHRGL Involuntary Petition, High-Def listed PHRGL's address as 1500
Bay Board 1582S, Miami Beach, FL 33138. *Id.* Upon information and belief, that address *is not
– and never has been – PHRGL's address*. In response to inquiries by counsel for PHRGL,
counsel for High-Def stated that the basis for listing the foregoing address as PHRGL's address
was that "[t]hat is where the bills were sent as Amanat lived there at the time and some
equipment was installed there." Stein Decl. at Ex. C.

13.    In a proof of claim filed by High-Def on June 6, 2017, it attached invoices, dated
*January 14, 2014*, purporting to show that the alleged amount due related to services and/or
goods provided to PHRGL. [Case No. 17-15041, Claim No. 1]. In response to inquiries by
counsel, High-Def stated that its claim related to a service requested by and provided to Amanat
– who was allegedly the sole director of PHRGL at the time – related to the set-up of video
equipment for PHRGL's purported office in Miami. Stein Decl. at Ex. C, D. However,
according to the BVI Register of Directors, PHRGL was not incorporated until *January 17, 2014*
– the date of High-Def's invoice reflecting all work had been completed – and Amanat was not a
director of PHRGL until *January 20, 2014*. Stein Decl. at Ex. A. Amanat therefore had no
authority to order any goods or services from High-Def on behalf of PHRGL. Moreover, upon
information and belief, PHRGL never had an office in Miami.

7

14.      A Summons to Debtor in Involuntary Case was issued by the Clerk of the Florida Bankruptcy Court on April 25, 2017 (the "Summons"), summoning PHRGL to file a motion or answer to the Involuntary Chapter 7 Petition within 21 days after the service of the Summons. [Case No. 17-15041, Dkt. No. 3].  On April 26, 2017, counsel for High-Def filed with the Florida Bankruptcy Court a Certification of Service, purporting to certify that the Summons and the PHRGL Involuntary Petition had been served on PHRGL by hand delivery and that the BVI Registered Agent of PHRGL had acknowledged receipt of the documents.  [Case No. 17-15041, Dkt. No. 9].  As of the PHRGL Petition Date, however, PHRGL had been removed from the BVI corporate register.  As such, PHRGL had no registered office in BVI on such date.  Any service of documents – assuming High-Def even attempted to serve the Summons and the Involuntary Petition on PHRGL – was made to PHRGL's *old* office.  High-Def made no effort to serve the documents on PHRGL's board or otherwise apprise it of the PHRGL Involuntary Petition.  *Id.*

15.      This is astonishing given its knowledge – and that of the Trustee (as defined below) and other parties-in-interest – of the pendency of this Chapter 11 Case, this Court's dismissal of the Chapter 11 Case, and the fact that ARGL, PHGRL and other affiliated entities had appeared, vehemently opposed and defeated every litigation effort in London, the BVI and New York.  Indeed, the Trustee conceded in a pleading in the Florida Bankruptcy Court that no action could be taken on PHRGL's behalf prior to its reinstatement on the BVI corporate register and that "it is possible that the Involuntary Petition may be challenged after she commences the litigation discussed below."  [Case No. 17-15041, Dkt. No. 44 at ¶ 6, 13, 16].  Thus, the parties knew that service and the entire bankruptcy case itself were defective.  The failure to properly serve PHRGL suggests that the parties knew that their only way to succeed in yet another involuntary bankruptcy filing was to ensure that the proceedings were effectively *ex parte*.

8

16.    On May 18, 2017, the Florida Bankruptcy Court issued an Order for Relief based on the finding that "[t]he debtor has failed to file any timely pleading or defense to the petition as required by Bankruptcy Rule 1013(b)."  [Case No. 17-15041, Dkt. No. 11].  Because PHRGL was never properly served, the Order for Relief should never have been entered.

17.    On May 22, 2017, the United States Trustee appointed Jacqueline Calderin as Chapter 7 trustee (the "Trustee").  [Case No. 17-15041, Dkt. No. 13].

