WILLIAM K. HARRINGTON
United States Trustee for Region 2
U.S. Department of Justice
Office of the U.S. Trustee
201 Varick Street, Room 1006
New York, New York 10014
Tel. (212) 510-0500
By:    Andrea B. Schwartz
        Trial Attorney

<u>**Hearing Date and Time:**</u>
**September 6, 2017, at 4:00 p.m.**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------- x
In re                                              :
                                                   :    Case No. 16-10517 (SCC)
AMAN RESORTS GROUP, LTD.,           :
                                                   :    Chapter 11
                        Debtor.              :
--------------------------------------------------X

### (I) RESPONSE OF U.S. TRUSTEE IN SUPPORT OF MOTION TO TRANSFER VENUE OF RELATED BANKRUPTCY CASES FROM SOUTHERN DISTRICT OF FLORIDA TO THIS DISTRICT AND (II) CROSS-MOTION, PURSUANT TO FED. R. CIV. P. 60(b), MADE APPLICABLE BY FED. R. BANKR. P. 9024, TO VACATE ORDER <u>DISMISSING CHAPTER 11 CASE</u>

TO: THE HONORABLE SHELLEY C. CHAPMAN,
UNITED STATES BANKRUPTCY JUDGE:

William K. Harrington, the United States Trustee for Region 2, through

counsel, respectfully submits this response in support of the motion of Aman

Resorts Group Limited ("Debtor" or "ARGL") and Tarek Investments Limited

("Tarek") to transfer venue of related bankruptcy cases from the Southern District

of Florida to this District, and cross-motion for an order, pursuant to Fed. R. Civ. P.

60(b), made applicable herein by Fed. R. Bankr. P. 9024, to vacate the Court's order

dismissing this bankruptcy case (ECF No. 35). In support hereof, the U.S. Trustee

states:

# INTRODUCTION

The U.S. Trustee supports the motion of ARGL and Tarek (the majority equity holder of PHRGL) to transfer the Later-Filed Cases to this District because to do so would serve the interest of justice. In addition, because extraordinary circumstances are presented by the underlying facts, including that the Court could not have foreseen the subsequent actions taken in what appears potentially to be a misuse of the bankruptcy process, and in order to avoid needless entanglement in a jurisdictional issue, the U.S. Trustee cross-moves for an order vacating the Court's prior order dismissing the New York Case.

The facts surrounding both the instant case and the Later-Filed Cases are complicated. As this Court has discovered through hearings and reading extensive pleadings, following litigation in an unrelated forum, Omar Amanat lost corporate control over ARGL. In an effort to regain power, Amanat caused involuntary Chapter 11 petitions to be filed in this Court against ARGL. Based on what appeared to be the Debtor's consent, the Court entered an Order of Relief. Ultimately, however, after extensive proceedings, the Court determined that ARGL had not consented to the relief, had no knowledge of the petition and that the involuntary petition was filed with no proper bankruptcy purpose. Accordingly, the Court entered an order dismissing the case, but retaining jurisdiction over sanctions relief sought by ARGL. That relief, has been extensively litigated and has required the Court's active involvement.

Most recently, it came to the attention of the Court as well as the U.S. Trustee that Amanat once again may have filed or caused to have filed an involuntary bankruptcy petition in yet another attempt to regain control of ARGL. According to counsel for ARGL in this Court, Amanat caused a Pennsylvania company (High-Def Zone, Inc.) to file an involuntary chapter 7 petition against PHRGL, the sole owner of ARGL, in the in the Southern District of Florida. It is not clear whether PHRGL had notice of the involuntary petition but in any event, no answer to the petition was filed by PHRGL. As a result, the Florida Bankruptcy Court entered an Order for Relief and the Florida U.S. Trustee appointed the Chapter 7 Trustee. Thereafter, the Chapter 7 Trustee, through counsel, commenced a Chapter 11 case for AGRL in the Southern District of Florida. It is not clear how or why the Chapter 7 Trustee had the authority to file a second Chapter 11 petition for ARGL when a case already was filed in this Court and remains open.

For the reasons below, ARGL's motion seeking a transfer of the Later-Filed Cases to this Court should be granted in the interest of justice. As this Court handled the New York case, the first-filed case, this Court fully familiar with the complicated, convoluted facts surrounding these filings and the parties involved.

Finally, it appears that the fact that the involuntary petition in this Court was dismissed may become a red-herring to frustrate the transfer of the Later-Filed Cases to the Court with the most experience of the facts and circumstances to consider all of these cases. The U.S. Trustee, therefore, has filed a cross-motion, pursuant to Fed. R. Civ. P. 60(b)(6), requesting that the Court exercise its broad

discretion and vacate the Dismissal Order due to the extraordinary circumstances present here and in furtherance of the interest of justice.