18.    On June 2, 2017, the Trustee filed with the Florida Bankruptcy Court an Application to Employ Robert P. Charbonneau, Esq. and the Law Firm of Ehrenstein Charbonneau Calderin ("ECC") as Attorneys for Chapter 7 Trustee *Nunc Pro Tunc* to May 22, 2017.  [Case No. 17-15041, Dkt. No. 17].  In an accompanying affidavit, Mr. Charbonneau declared that in January 2016, ECC had run a conflict check "for purposes of representing Peak Venture Partners, LLC and/or Omar Amanat in connection with a dispute against Vladislav Doronin and Capital Group," and that in connection therewith Mr. Charbonneau had "reviewed materials forwarded by Mr. Amanat," although neither ECC nor Mr. Charbonneau had ultimately been retained by Amanat in connection therewith.  *Id.*  Mr. Charbonneau further declared that ECC had run a "second conflict check to represent Peak Venture Partners, Carpentaria Management Services, LTD, and Omar Amanat as petitioning creditors . . . in the involuntary case of *In re Aman Resorts Group Ltd.* . . . and in the Adversary Proceeding of *Aman Resorts Group Ltd. v. Pontwelly Holding Co. Ltd. and A.H. Overseas Ltd.*," although ECC was not ultimately retained by Amanat, Peak Venture and Carpentaria in connection with this Chapter 11 Case.  *Id.*

19.    Indeed, not only did ECC have multiple interactions with Amanat before PHRGL's Chapter 7 Case was commenced – a highly suspicious fact in itself – those interactions

9

were *directly related to Amanat's dispute with Mr. Doronin and this Chapter 11 Case*.

Completely ignoring this clear red flag now hanging over PHRGL's Chapter 7 Case – a red flag

that warranted, at the very least, contacting PHRGL's board to investigate the matter – the

Trustee and its counsel forged ahead in prosecution of the sham proceedings.

20.     On June 16, 2017, the Trustee filed with the Florida Bankruptcy Court Initial

Schedules and Summary of Assets and Liabilities, listing High-Def and a company named

Lightray Imaging Co. ("Lightray") as PHRGL's only creditors.  [Case No. 17-15041, Dkt. No.

22].  Counsel for the Trustee has conceded that Amanat provided some creditor information and

appeared and the Section 341 creditor meeting.  Stein Decl. at Ex. E.  This too is shocking given

Amanat's prior conduct in this Chapter 11 Case and the fact that he is currently under criminal

indictment and is being electronically monitored as he awaits his October trial.

21.     On June 29, 2017, the Trustee filed with the Florida Bankruptcy Court an

Emergency Motion to Authorize Post-Petition Financing, in which the Trustee alleged that upon

her "initial investigation," the transfer of the Silverlink shares from ARGL to Pontwelly "was not

done in accordance with applicable law" and is an avoidable transfer.  [Case No. 17-15041, Dkt.

No. 28].  The Trustee stated that she, as the "sole member of ARGL, intends to file a chapter 11

petition for ARGL as well as a winding up proceeding under BVI law," and that "[i]mmediately

upon commencing the ARGL Proceedings, the Trustee will then commence an action . . . to

avoid and recover the transfer of Silverlink." *Id.*

22.     On June 30, 2017, the Trustee filed with the Florida Bankruptcy Court an

Application to Employ Kobre & Kim as Special Counsel for the Trustee, to assist the Trustee in

connection with the laws of the BVI.  [Case No. 17-15041, Dkt. No. 33].  In the accompanying

affidavit, Adriana Riviere-Badell declared – highlighting the suspicious involvement of Amanat

10

which had already been revealed in ECC's retention application – that the BVI affiliate of Kobre & Kim is engaged by an affiliate of Amanat in connection with a lawsuit filed in the BVI against the joint-liquidators of PHRGL and that Kobre & Kim "ran conflict checks to potentially represent Omar Amanat in unrelated matters" (although it was not engaged by Amanat in those matters). *Id.*

23.     On July 6, 2017, Lightray filed with the Florida Bankruptcy Court an Unopposed *Ex Parte* Motion for Relief from Automatic Stay, seeking authority to effectuate the reinstatement of PHRGL with the registry in the BVI, explaining that it did not know whether PHRGL's unlisted status "may preclude the Trustee from taking certain actions beneficial to the estate." [Case No. 17-15041, Dkt. No. 35].