## JURISDICTION, VENUE AND STATUTORY PREDICATE

1.      The Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The Cross-Motion is initiated pursuant to Fed. R. Civ. P. 60(b)(6), made applicable herein by Fed. R. Bankr. P. 9024.

## FACTS[1]

### *The New York Chapter 11 Case*

2.      On March 4, 2016, Omar Amanat ("Amanat"), Peak Venture Partners ("Peak Venture") and Carpentaria Management Services Limited ("Carpentaria," and together with Amanat and Peak Venture, the "Initial Petitioners") commenced this case by filing against the Debtor an involuntary petition under Chapter 11. ECF No 1.

3.      On March 7, 2016, five different petitioners, namely, Adrian Zecha, George Robinson, Carolyn Turnbill, Fonde Investment Capital S.A. and Hugh Dunkeerly [sic] filed an amended involuntary petition against the Debtor. ECF No. 3.

4.      On March 7, 2016, the Debtor, through Brown Rudnick LLP, filed an answer and consent to the entry of the order for relief. ECF No. 4.

---

[1] The Court's familiarity with the facts of this case and those underlying the Transfer Venue Motion is presumed. To minimize repetition and to present facts that may not have been otherwise presented to the Court, the U.S. Trustee has limited his statement of facts. For additional facts, the Court respectfully is referred to the declarations relating to the Transfer Venue Motion.

5.      On March 9, 2016, the Court entered an order for relief with the Debtor's consent. ECF No. 6.

### The Motions to Withdraw, to Dismiss the Case and for Sanctions

6.      On March 11, 2016, Brown Rudnick filed a motion to withdraw as counsel. ECF No. 8.

7.      On March 11, 2016, the Debtor, represented by Kasowitz, Benson, Torres & Friedman, LLP, filed a motion: (i) to strike the Debtor's answer to the involuntary petition and the consent to entry of the order for relief, (ii) to dismiss the case and (iii) for sanctions. ECF No. 10.

8.      On March 16, 2016, petitioners Zecha, Robinson, and Turnbill, through Willkie Farr & Gallagher LLP, filed a motion to withdraw from the amended petition. ECF No. 18.

9.      Following a hearing held on March 28, 2016, the Court, on March 29, 2016, entered an order dismissing the case, but retaining jurisdiction to consider the Debtor's motion for sanctions (the "Dismissal Order"). ECF No. 35. The Court also permitted Brown Rudnick to withdraw as counsel and the three petitioners to withdraw from the amended petition.[2] ECF Nos. 32 and 33.

### The Sanctions Litigation

10.     Thereafter, the parties engaged in litigation concerning the requested sanctions relief.

---

[2] Kent Gross, Esq., the attorney who filed both the initial involuntary petition and the amended involuntary petition, also sought to withdraw as counsel. *See Notice of Withdrawal of Attorney*, ECF No. 16. As of the date hereof, the Court has not ruled on this request.

11.     The Court's docket reflects the active nature of the litigation and

extensive involvement of the Court, including:

- <u>5.3.16</u>: Order to Show Cause entered as to why various parties should not produce documents to ARGL and Tarek in connection with the Sanctions Litigation, and directing Messers. Gross, Amanat, Sullivan and Dunkerly to appear on May 16, 2016 (ECF No. 44);

- <u>5.16.16</u>: Court Hearing (Order to Show Cause);

- <u>5.20.16</u>: Order Compelling Discovery entered directing compliance with ARGL's discovery requests (ECF No. 53);

- <u>5.20.16</u>: Order to Show Cause entered why Sullivan should not be held in contempt for failing to appear at May 16, 2016 hearing (ECF No. 54);

- <u>7.14.16</u>: Court Hearing;

- <u>11.17.16</u>: Motion to Compel Discovery by ARGL (ECF No. 71);

- <u>12.8.16</u>: Opposition to Motion to Compel by Brown Rudnick (ECF No. 76);

- <u>1.6.17</u>: Response to Opposition by Kasowitz (ECF No. 77);

- <u>1.24.17</u>: Cross-Motion by Brown Rudnick Seeking Ability for Potentially Affected Parties to Be Heard on Motion to Compel (ECF No. 79);

- <u>1.26.17</u>: Response by Kasowitz to Cross-Motion (ECF Nos. 81, 82 and 86); and

- <u>2.23.17</u>: Court Hearing (Motion to Compel and Cross-Motion).

### The Settlement Motion

12.     On August 4, 2017, ARGL filed a motion pursuant to Fed. R. Bankr. P.

9019 seeking court approval of a settlement with Brown Rudnick of the Sanctions

Litigation. ECF No. 91.