24.     Lightray further disclosed that it was the "assignee of the claims of Erik Holling, Thomas Martin Evans, and BCA International, Ltd." *Id.*  As described above, Holling was a member of the *ad hoc* group of alleged creditors, which opposed ARGL's motion to dismiss this Chapter 11 Case.  Holling was also responsible for commencing one of the BVI liquidation proceedings against ARGL.  The Florida Bankruptcy Court granted Lightray's motion on July 7, 2017.  [Case No. 17-15041, Dkt. No. 36].

25.     On August 1, 2017, the Trustee filed an Emergency Omnibus Motion for an Order (A) approving Trustee's selection of a registered agent; (B) authorizing Trustee to direct the filing of insolvency proceedings for the Debtor's wholly owned subsidiary *nunc pro tunc* to August 1, 2017; (C) authorizing the Trustee to reconstitute the Debtor's board of directors and appoint a director to the board of directors for the purpose of effectuating such filings *nunc pro tunc* to August 1, 2017; and (D) approving cross-border protocol agreement by and between the U.S. and BVI estates.  [Case No. 17-15041, Dkt. No. 44].  In her motion, the Trustee again

11

alleged that the transfer of the Silverlink shares from ARGL to Pontwelly "is an avoidable transfer" and sought authority to "submit ARGL to a concurrent Chapter 11 Proceeding" "in order to preserve the one known asset of value of the ARGL estate," *i.e.*, the transfer of the Silverlink shares. *Id.* The Trustee further stated that "[i]mmediately upon commencing the ARGL Proceedings, the debtor in possession will then commence an action or actions to avoid and recover the transfer of Silverlink." *Id.* The Trustee further explained that the reinstatement of PHRGL, which had been achieved through Lightray's motion to lift the stay, was necessary in order for the Trustee to take actions on behalf of ARGL. *Id.*

26.    Before filing her motion, however, the Trustee did not even attempt to contact PHRGL's directors to inquire about the Pontwelly matter and did not serve them with a copy of the motion once it was filed. [Case No. 17-15041, Dkt. No. 49]. Nor did the Trustee disclose to the Court that the exact same issue had already been settled and dismissed by the court in the English Proceeding or that such action was unsuccessfully sought in this Chapter 11 Case – facts that the Trustee should have been aware of had she contacted PHRGL's board of directors at any point during the pendency of PHRGL's Chapter 7 Case.

27.    Unaware of these facts, the Florida Bankruptcy Court granted the Trustee's motion on August 9, 2017. [Case No. 17-15041, Dkt. No. 50]. Pursuant to the order, the Trustee was authorized to reconstitute ARGL's board of directors, remove its current directors, and appoint as sole director Madison Director Services Limited ("Madison"). *Id.* The Trustee and Madison were also granted authority to initiate a voluntary Chapter 11 proceeding for ARGL. *Id.* The Trustee has never given any explanation as to why she simply decided to remove the existing board of ARGL without any attempt to engage them.

12

28.     In light of the foregoing, it is clear that PHRGL's Chapter 7 Case is yet another fraudulent attempt by Amanat and his affiliates to relitigate the English Proceeding in another forum.

29.     PHRGL intends to file a motion (preferably with this Court, upon granting of this Motion) to dismiss PHRGL's Chapter 7 Case.

**C.     ARGL's 2017 Chapter 11 Case.**

30.     On August 8, 2017, Mr. Paul Pretlove, on behalf of Madison, filed a petition to commence a Chapter 11 Case for ARGL in the Florida Bankruptcy Court [Case No. 17-20114, Dkt. No. 1].  The petition listed the address of ARGL as 122 E. 42nd Street, Suite 2100, New York, NY 10168 – *which is the address of Kent Gross, the attorney who represented the petitioners in this Chapter 11 Case*.  *See* Dkt. Nos. 1, 3.  That address, like the address provided for ARGL in this Chapter 11 Case, is false, as ARGL does not have a domicile or assets in the United States.  [Dkt. No. 12 at 2].

31.     On August 15, 2017, the directors of ARGL and PHRGL first learned of the pendency of the Later-Filed Cases, and instructed the undersigned to contact immediately the Trustee and all parties in the Later-Filed Cases to apprise them of the fraudulent nature of the cases and demand their prompt withdrawal.  Stein Decl. ¶ 2.  On August 17, 2017, the board members of ARGL learned that liquidators had been appointed over ARGL in BVI.  *See* Stein Decl. at Ex. F.