13.     Pursuant to the settlement agreement, among other things, Brown Rudnick "agreed to pay the sum of $322,000 to Kasowitz, on behalf of ARGL, as reimbursement for fees and expenses incurred by ARGL in connection with these proceedings in full settlement of all claims in connection with these proceedings, [Kasowitz's] representation of ARGL and the retainers and other funds received by [Kasowitz] from any person in connection therewith….". *Id.* at 4.

### *The Later-Filed Florida Bankruptcy Cases*

**(i)     *The Chapter 7 Case***

14.     On April 24, 2017, High-Def Zone, Inc. filed an involuntary Chapter 7 petition against Peak Hotels and Resorts Group, Ltd. ("PHRGL") in the Bankruptcy Court for the Southern District of Florida, Case No. 17-15041 (AJC). SDFL/Ch.7 ECF No. 1.

15.     Upon information and belief, PHRGL is the sole owner of ARGL.

16.     On May 18, 2017, the Florida Bankruptcy Court entered an Order for Relief on the grounds that PHRGL did not file a timely pleading as required by Fed. R. Bankr. P. 1013(b).[3] SDFL/Ch. 7 ECF No. 11.

17.     On May 22, 2017, Guy G. Gebhardt, the Acting United States Trustee for Region 21, based upon the Florida Bankruptcy Court's entry of the Order for Relief, appointed Jacqueline Calderin as the Chapter 7 Trustee. SDFL/Ch.7 ECF No. 12.

---

[3] Upon information and belief, ARGL contends that service of the involuntary petition against PHRGL was not proper and, therefore, the Order for Relief was entered without the Florida Bankruptcy Court's knowledge of the alleged defect in service of the petition.

18.    On May 25, 2017, the Florida Bankruptcy Court granted the Chapter 7

Trustee's request for authorization, together with High-Def, to prepare the

schedules for PHRGL required by the Bankruptcy Code and Rules. SDFL/Ch. 7

ECF No. 16.

19.    On June 2, 2017, the Chapter 7 Trustee filed an application (the "ECC

Application") to retain her law firm, Ehrenstein Charbonneau Calderin as her

counsel. SDFL/Ch. 7 ECF No. 17.

20.    In the affidavit supporting the ECC Application, Robert Paul

Charbonneau made the following representations:

> … in January 2016 ECC ran a conflict check for purposes of
> representing Peak Venture Partners, LLC and/or Omar Amanat in
> connection with a dispute against Vladislav Doronin and Capital
> Group. In connection with this conflict check, partners Christopher
> Spuches and Robert Charbonneau reviewed materials forwarded by
> Mr. Amanat. These materials were in the public record, not attorney-
> client- privileged, not confidential, and not proprietary in nature.
> Neither Charbonneau nor ECC were ever retained by Peak Venture
> Partners, LLC or Omar Amanat. *See* Affidavit of Disinterestedness
> and Rule 2016 Disclosures of Proposed Attorney for Chapter 7 Trustee
> [hereinafter, "Charbonneau Affidavit"] at ¶ 5;

> Subsequently, the firm ran a second conflict check to represent Peak
> Venture Partners, Carpentaria Management Services, LTD, and Omar
> Amanat as petitioning creditors ("Petitioning Creditors") in the
> involuntary case of In re Aman Resorts Group Ltd., Case Number 16-
> 10517, and in the Adversary Proceeding of Aman Resorts Group Ltd. v.
> Pontwelly Holding Co. Ltd. and A.H. Overseas Ltd., Case Number 16 –
> 10517. While an engagement letter was prepared, it was never signed
> by Petitioning Creditors, neither I nor ECC ever made an appearance
> in any proceeding on behalf of any one or all of the Petitioning
> Creditors, and neither I nor ECC ever formed an attorney-client
> relationship with anyone in connection with the subject matter(s) of
> the engagement letter that ECC prepared. *Id.* at ¶ 6;

> In the course of ECC's review of materials provided by Omar Amanat
> and Petitioning Creditors, ECC never came into possession of any

proprietary materials that would serve to disqualify it as counsel to the Trustee in this bankruptcy case. *Id.* at ¶ 7.

SDFL/Ch. 7 ECF No. 17.

21.     Upon information and belief, the Chapter 7 Trustee did not advise the Florida U.S. Trustee or his attorneys of the connections that her law firm had to Amanat or his affiliates at the time of her appointment.

22.     On June 7, 2017, following a status conference, the Florida Bankruptcy Court entered an order finding that jurisdiction and venue of the Chapter 7 Case were proper. SDFL/Ch. 7 ECF No. 18.