32.     As part of the discussions with Robert Charbonneau, counsel to the Trustee and ARGL in the Later-Filed Cases, Mr. Charbonneau pledged that no substantive action would be taken in either of the Later-Filed Cases pending further discussions and investigation.  Stein Decl. at Ex. G.

13

33.    Despite this pledge, on August 20, 2017, Mr. Charbonneau filed in the ARGL's 2017 Chapter 11 Case an Expedited Motion to Approve Initial Funding Agreement (the "Funding Motion"), which funding is allegedly required "to investigate and, if appropriate, prosecute" the alleged claims relating to the transfer of the Silverlink shares from ARGL to Pontwelly.  [Case No. 17-20114, Dkt. No. 12].  The Funding Motion requested a hearing on or before August 25, 2017.  The Florida Bankruptcy Court rejected the request and scheduled a hearing for September 6, 2017 at 2:30 p.m.  [Case No. 17-20114, Dkt. No. 15].

34.    ARGL intends to file a motion (preferably with this Court, upon granting of this Motion) to dismiss ARGL's 2017 Chapter 11 Case.

## JURISDICTION AND VENUE

35.    The Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334.  This Motion is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue in this Court for the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

36.    By this Motion, the Movants respectfully request that the Court enter an order, substantially in the form attached hereto as Exhibit 1, transferring the Later-Filed Cases from the Florida Bankruptcy Court to this Court, and an interim order, substantially in the form attached hereto as Exhibit 2, directing all parties to the Later-Filed Cases not to proceed further until this Motion is adjudicated.

## BASIS FOR RELIEF

I.    **THIS COURT HAS JURISDICTION TO
      TRANSFER VENUE OF THE LATER-FILED CASES.**

37.    28 U.S.C. § 1412 provides that "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the

14

convenience of the parties."

38.    Bankruptcy Rule 1014(b) states in pertinent part that:

> [i]f petitions commencing cases under the Code . . . are filed in
> different districts by, regarding, or against . . . the same debtor . . .
> or . . . a debtor and an affiliate, ***the court in the district in which the
> <u>first-filed petition</u> is pending may determine, in the interest of
> justice or for the convenience of the parties, the district or districts
> in which any of the cases should proceed*** . . . . ***The court may order
> the parties to the later-filed cases not to proceed further until it
> makes the determination***.

Fed. R. Bankr. P. 1014(b) (emphasis added).

39.    Indeed, "[a]lthough 28 U.S.C. § 1412, in and of itself, may not provide the

authority for a district court to transfer to itself a case pending in another court, Bankruptcy Rule

1014(b) provides *precisely* such authority." *In re Emerson Radio Corp.*, 52 F.3d 50, 55 n.8 (3d

Cir. 1995) (internal citation omitted) (emphasis in original); *In re TS Emp't, Inc.*, Case No. 15-

10243, 2015 WL 4940348 (Bankr. S.D.N.Y. Aug. 18, 2015) (transferring venue of later-filed

Chapter 11 cases of affiliates of a debtor whose case was pending at this Court pursuant to 28

U.S.C. § 1412 and Bankruptcy Rule 1014(b)); *In re Knight-Celotex, LLC*, 427 B.R. 697, 706

(Bankr. N.D. Ill. 2010) (finding that a bankruptcy court "has jurisdiction to determine the proper

venue of a [bankruptcy] case, pending in another district, that involves an affiliate of a debtor in

an earlier-filed case pending in this district").

40.    PHRGL is an affiliate of ARGL.  The Bankruptcy Code defines "affiliate" as an

"entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more

of the outstanding voting securities of the debtor."  11 U.S.C. § 101(2)(A).  Here, PHRGL is the

sole direct owner of ARGL and thus, is its affiliate.