23.     On June 13, 2017, the Florida Bankruptcy Court Clerk issued a notice scheduling the Meeting of Creditors required pursuant to 11 U.S.C. § 341(a) for July 12, 2017, at 4:00 p.m. SDFL/Ch. 7 ECF No. 19.

24.     On June 16, 2017, the Chapter 7 Trustee filed PHRGL's Schedules listing cash assets of $2,500.00, and listing High-Def and Lightray Imaging Co. ("Lightray") as PHRGL's only creditors.[4] SDFL/Ch. 7 ECF No. 22.

25.     On June 23, 2017, the Chapter 7 Trustee filed a Notice of Compliance of Turnover that stated that The Law Office of Russell B. Adler, P.A. had turned over to the Chapter 7 Trustee the sum of $2,500.00 that Adler had received as a retainer in connection his representation of PHRGL.[5] SDFL/Ch. 7 ECF No. 26.

---

[4] Upon information and belief, Lightray and/or the LightRay Companies are affiliates of or related to Amanat, his companies or his family.

[5] Upon information and belief, questions have arisen concerning the facts and circumstances underlying the retention of Adler and the genesis and nature of the $2,500.00, the total of PHRGL's cash assets.

26.     On June 29, 2017, the Florida Bankruptcy Court entered an order authorizing the Chapter 7 Trustee to retain ECC. SDFL/Ch. 7 ECF No. 27.

27.     On June 29, 2017, the Chapter 7 Trustee filed an emergency motion seeking authorization to obtain post-petition financing from LightRay Companies to, among other things, "to timely pursue certain causes of action held by the subsidiary before the applicable statute of limitations expires." SDFL/Ch. 7 ECF No. 28 at 1. On August 14, 2017, the Florida Bankruptcy Court denied the motion. SDFL/Ch. 7 ECF No. 61.

28.     On June 30, 2017, the Chapter 7 Trustee filed an application to retain Kobre & Kim LLP ("K&K") as special counsel to represent her in proceedings in the British Virgin Islands. SDFL/Ch. 7 ECF No. 33. The Florida Bankruptcy Court, on July 13, 2017, entered an order authorizing the retention of K&K. SDFL/Ch. 7 ECF No. 40.

29.     On July 6, 2017, Lightray "as assignee of claims of Erik Holling, Thomas Martin Evans and BCA International Limited" filed an *ex parte* motion for relief from the automatic stay to seek and obtain the reinstatement PHRGL to the corporate registry of the BVI. SDFL/Ch. 7 ECF No. 35.

30.     On July 7, 2017, the Florida Bankruptcy Court entered an "Agreed Order" providing that "[t]o the extent applicable, the automatic stay in this case is modified such that Lightray and any other creditor of [PHRGL], in consultation with the Chapter 7 Trustee, may seek and obtain the reinstatement of the PHRGL

with the registry, or whatever is the appropriate governmental agency, in the British Virgin Islands." SDFL/Ch. 7 ECF No. 36 at ¶ 2.

31.    On July 14, 2017, the Chapter 7 Trustee filed a notice adjourning the Section 341(a) Meeting to August 2, 2017. SDFL/Ch. 7 ECF No. 41. Upon information and belief, no one appeared at the Section 341(a) Meeting previously noticed for July 12, 2017, at 4:00 p.m.

32.    On August 1, 2017, the Chapter 7 Trustee filed an emergency omnibus motion to (a) approve her selection of a registered agent for ARGL, (b) authorize the Chapter 7 Trustee to commence U.S. and BVI insolvency proceedings for ARGL, (c) authorize the Chapter 7 Trustee to appoint a director of ARGL and (d) authorize the Chapter 7 Trustee to enter into a cross-border protocol agreement (the "Omnibus Motion"). SDFL/Ch. 7 ECF No. 44.

33.    Upon information and belief, on August 2, 2017, the Chapter 7 Trustee conducted the 341(a) Meeting telephonically with Amanat as PHRGL's representative. Upon information and belief, Amanat was located in the U.S. Trustee's office in Newark, New Jersey for the telephonic Section 341(a) Meeting.[6]

34.    On August 9, 2017, the Florida Bankruptcy Court entered an order granting the Omnibus Motion. SDFL/Ch. 7 ECF No. 50.

35.    On August 9, 2017, the Chapter 7 Trustee filed amended schedules for PHRGL, listing five additional creditors, for a total of 7 creditors. SDFL/Ch. 7 ECF No. 53. Four of the creditors are located in New York (total combined debt

---

[6] The Chapter 7 Trustee conducted this meeting in this manner and location without making arrangements through the Florida U.S. Trustee or his counsel, as she had been instructed to do.