15

41.     Accordingly, pursuant to Bankruptcy Rule 1014(b), this Court may determine the proper venue of the Later-Filed Cases and direct all parties in those cases not to proceed in the Florida Bankruptcy Court until this Motion is decided.[3]

## II.    THIS COURT IS THE PROPER VENUE TO ADJUDICATE THE LATER-FILED CASES.

42.     As shown above, the Later-Filed Cases were not properly filed.  In any event, under 28 U.S.C. § 1412 and Bankruptcy Rule 1014(b), a bankruptcy court shall transfer *even a properly filed* case under title 11 to another district where it is necessary "in the interest of justice or for the convenience of the parties."  28 U.S.C. § 1412.  As Section 1412 and Bankruptcy Rule 1014(b) are written in the disjunctive, venue may be transferred for either reason.  *See In re Patriot Coal Corp.*, 482 B.R. 718, 738-39 (Bankr. S.D.N.Y. 2012) ("[E]ach of the two prongs – 'in the interest of justice' or 'for the convenience of the parties' – constitutes an independent ground for transferring venue."); *In re Dunmore Homes, Inc.*, 380 B.R. 663, 670 (Bankr. S.D.N.Y. 2008) (same).  The decision to transfer venue under Section 1412 and Bankruptcy Rule 1014(b) lies within the discretion of the court and should be made according to "'an individualized . . . consideration of convenience and fairness'" in each particular case.  *See Patriot Coal*, 482 B.R. at 739 (quoting *Gulf States Exploration Co. v. Manville Forest Prods. Corp. (In re Manville Forest Prods. Corp.)*, 896 F.2d 1384, 1391 (2d Cir. 1990)); *TS Emp't, Inc.*, 2015 WL 4940348, at *3 (same).  The party requesting the transfer has the burden to show it is warranted on the particular facts.  *See Patriot Coal*, 482 B.R. at 739.

---

[3]     The Court has retained its authority under Bankruptcy Rule 1014(b) after dismissing the Chapter 11 Case because the Chapter 11 Case remains pending.  *See Emerson Radio*, 52 F.3d at 54 (although a reorganization plan has been substantially consummated, "as the case is still open, Emerson is a debtor within Rule 1014(b) and the case is still 'pending' within the rule."); *In re Malden Mills Indus., Inc.*, 361 B.R. 1, 9 (Bankr. D. Mass. 2007) ("Having vacated the Final Decree under Rule 60(b)(3) and reopened the Massachusetts Cases under Section 350(b), these bankruptcy proceedings are 'pending' within the meaning of Rule 1014(b).").

43.     The Movants have met that burden here.  As explained below, both the interest of justice and convenience of the parties would be served by a transfer because ARGL was first subjected to the fraudulent petition commencing the Chapter 11 Case in **this** Court, which is already intimately familiar with the history and details of the dispute between ARGL, its affiliates and Amanat.  Furthermore, ARGL is represented by the undersigned – a New York-based law firm – which ARGL first retained when this Chapter 11 Case was commenced, and is deeply familiar with the facts of the case.  It would not be just – let alone convenient – to force ARGL and PHRGL to litigate the Later-Filed Cases – which were commenced in furtherance of the same fraudulent scheme underlying this Chapter 11 Case – in Florida.

44.     High-Def, the disputed putative creditor that filed the PHRGL Involuntary Petition is located in Pennsylvania, which are significantly closer to New York than Florida.

### A.    Transfer of the Later-Filed Cases to this Court Would Serve the Interest of Justice.

45.     The "interest of justice" test of Section 1412 and Bankruptcy Rule 1014(b) is a "broad and flexible standard which must be applied on a case-by-case basis" and "contemplates a consideration of whether transferring venue would promote the efficient administration of the bankruptcy estate, judicial economy, timeliness, and fairness-factors."  *Manville Forest*, 896 F.2d at 1391; *see also Dunmore*, 380 B.R. at 671-72 (listing justice factors); *TS Emp't, Inc.*, 2015 WL 4940348, at *4 (same).  New York best serves the interests of justice here.

### 1.    The Intertwined Relationship Among the Cases Requires Transfer of the Later-Filed Cases to this Court.

46.     A crucial fairness factor that courts consider is "whether the intertwined relationship of debtors requires proceedings in one district."  *See In re Andover Data Servs., Inc.*, 35 B.R. 297, 301 (Bankr. S.D.N.Y. 1983) (deciding change of venue motion under 28 U.S.C. § 1475, substantially similar predecessor statute to Section 1412) (citation and quotation marks

17

omitted); *see also In re Enron Corp.*, 284 B.R. 376, 396-97 (Bankr. S.D.N.Y. 2002)

("[S]ignificant [venue transfer] factor to be considered is the 'intertwined relationships' of

affiliated debtors.").