$915,000); the fifth is located in New Jersey (debt $300,000); the sixth, High-Def, is

located in Pennsylvania (debt $150,000), and the seventh, Lightray, is the only one

listing its attorney's address in Miami (unknown amount of debt). *Id.*

### (ii) The Chapter 11 Case

36.    On August 9, 2017, the Chapter 7 Trustee filed a voluntary petition

under Chapter 11 for ARGL in the Florida Bankruptcy Court, Case No. 17-20114

(AJC). SDFL/Ch. 11 ECF No. 1.

37.    Contrary to certain representations made by the Chapter 7 Trustee or

her counsel, neither the Florida U.S. Trustee nor his counsel provided guidance to

the Chapter 7 Trustee's filing of the Omnibus Motion, including her request to

commence a voluntary Chapter 11 Case in Florida for ARGL.

38.    On August 23, 2017, the Chapter 7 Trustee filed initial schedules for

ARGL. SDFL/Ch. 11 ECF No. 21. The Schedules do not list any secured creditors,

and list 10 unsecured creditors. *Id.* As with PHRGL, the only creditor listed with a

Miami address is Lightray (listing counsel's address in Miami). The largest creditor,

Thomas Evans, is located in England ($3,360,000) as well as BCA International

Limited ($149,946). High-Def is located in Pennsylvania ($150,000); Erik Holling is

located in Rhode Island ($152,000), and the remaining creditors are in New York

and New Jersey (aggregating $1,215,000).

39.    Although the Chapter 7 Trustee filed various retention applications

and other motions in the Florida Chapter 11 Case of ARGL, upon information and

belief, none of the motions has been considered by the Florida Bankruptcy Court

and, in fact, all actions have been stayed pending a determination on the Transfer Venue Motion.

### The Transfer Venue Motion

40.     On August 22, 2017, ARGL and Tarek, by Kasowitz, filed a motion to transfer venue of the Florida Bankruptcy Cases (collectively, the "Later-Filed Cases") from the Southern District of Florida to this District. ECF No. 92.

41.     On August 25, 2017, following the filing of the Transfer Venue Motion and a telephonic conference held by the New York Bankruptcy Court, the New York Bankruptcy Court entered an order directing that all parties to the Florida Bankruptcy Cases (the "Later-Filed Cases") proceed no further until the New York Bankruptcy Court rules on the Transfer Venue Motion. *See* SDFL/Ch. 7 ECF No. 81, SDFL/Ch. 11 ECF No. 27.

42.     Upon information and belief, other than filing objections to the Venue Transfer Motion, no other activity has occurred in the Later-Filed Cases.

43.     On August 30, 2017, the Chapter 7 Trustee filed an objection (the "Objection") to the Transfer Venue Motion on behalf of both PHRGL and ARGL. ECF No. 104.

44.     The Objection contains certain assertions regarding, among other things, communications with counsel to the Florida U.S. Trustee which, upon information and belief, do not appear to be accurate. Although these statements do not appear to be germane to the Transfer Venue Motion that is before the Court, the U.S. Trustee currently is investigating this matter and, accordingly, reserves all

rights to come back before this Court or any other proper court to seek relief to the extent he determines to do so.

## RESPONSE

**The New York Court Should Transfer Venue of the Later-Filed Cases from the Southern District of Florida to this District in the Interest of Justice.**

The U.S. Trustee supports the Transfer Venue Motion because the transfer of the Later-Filed Cases to this District is in the interest of justice.

Section 1412 of title 28 of the U.S. Code provides that "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties. 28 U.S.C. § 1412. "Section 1412 is written in the disjunctive, which means 'interest of justice' and 'convenience of the parties' are each independent grounds for transferring venue." *In re Patriot Coal Corp.*, 482 B.R. 718, 738-39 (Bankr. S.D.N.Y. 2012) ( citing *In re Asset Resolution LLC*, No. 09-16142 (AJG), 2009 WL 4505944, at *2 (Bankr. S.D.N.Y. Nov. 24, 2009)). The decision of whether to transfer venue under Section 1412 is within a court's discretion based on a case-by-case analysis of equity and convenience. *See Gulf States Exploration Co. v. Manville Forest Prods. Corp.* (*In re Manville Forest Prods. Corp.*), 896 F.2d 1384, 1391 (2d Cir. 1990).