47.     Here, the Later-Filed Cases were commenced in furtherance of the same bad faith,

fraudulent scheme that this Court already considered, and also to relitigate the English

Proceeding, which Amanat first attempted to implement by commencing this Chapter 11 Case.

Furthermore, the Later-Filed Cases were filed against ARGL itself and PHRGL, which is

ARGL's sole owner and whose *only assets* are its shares in ARGL.  PHRGL and ARGL's

relationship, and the bankruptcy cases brought against them, are thus clearly intertwined and

warrant transfer of the Later-Filed Cases to this Court.

> **2.      Transferring the Later-Filed Cases to this Court Would
> Promote Judicial Economy and Efficient Administration of All Cases.**

48.     Of the many interest of justice factors courts consider, one of those "given the

most weight is the promotion of the economic and efficient administration of the estate." *Patriot

Coal*, 482 B.R. at 740 n.31.  This highly important factor greatly favors transfer of the Later-

Filed Cases to this Court.

49.     Most critically, the Chapter 11 Case is already pending here and has been for

almost eighteen months.  The Court has already familiarized itself intimately with the

circumstances surrounding the commencement of the Chapter 11 Case, which, as described

above, served as a template for the commencement of the Later-Filed Cases.  Indeed, this Court

already has developed "a substantial 'learning curve'" – which the Florida Bankruptcy Court has

not – as to the relevant facts such that transferring the Later-Filed Cases to be administered in

this Court would bring about the most efficient result.  *See In re Asset Resolution LLC*, No. 09-

16142, 2009 WL 4505944, at *3, *6 (Bankr. S.D.N.Y. Nov. 24, 2009) (finding that "efficiency

18

and judicial economy" would be served by "the substantial learning curve that the Nevada courts have already developed in presiding over [certain] on-going disputes relating to the Debtors' assets [which] weighs in favor of transferring venue to Nevada"); *Knight-Celotex*, 427 B.R. at 706 (finding "it would be a more efficient use of the resources already committed" to transfer venue due to court's "familiarity with the parties and a base of knowledge regarding the relevant disputes" of debtor's affiliate companies). This knowledge base also extends beyond the Court to the Office of the United States Trustee for the Southern District of New York and the Office of the United States Attorney for the Southern District of New York.  This knowledge is important given that no party or governmental entity raised any concern with the fact that all of the Debtors' professionals in the Later-Filed Cases had prior dealings with Amanat.

### 3. Neither ARGL Nor PHRGL Nor Any Purported Parties-in-Interest Would Be Harmed by Transferring Venue to New York.

50.     As described above, neither ARGL nor PHRGL has any debts, or domicile, assets or business in the United States.  As such, neither company would be harmed by having its case transferred here.

51.     Nor are there any creditors that would be harmed by such a transfer, as neither company has any debts.  Even if High-Def, the petitioning creditor in PHRGL's Chapter 7 Case, had a legitimate debt against ARGL – which it does not – High-Def is a *Pennsylvania company*, which would be better served by litigating the case in New York.  Additionally, the Trustee is merely a fiduciary of the purported estate and has no legitimate interest in keeping the case in Florida.

### B. The Convenience of the Parties Strongly Favors Transfer of the Later-Filed Cases to this Court.

52.     The "convenience of the parties" provides an additional, independent basis to transfer the Later-Filed Cases to this Court.  The convenience of the parties prong of 28 U.S.C.

19

§ 1412 and Bankruptcy Rule 1014(b) largely hinges on the economic administration of the cases. *Dunmore*, 380 B.R. at 676 (noting that "most weight is given to the promotion of the economic and efficient administration of the estate").

53.    As explained above, both ARGL and PHRGL would benefit from transfer of the Later-Filed Cases to this Court because the Court is already intimately familiar with the details and circumstances surrounding Amanat's fraudulent scheme to relitigate the English Proceeding. This will save much time and money in litigating the dismissal of the Later-Filed Cases.