The "interest of justice" prong of section 1412 "is a broad and flexible standard that is applied based on the facts and circumstances of each case." *In re Enron Corp.*, 274 B.R. 327, 349 (Bankr. S.D.N.Y. 2002). Among the factors that should be considered is whether transfer of the case would promote "the efficient

14

administration of the bankruptcy estate, judicial economy, timeliness, and fairness…" *Id.* (citing *Manville*, 896 F.2d at 1391). The burden rests with the movant seeking the transfer of a bankruptcy case to a different venue and that burden must be carried by a preponderance of the evidence. *Id.*

As an example, in *In re Winn-Dixie Stores, Inc.*, No. 05-11003 (Bankr. S.D.N.Y. Apr. 12, 2005), in considering a creditor's motion to change venue, the Court found, in a decision issued from the bench, that venue was technically proper under Section 1408 and that the convenience of the parties prong of 1412 weighed in favor of retaining the cases in New York, the Court nevertheless ordered the cases transferred under the "interest of justice" prong of Section 1412, reasoning that it was important to close a "loophole" in the statute that would otherwise have permitted a corporation to establish venue solely through the eve-of-bankruptcy creation of a subsidiary. The court found that this practice improperly "creat[ed] the facts to fit the statute." *Id.*, Tr. at 167-69.

Similarly, the bankruptcy court in *Dunmore Homes*, ruled that "[t]he interests of justice prong" is "a broad and flexible standard." *In re Dunmore Homes, Inc.*, 380 B.R. 663, 671 (Bankr. S.D.N.Y. 2008) (citations omitted). There, the court ultimately granted the motion to transfer venue, finding relevant the fact that the debtors' sole New York based affiliate had been created on the eve of bankruptcy – just 59 days before the petition date. *Id.* at 673. For these reasons, the interest of justice favors transferring these cases to a district where venue is proper.

Finally, and significantly here, in *Patriot Coal*, this Court observed that although "the efficient administration of the cases is an important factor in the Court's analysis," it is not dispositive and does not weigh against the importance of fairness and justice. *Patriot Coal*, 482 B.R. 749. As this Court stated, "[d]oing justice in a particular case can impose a cost but we as a society have determined that we are prepared to pay that cost from time to time to ensure the integrity of our laws and our system of government." *Id.* at 749.

Based on the facts of this case, the Court should transfer venue of the Later-Filed Cases from the Southern District of Florida to this District, pursuant to 11 U.S.C. § 1412. A transfer to this Court will not only promote the efficient administration of the bankruptcy estate and judicial economy, but will promote fairness and is warranted in the interest of justice.

In terms of judicial economy, at the current time, there are two different counsel purporting to represent ARGL; Kasowitz, which has been representing the ARGL in this Court for 1.5 years, and ECC, who has been representing the Chapter 7 Trustee for four months. Sorting out the issue of whether the Chapter 7 Trustee had the authority to file a Chapter 11 petition for ARGL is more appropriately a task for this Court, which has extensive familiarity with the facts and proceedings underlying this issue.

In contrast to this Court's broad knowledge of the facts surrounding ARGL and the various litigating parties, the Chapter 7 Trustee does not appear to have conducted a thorough due diligence review of the involuntary chapter 7 filing in

Florida nor has she made any reasonable investigation into the parties involved in the Florida cases. As just one example, the Chapter 7 Trustee represented in her declaration filed in opposition to the Transfer Venue Motion, that "[u]ntil the Kasowitz Firm disclosed that Mr. Amanat is set to appear for trial in October in a criminal case, I had no knowledge that Mr. Amanat is currently under criminal indictment." *See* Declaration of Jacqueline Calderin in Support of Response of Aman Resorts Group Limited and Jacqueline Calderin, Chapter 7 Trustee for the Estate of Peak Hotel Resorts Group Limited, in Opposition to the Motion To Transfer Venue [hereinafter, "Calderin Declaration"), ECF No. 106 at ¶ 21, n.8.

Not only did the Chapter 7 Trustee rely on Amanat's assistance in reviewing bankruptcy schedules and other documents, but on August 2, 2017, she permitted Amanat to appear for the 341 Meeting in the U.S. Trustee's Office located in Newark, New Jersey. The Chapter 7 Trustee also does not address in her declaration the reason provided by Amanat for not being able to appear in person for the Section 341(a) Meeting in Miami or whether she was aware that Amanat was wearing an electronic bracelet monitor and (pursuant to Order of the U.S. District Court for the Southern District of New York) was not permitted to leave New York and New Jersey. A simple search on the Internet reasonably could have led the Chapter 7 Trustee to discover a wealth of information about ARGL, Amon Resorts and Amanat's connections thereto as legal proceedings concerning Amanat and these entities have been widely reported. It does not appear, however, that even a cursory search was conducted when considering the statements contained in the

Calderin Declaration. The relationship of the parties involved herein and the knowledge of past acts by various parts is crucial information. This Court is well aware of this important information and judicial economy would be well-served to have this Court oversee these cases.