54.    Furthermore, ARGL is represented by the undersigned – a New York-based law firm – which ARGL first retained when this Chapter 11 Case was commenced, and is deeply familiar with the facts of the case.  It would not be just – let alone convenient – to force ARGL and PHRGL to litigate the Later-Filed Cases – which were commenced in furtherance of the same fraudulent scheme underlying this Chapter 11 Case – in Florida.  As this Court knows, ARGL and the undersigned have already undertaken substantial efforts to investigate the circumstances surrounding Amanat's commencement of this Chapter 11 Case, which are also highly relevant to the Later-Filed Cases.  By contrast, allowing the Later-Filed Cases to proceed in Florida would impose a substantial burden on ARGL and PHRGL by requiring new professionals to be engaged in Florida and brought up to speed or to require those New York-based professionals to travel to Florida.  *See id.* (considering that, even with telephonic conferences, travel for hearings can be inconvenient in weighing venue factors).  It would also potentially force PHRGL and ARGL to incur the cost of having to present the same facts and issues to two separate courts.

55.    Furthermore, there are no other parties to the Later-Filed Cases who would be inconvenienced by their transfer to New York.  As explained above, even if High-Def, the

20

petitioning creditor in PHRGL's Chapter 7 Case, had a legitimate debt against ARGL – which it does not – High-Def is a *Pennsylvania company*, which would be better served by litigating the case in New York.  Additionally, the Trustee is merely a fiduciary of the purported estate and is not a party whose convenience has any significance for purposes of this analysis.

56.    Finally, even assuming, arguendo, that these cases are not fraudulent, the ultimate goal of the Later-Filed Cases is to commence litigation that allegedly implicates New York law.[4]

## REQUEST FOR INTERIM RELIEF

57.    Based on (i) the filing of the Funding Motion in ARGL's 2017 Chapter 11 Case despite the pledge by counsel to take no substantive action pending further discussions and investigation; (ii) the scheduling of a hearing on the Funding Motion for September 6, 2017 – the same day scheduled for the hearing on this Motion; and (iii) the potential for further detrimental conduct by the Trustee and/or other parties-in-interest in the Later-Filed Cases, Movants seek the entry of an interim order directing all parties to the Later-Filed Cases not to proceed further until this Motion is adjudicated.

## MOTION PRACTICE

58.    This Motion includes citations to the statutory authorities and applicable rules upon which the relief requested herein is predicated, and a discussion of their application to this Motion.  Accordingly, the Movants submit that this Motion satisfies Rule 9013-1(a) of the Local Bankruptcy Rules for the Southern District of New York.

## NOTICE

59.    The Movants have caused notice of this motion to be provided by electronic mail, facsimile, regular or overnight mail and/or hand delivery to (a) all parties in interest in this

---

[4]    Nothing herein should be deemed to be a concession that any court in the United States has jurisdiction over any dispute that the Chapter 7 Trustee or Debtor seeks to file in the Later-Filed Cases.

Chapter 11 Case, (b) counsel for the Chapter Trustee in PHRGL's Chapter 7 Case, (c) counsel

for High-Def, (d) purported counsel for ARGL in ARGL's 2017 Chapter 11 Case, (e) all parties

who have appeared in PHRGL's Chapter 7 Case and ARGL's 2017 Chapter 11 Case, and (f)

entities entitled to notice under Bankruptcy Rule 2002(a).  The Movants respectfully submit that

no further notice is required or necessary.

## NO PREVIOUS REQUEST

60.     No prior motion for the relief requested herein has been made by the Movants to

this or any other court.

## CONCLUSION

WHEREFORE, for the reasons set forth above, the Movants respectfully request that this

Court enter an order (i) transferring the Later-Filed Cases from the Florida Bankruptcy Court to

this Court, (ii) on an interim basis, directing all parties to the Later-Filed Cases not to proceed

further until this Motion is adjudicated, and (iii) granting the Movants such other relief as this

Court may deem just and proper.

Dated:    August 22, 2017
              New York, New York

                                KASOWITZ BENSON TORRES LLP

                                By: /s/ Andrew K. Glenn
                                Andrew K. Glenn (aglenn@kasowitz.com)
                                Paul M. O'Connor III (poconnor@kasowitz.com)
                                Matthew B. Stein (mstein@kasowitz.com)
                                New York, New York 10019
                                Telephone:  (212) 506-1700
                                Facsimile:   (212) 506-1800

                                *Counsel for Aman Resorts Group Limited*
                                *and Tarek Investments Limited*

22