It also is clear that transferring the Later-Filed Cases to this Court will promote fairness. Although further investigation is necessary, it appears that bad acting parties may be attempting to once again misuse the bankruptcy process for self-serving, improper purposes. The case in this Court was brought on by the filing of two involuntary petitions (one amending the first), and each petition filed by the same counsel. After the facts were known to this Court, the Court correctly concluded that the petitions had been filed for no proper bankruptcy purpose and the issue of sanctions remains pending before this Court.

The filing of the Later-Filed Cases appears to present a similar pattern being taken by the same parties appearing in the instant case. The Florida Chapter 7 Case was commenced with an involuntary petition which may have not been properly served on the purported debtor. It, therefore, is appropriate that this Court, which is fully familiar with the first-filed case consider the facts of the Later-Filed Cases.

For these reasons, the Later-Filed Cases should be transferred in the interest of justice from the Southern District of Florida to this District.

CROSS-MOTION

**The Court Should Vacate the Dismissal Order Based Upon the Extraordinary Circumstances Present in this Matter and in the Interest of Justice**

The Chapter 7 Trustee has questioned the Court's jurisdiction in light of the Court's entry of the Dismissal Order. Kasowitz cites precedent to the contrary. *See, e.g., In re Emerson Radio Corp.,* 52 F.3d 50, 55 n.8 (3d Cir. 1995). However, the Court's time and focus may be shifted properly to the substantive issues presented here if the Court exercises its broad discretion under Fed. R. Civ. P. 60(b)(6) and vacates the Dismissal Order. The extraordinary circumstances that have come to light concerning the instant case could never have been foreseen by the Court at the time the Court entered the Dismissal Order and the interest of justice supports the Court's action in doing so. Accordingly, to enable the Court to devote its time focus on the substantive issues here, the U.S. Trustee respectfully requests that the Court vacate the Dismissal Order for the reasons set forth below.

**(i)    Civil Rule 60(b) – Generally.**

Bankruptcy Rule 9024 provides that Civil Rule 60 is applicable in bankruptcy cases.[7] Civil Rule 60(b) affords a party relief from a judgment if there existed:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence . . . ; (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged ... or (6) any other reason that justifies relief. . . .

*Fed. R. Civ. P. 60(b).*

---

[7] Rule 9024 sets forth certain exceptions that are not applicable here.

"Properly applied, Rule 60(b) strikes a balance between serving the ends of justice and preserving the finality of judgments. It should be broadly construed to do 'substantial justice,' yet final judgments should not 'be lightly reopened. The Rule may not be used as a substitute for a timely appeal. Since 60(b) allows extraordinary judicial relief, it is invoked only upon a showing of "exceptional circumstances," in the discretion of the trial court. *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986) (internal citations omitted); *see also In re Enron Corp.*, 352 B.R. 363, 369 (Bankr. S.D.N.Y. 2006) (these grounds "should be liberally construed when substantial justice will . . . be served") (quoting *Radack v. Norwegian Am. Line Agency, Inc.*, 318 F.2d 538, 542 (2d Cir. 1963)); *see also Leonard v. Lowe's Home Ctrs., Inc.,* 83 Fed. Appx. 402, 304 (2d Cir. 2003).

Additional requirements are that (i) the supporting evidence be "highly convincing;" (ii) there be good cause for the movant's failure to act sooner; and (iii) application of the rule should not impose undue hardship on other parties. *In re Old Cargo, LLC*, 423 B.R. 40, 45 (Bankr. S.D.N.Y. 2010) (citing *Freedom, N.Y., Inc. v. United States*, 438 F.Supp.2d 457, 462-63 (S.D.N.Y. 2006) (citations omitted)).

Civil Rule 60(c)(1) requires that motions under Civil Rule 60(b) be made within a reasonable period of time and, for subsections (1), (2) and (3), no more than a year after the entry of the judgment or order or the date of the proceeding. Fed. R. Civ. P. 60(c)(1).

A decision concerning a Civil Rule 60(b) motion is within the discretion of the court. *Old Cargo*, 423 B.R. at 40 (citing *Nemaizer*, 793 F.2d at 61-62).

### (ii)    Civil Rule 60(b)(6).

Civil Rule 60(b)(6), which permits a court to grant relief from a final order for "any other reason that justifies relief," "confers broad discretion on the trial court to grant relief when appropriate to accomplish justice [and] it constitutes a grand reservoir of equitable power to do justice in a particular case. It is properly invoked where there are extraordinary circumstances, or where the judgment may work an extreme and undue hardship[.]" *Marrero Pichardo v. Ashcroft*, 374 F.3d 46, 55 (2d Cir. 2004) (internal quotations and citations omitted); *see also Andrulonis v. United States,* 26 F.3d 1224, 1235 (2d Cir.1994) (Rule 60(b)(6) properly "invoked to override the finality of judgments in the interests of justice."); *Matarese v. LeFevre*, 801 F.2d 98, 106 (2d Cir. 1986) (Rule 60(b)(6) "confers broad discretion on the trial court to grant relief when appropriate to accomplish justice."); *In re Teligent, Inc.*, 326 B.R. 219, 227 (S.D.N.Y. 2005); *In re AMC Realty Corp.*, 270 B.R. 132, 143-44 (Bankr. S.D.N.Y. 2001). Thus, subject to the caveat that relief under this subsection may not be based upon a reason included in subclauses (1)-(5), *see Nemaizer*, 793 F.2d at 63, Civil Rule 60(b)(6) serves as an effective catch-all. *See In re Lewis Road, LLC*, No. 09-37672, 2011 WL 6140747 (Bankr. E.D. Va. Dec. 9, 2011) (court invoked Civil Rule 60(b)(3) and (b)(6) to vacate an order due to inadequate disclosure required by Section 327 of the Bankruptcy Code and Bankruptcy Rule 2014).

There is no dispute that the New York case was the first case filed. The gravamen of the Chapter 7 Trustee's objection is that the Court no longer has jurisdiction to transfer the Later-Filed Cases to this District because the Court

dismissed this case and solely retained jurisdiction to determine the Sanctions Motion. Although there are arguments that exist that may overcome the Chapter 7 Trustee's jurisdictional objection, the Court may easily dispose of the jurisdictional concern by exercising its broad discretion under Fed. R. Civ. P. 60(b)(6) and vacating the Dismissal Order given the extraordinary circumstances here and in the interest of justice. *See, e.g., In re Malden Mills Indus., Inc.,* 361 B.R. 1, 9 (Bankr. D. Mass. 2007) ("Having vacated the Final Decree under Rule 60(b)(3) and reopened the Massachusetts Cases under Section 350(b), these bankruptcy proceedings are 'pending' within the meaning of Rule 1014(b).").

As stated *supra* at 14-19, the facts and circumstances that occurred following the Court's entry of the Dismissal Order, facts that the Court could no way have foreseen, support the Court's finding that the interest of justice warrants vacating the Dismissal Order and transferring the Later-Filed Cases under Fed. R. Bankr. P. 1014(b). Primary among the extraordinary circumstances is the fact that two parties, namely Kasowitz and the Chapter 7 Trustee, through her counsel ECC, purport to be acting on behalf of the same entity, ARGL. Given that the New York case was filed approximately 1.5 years ago and since that time this Court has been presiding over an active, hotly-contested litigation involving, among others, the issues presented by the present dispute; the New York Court is most familiar with the facts and circumstances underlying the disputes among the various parties.

In addition, the allegations included in the papers filed by both Kasowitz and ECC, on behalf of the Chapter 7 Trustee, demonstrate extraordinary circumstances

because they place at issue the use and possible misuse of our bankruptcy system, the preservation and security of which is paramount. Among others, these issues involve: (1) whether parties had the proper qualifications to commence involuntary petitions or knowingly invoked the protections of the U.S. Bankruptcy Courts when they did not; (2) whether parties caused the Bankruptcy Court's to enter orders for relief based upon inaccurate statements, misrepresentations and lack of proper service implicating due process issues; (3) whether the cases were filed in bad faith (a question already raised by the New York court); (4) whether parties have exercised properly their fiduciary duties on behalf of ARGL and PHRGL; (5) whether these cases have been commenced for appropriate and lawful purposes; and (6) whether conflicts of interest are present and whether full disclosures have been made. All of these issues present serious questions that need to be investigated. Such an investigation should be conducted under this Court because it was the first-filed case and this Court is fully familiar with the facts, the parties and the issues having overseen extensive litigation and discovery disputes centered on, among other things, the core issue presented here: ownership and control of ARGL.

For all of these reasons, the U.S. Trustee respectfully requests that the Court vacate the Dismissal Order pursuant to Fed. R. Civ. P. 60(b)(6) based upon the extraordinary circumstances and the interest of justice.

WHEREFORE, the U.S. Trustee respectfully requests that: (i) the Court, pursuant to Fed. R. Bankr. P. 1014(b), transfer the Later-Filed Cases from the Southern District of Florida to this District in the interest of justice, (ii) vacate

the Dismissal Order, pursuant to Fed. R. Civ. P. 60(b)(6), given the extraordinary

circumstances present and in the interest of justice, and (iii) grant such other and

further relief as is just.

Dated:         New York, New York
               September 5, 2017

                                        WILLIAM K. HARRINGTON
                                        UNITED STATES TRUSTEE

                                        By_____/s/ Andrea B. Schwartz___
                                             Andrea B. Schwartz
                                             Trial Attorney